**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SHANNON SCHULTE, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>FIFTH THIRD BANK,<br><br>    Defendant. | Case No. _____<br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff, Shannon Schulte ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated. This Class Action Complaint ("Complaint") is based upon personal knowledge as to allegations regarding the Plaintiff and upon information and belief and Plaintiff's counsel's investigation as to the other allegations in the Complaint. Plaintiff hereby alleges as follows:

**NATURE OF THE ACTION**

1. This is a proposed class action against Defendant Fifth Third Bank, ("Defendant" or "FTB") for improperly assessing customers' overdraft charges for insufficient funds on debit/check card purchases and ATM withdrawals through the re-sequencing of transactions in order to maximize the overdraft charges FTB could collect.

2. Plaintiff's action alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2; breach of contract; and unjust enrichment.

3. Plaintiff seeks damages, equitable relief and/or disgorgement.

## THE PARTIES

4. Plaintiff is a citizen of the State of Illinois and resides in Aurora, Illinois.

5. Defendant Fifth Third Bank ("Defendant" or "FTB") is a Federal Deposit Insurance Corporation ("FDIC") insured institution headquartered in Cincinnati, Ohio.

6. Plaintiff originally opened a checking account with FTB in the Spring of 2009. Plaintiff still has this account with FTB.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d), because at least one class member is a citizen of a different state than Defendant; there are more than 100 putative class members; and the aggregate amount in controversy exceeds $5,000,000.

8. This Court has personal jurisdiction over Defendant in this case, as it is authorized to do business and in fact does business in this State, it has sufficient minimum contacts with this State and otherwise intentionally avails itself of the markets in this State through the distribution, promotion, marketing and sale of its products and services in this State, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. To this end, according to the FDIC, as of October 21, 2009, FTB had 171 FDIC insured branches in Illinois.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because Defendant conducts business in this district and a substantial part of the events giving rise to the claims occurred in this judicial district.

**FACTUAL ALLEGATIONS**

10. FTB operates 1,365 branch offices and approximately 2,300 ATMs across Ohio, Kentucky, Indiana, Michigan, Illinois, Florida, Tennessee, West Virginia, Pennsylvania, Missouri, Georgia and North Carolina.

11. With its network of ATMs and branches, FTB provides a number of financial products and services to its customers, including checking and savings accounts.

12. After opening an FTB checking account, customers can debit their account through a number of means such as FTB "debit" card[1] or paper checks. Unlike a credit card, FTB's debit card deducts the purchase amount from the customer's checking account. Although the payment is made to the vendor when the customer uses their debit card, the actual debit from the customer's account is held until the close of FTB's accounts for the day. At that time, the transactions are processed together through a process commonly referred to as batch processing.

13. During batch processing, FTB's computers can re-sequence the customer's transactions from different days and from the largest amounts to the smallest amounts regardless of the order in which FTB receives the charges. The result of this re-sequencing is that account balances can be manipulated to exhaust the available balance more quickly and in fewer transactions than if the transactions were processed in chronological order. When a customer transaction results in the account being overdrawn

---

[1] Debit cards include ATM cards as well as "hybrid" check cards. Hybrid check cards operate as ATM cards but bear the Visa or MasterCard logo and are accepted by merchants who accept credit cards but would not otherwise accept ATM cards. Plaintiff's card is an FTB branded hybrid card with a Mastercard logo. Plaintiff has the ability to use her card for Point of Sale purchases like a debit or credit card and as an ATM debit card.

or if a customer transaction occurs while the account is overdrawn, FTB typically covers the transaction. FTB, however, will assess an overdraft charge for each transaction made that either results in the account being overdrawn or that occurs while the account is overdrawn.

14. An overdraft charge is a fee charged by FTB when it accepts and processes a transaction but there is not enough money in the account to cover the transaction.

15. FTB engages in two different methods of re-sequencing: (1) re-sequencing transactions from different days together, and; (2) re-sequencing transactions processed on the same day from highest to lowest regardless of when the transaction occurred. In both scenarios, customers such as Plaintiff are charged more overdraft charges than they otherwise should have been charged.

16. The following example illustrates how customers can and are harmed by the re-sequencing of transactions from different days. A customer may have $100 in their account and spend $50 on Saturday, $50 on Sunday, and $101 on Monday. Instead of being charged one overdraft for their $101 transaction on Monday, FTB can and does re-sequence the transactions from Saturday through Monday such that the Monday charge is processed before the Saturday and Sunday transactions. The result is the customer being charged three overdraft charges instead of one.

17. The following example illustrates how customers can and are harmed by the re-sequencing of transactions on the same day. A customer may have $100 in their account and spend $50 at 9:00 a.m., $50 at noon and $101 at 9:00 p.m. on Monday. Instead of being charged one overdraft for their $101, 9:00 p.m. transaction on Monday,

4

FTB can and does re-sequence the transactions from the entire day on Monday such that the largest Monday charge is processed before the smaller transactions. The result is the customer being charged three overdraft charges instead of one.

18. Customers such as Plaintiff rely on Defendant to fairly and accurately account for the funds placed into checking and savings accounts. This includes charging fees on the account, such as overdraft charges, only when proper.

19. FTB improperly charged Plaintiff and the Class members overdraft charges through the re-sequencing of transactions from both different days and within the same day in order to maximize the overdraft charges FTB can collect.

**Banks Use Overdraft Charges As A Profit Center**

20. According to the *New York Times*, for years banks covered customers who bounced occasional checks and even did so for a while for persons using debit cards without cost to the customer.[2] However, in 1994 banks devised a program that would allow banks to provide overdraft coverage for every customer and charge them for each instance.[3] Today most overdraft charges are incurred on debit card transactions.[4]

---

[2] *See* Ron Lieber & Andrew Martin, *Overspending on Debit Cards Is a Boon for Banks*, N.Y. Times, September 9, 2009, *available at* http://www.nytimes.com/2009/09/09/your-money/credit-and-debit-cards/09debit.html; *see also* Binyamin Appelbaum and Nancy Trejos, *Democrats Target Bank Overdraft Charges*, Washington Post, September 21, 2009, *available at* http://www.washingtonpost.com/wp-dyn/content/article/2009/09/20/AR2009092002879.html?hpid=topnews ("In the age of handwritten checks, banks rarely made overdraft loans, but as the rise of debit cards vastly increased the volume of transactions, the industry gradually perfected a new strategy. Banks began to honor transactions, up to a preset limit, and then charge a fixed fee on top of the amount of the [overdraft] loan.")
[3] *See* Lieber *supra* note 3.
[4] Appelbaum *supra* note 3.

21. Since 1994, bank overdraft charges have increased significantly. According to the Financial Times, overdraft charges have nearly doubled since the year 2000.[5] Indeed the median bank overdraft charge rose this year, marking the first time overdraft charges have risen in a recession in more than 40 years.[6]

22. A report issued on October 6, 2009, by the Center for Responsible Learning ("CRL") shows that because banks charge a fixed overdraft fee regardless of the size of the transaction covered, "the fee bears no relationship to the actual cost to the institution of covering the overdraft. In fact, previous CRL research found that consumers paid about $2 in fees for every $1 in credit extended if they overdrew their account using a debit card at a checkout counter."[7] The report estimates that checking account holders receive only $21.3 billion in credit for the $23.7 billion they pay in overdraft fees.[8]

23. The CLR report indicates that lower-cost forms of overdraft protection like formal overdraft lines of credit or links to savings accounts are available, but banks typically enroll consumers in their most expensive overdraft loan program where the bank generally approves transactions, despite a shortage of funds, in return for an overdraft fee.[9]

---

[5] Saskia Scholtes & Francesco Guerrera, *Banks make $38bn from overdraft fees*, Financial Times, August 9, 2009, available at http://www.ft.com/cms/s/0/43d18c68-851d-11de-9a64-00144feabdc0.html.
[6] *Id.*
[7] *See* Leslie Parrish, *Overdraft Explosion: Bank fees for overdrafts increase 35% in two years*, Center for Responsible Lending (October 6, 2009), available at http://www.responsiblelending.org/overdraft-loans/research-analysis/crl-overdraft-explosion.pdf
[8] *Id.*
[9] *Id.*

24. According to the *Washington Post*, while most banks automatically offer overdraft protection to all account holders, they do not notify customers when an overdraft is about to occur, nor do they offer them a chance to cancel the transaction.[10]

25. In 2009, banks are estimated to bring in between $27 billion to $38.5 billion in overdraft charges alone.[11] Banks now make more from covering overdrafts than to do on penalty fees from credit cards.[12] This is largely because a hypothetical $27 overdraft charge, repaid in two weeks on a $20 purchase, is the same as being charged an annual percentage rate on a credit card of 3,520 percent.[13] In comparison, the penalty interest rate on a credit card is generally 30 percent.[14]

26. Many banks no longer employ caps on the total number of overdraft fees incurred per day. Accordingly, consumers making multiple debit transactions in one day will pay hundreds of dollars in fees before knowing their account is overdrawn.[15]

27. More troubling, banks have found a way to further maximize the fees they collect by rearranging the sequence of transactions.[16] This is possible because banks generally process their transactions in groups, or batches, at the end of a business day.

28. Upon information and belief, the following is FTB's current policy on overdraft or overpayment of an account:

> In case of overdraft or overpayment of any account, whether by error, mistake, inadvertence, or otherwise, the amount of such overdraft shall immediately be

---

[10] Appelbaum *supra* note 2.
[11] *Compare*, Lieber *supra* note 3 (stating banks are expected to bring in $27 billion in overdraft charges) *with* Schotles, *supra* note 4 ($38 billion) *and* Appelbaum *supra* note 3 ($38.5 billion).
[12] *See* Lieber *supra* note 3.
[13] *See* Lieber *supra* note 3.
[14] *See* Lieber *supra* note 3.
[15] *See* Parrish *supra* note 7.
[16] *See* Lieber *supra* note 3; *see also* Appelbaum *supra* note 3.

paid to the Bank. An overdraft fee may be assessed by the Bank whether Bank pays the item or not. *If multiple items are presented to the Bank for payment and there are not sufficient funds to pay all of those items, Bank (not customer) has the right to decide the order of the items that will be paid and which items will be returned, if any*. Bank may select any payment order at any time, which may include paying the largest items first such as your mortgage, rent or car payment.

If the balance in any Customer account plus available credit in a related overdraft protection plan is insufficient, at any time, to pay all items (including, but not limited to, a check, ACH, ATM, over-the-counter, bill payment, or other debit transactions) presented for payment on the account, the Bank may, at its option, pay or return any item regardless of the order of presentment of items, or whether payment creates an overdraft. Customer agrees to immediately pay to Bank the amount of any overdrafts, plus any fees assessed on the account. Customer agrees and acknowledges that such payment does not constitute an application for credit and that the amount of deficiency, whether from the amount of the overdraft(s) or any fees assessed, in the account is immediately due and payable without further demand.

Paragraph 12 of Rules & Regulations Applicable to All Fifth Third Accounts and Cards FTB's ("Rules & Regulations") (emphasis added)

**FTB Re-Sequences Transactions From Different Days To Maximize Overdraft Fees**

29. By re-sequencing the transactions from different days, FTB creates overdrafts where none had legitimately existed.

30. Between August 8, 2009 and August 11, 2009, Plaintiff made nine purchases with her FTB branded debit card that resulted in overdraft fees. FTB re-sequenced transactions from different days and from highest to lowest in order to deplete the account more rapidly and thereby maximize overdraft fees.

31. The following table illustrates these purchases and the subsequent overdraft fees incurred *as processed by FTB and memorialized in Plaintiff's online Account Activity Statement*:

8

| Date Processed | Description | Withdrawals (-) | Deposits (+) | Daily Balance |
|---|---|---|---|---|
| | Balance as of 8/7/2009 | | | $121.04 |
| 8/10/2009 | Merchant Payment on 8/10/2009 | (34.51) | | $86.53 |
| 8/10/2009 | Debit Card Purchase on 8/8/2009 | ($22.92) | | $63.61 |
| 8/10/2009 | Debit Card Purchase on 8/8/2009 | ($21.55) | | $42.06 |
| 8/10/2009 | Merchant Payment on 8/10/2009 | ($21.29) | | $20.77 |
| 8/10/2009 | Merchant Payment on 8/10/2009 | ($8.32) | | $12.45 |
| 8/10/2009 | Debit Card Purchase on 8/8/2009 | ($5.49) | | $6.96 |
| 8/10/2009 | Debit Card Purchase on 8/8/2009 | ($5.38) | | $1.58 |
| 8/10/2009 | Debit Card Purchase on 8/8/2009 | ($4.46) | | ($2.88) |
| 8/10/2009 | Debit Card Purchase on 8/8/2009 | ($1.76) | | ($4.64) |
| 8/11/2009 | Merchant Payment on 8/11/2009 | ($52.00) | | ($56.64) |
| 8/11/2009 | Merchant Payment on 8/11/2009 | ($32.00) | | ($88.64) |
| 8/11/2009 | Merchant Payment on 8/11/2009 | ($10.81) | | ($99.45) |
| 8/11/2009 | Merchant Payment on 8/11/2009 | ($2.12) | | ($101.57) |
| 8/11/2009 | Deposit | | $250.00 | $148.43 |
| 8/11/2009 | OVERDRAFT FEE incurred on 8/10/2009 ($37 times 2charges) | ($74.00) | | $74.43 |

32. As shown in ¶31, FTB re-sequenced Plaintiff's transactions from August 8, 2009 to August 10, 2009 and re-sequenced the purchases on August 10, 2009 without regard to which day each transaction occurred. The end result was the Plaintiff being charged two overdraft fees instead of one, as illustrated in ¶¶33-24.

9

33. Assuming *arguendo* that the highest to lowest posting order is proper, the following table illustrates these purchases *as* **FTB should have processed them** based on the dates when the customer incurred the charges:

| Date Processed | Description | Withdrawals (-) | Deposits (+) | Daily Balance |
|---|---|---|---|---|
| | Balance as of 8/7/2009 | | | $121.04 |
| 8/10/2009 | Debit Card Purchase on 8/8/2009 | ($22.92) | | $98.12 |
| 8/10/2009 | Debit Card Purchase on 8/8/2009 | ($21.55) | | $76.57 |
| 8/10/2009 | Debit Card Purchase on 8/8/2009 | ($5.49) | | $71.08 |
| 8/10/2009 | Debit Card Purchase on 8/8/2009 | ($5.38) | | $65.70 |
| 8/10/2009 | Debit Card Purchase on 8/8/2009 | ($4.46) | | $61.24 |
| 8/10/2009 | Debit Card Purchase on 8/8/2009 | ($1.76) | | $59.48 |
| 8/10/2009 | Merchant Payment on 8/10/2009 | ($34.51) | | $24.97 |
| 8/10/2009 | Merchant Payment on 8/10/2009 | ($21.29) | | $3.68 |
| 8/10/2009 | Merchant Payment on 8/10/2009 | ($8.32) | | ($4.64) |
| 8/11/2009 | Deposit | | $250.00 | $245.36 |
| 8/11/2009 | Merchant Payment on 8/11/2009 | ($52.00) | | $193.36 |
| 8/11/2009 | Merchant Payment on 8/11/2009 | ($32.00) | | $161.36 |
| 8/11/2009 | Merchant Payment on 8/11/2009 | ($10.81) | | $150.55 |
| 8/11/2009 | Merchant Payment on 8/11/2009 | ($2.12) | | $148.43 |
| 8/11/2009 | OVERDRAFT FEE incurred on 8/10/2009 ($37/charge) | ($37.00) | | $111.43 |

34. If the nine transactions posting to Plaintiff's account on August 10, 2009 had been posted in a chronological manner based on the date incurred and had not been

10

re-sequenced by FTB, only one overdraft charge for August 10, 2009 would have been assessed on August 11, 2009.[17]

**FTB Re-Sequences Transactions From Highest To Lowest Each Day To Maximize Overdraft Fees**

35.   FTB re-sequences charges incurred on an account in order of the largest amounts to the smallest amounts, regardless of the order in which the transactions occurred. This practice results in consumers' accounts being depleted more rapidly and thereby maximizes the overdraft fees incurred.

36.   As shown in ¶31, Plaintiff incurred excessive overdraft charges due to the re-sequencing of charges by FTB from highest to lowest on the posting date regardless of the order in which the transaction occurred.

37.   FTB chose to post charges from largest to smallest amounts, and in a non-chronological order, in order to maximize the number of overdraft fees it could charge to Plaintiff's account.

38.   As a result of this re-sequencing from highest to lowest on the posting date, FTB has improperly deprived Plaintiff of significant funds.

## CLASS ACTION ALLEGATIONS

39.   Plaintiff brings this suit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and all other similarly situated persons.

40.   Plaintiff seeks certification of an Illinois Class for the Illinois Consumer Fraud Act claim, which initially is defined as follows:

---

[17]   This result was reached by ordering transactions first chronologically, on the day incurred, and second in order from high to low.

> **All Illinois Fifth Third Bank ("FTB") customers who maintained checking accounts with FTB and who were assessed overdraft charges due to the re-sequencing of transactions.**

Excluded from the Illinois Class are FTB's current and former directors, officers, employees, agents and representatives, and members of their immediate families.

41. Plaintiff seeks certification of a national class pursuant to the claim for breach of contract or, alternatively, for the unjust enrichment claim, which is initially defined as follows:

> **All Fifth Third Bank ("FTB") customers in the United States who maintained checking accounts with FTB and who were assessed overdraft charges due to the re-sequencing of transactions.**

Excluded from the National Class are FTB's current and former directors, officers, employees, agents and representatives, and members of their immediate families.

42. <u>Numerosity.</u> The proposed Classes are each sufficiently numerous such that joinder is impractical. Upon information and belief, each Class consists of at least thousands of members which can be ascertained through FTB's records.

43. <u>Common Questions of Fact and Law</u>. Common questions of fact and law exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes, pursuant to Rule 23(b)(3). Questions of fact and law, which, among others not listed, predominate over any individual issues for each of the Classes are:

12

  a. Whether, in regard to the members of the Illinois Class, Defendant FTB violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2, through its unfair conduct in re-sequencing transactions;

  b. Whether Defendant FTB re-sequences transactions through batch processing;

  c. Whether Defendant FTB, by re-sequencing transactions causes FTB customers to be improperly charged additional overdraft charges;

  d. Whether Defendant FTB, by re-sequencing transactions and causing customers to be improperly charged additional overdraft charges breached their implied covenant of good faith under the contract providing the FTB's customers banking services; and

  e. Whether Defendant FTB has been unjustly enriched by improper overdraft charges.

44. <u>Typicality</u>.  Plaintiff's claims are typical of the claims of members of each of the Classes because Plaintiff and members of the Classes sustained damages arising out of Defendant's wrongful conduct as detailed herein.

45. <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Class members and has retained counsel competent and experienced in class action lawsuits.  Plaintiff has no interests antagonistic to or in conflict with those of Class members and therefore is an adequate representative for the Class members.

46. <u>Superiority</u>.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the joinder of all members of each of the Classes is impracticable.  Furthermore, the adjudication of this controversy

through a class action will avoid the possibility of an inconsistent and potentially conflicting adjudication of the claims asserted herein. There will be no difficulty in the management of this action as a class action

## FIRST CAUSE OF ACTION

**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act)**

47. Plaintiff repeats and re-alleges the allegations contained in each of the paragraphs of the Complaint as if fully set forth herein.

48. Defendant's acts and practices, as described herein, constitute unfair acts or practices in that they offend public policy, are immoral, unethical, oppressive, unjust, unconscionable, and/or unscrupulous, and caused and continue to cause substantial economic injury to Plaintiff and the putative Illinois Class. As such, Defendant's acts violate the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.* ("ICFA").

49. Defendant's unfair acts or practices described herein include, but are not limited to:

   a. the re-sequencing of charges from different days to maximize overdraft charges; and

   b. the re-sequencing of charges from the highest amount to the lowest amount each day to maximize overdraft charges.

50. As a result of Defendant's unfair acts or practices, Plaintiff and the Illinois Class have suffered injury in fact and have lost substantial money or property. Each overdraft incurs a charge.

51. Pursuant to ICFA , Plaintiff, on behalf of herself and the Illinois Class, are entitled to equitable relief, including all monies paid to Defendant as a result of its alleged misconduct, a permanent injunction enjoining Defendant from its unlawful and unfair business activities as alleged herein and requiring it to implement processes and procedures to protect Defendant's customers from transaction re-sequencing, and other appropriate relief as described herein.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

52. Plaintiff repeats and re-alleges the allegations contained in each of the paragraphs of this Complaint as if fully set forth herein.

53. Plaintiff entered into a contract with Defendant for banking services.

54. Plaintiff and members of the National Class performed their end of the bargain, or were excused from nonperformance by Defendant's conduct.

55. Implied in the contract was the promise to charge fees to customers such as Plaintiff and members of the National Class in accordance with principles of good faith and reasonableness.

56. Defendant breached its contract with Plaintiff and the Class members by re-sequencing transactions from the largest amounts to the smallest amounts (and across different days) to more rapidly deplete Plaintiff's and Class members' accounts to incur the greater number of overdraft charges.

57. As a direct and proximate result of Defendant's breach of contract, Plaintiff and Class members have been damaged in the manner set forth herein, in amounts to be determined at trial.

## **THIRD CAUSE OF ACTION**

### **(Unjust Enrichment)**

58. Plaintiff repeats and re-alleges the allegations contained in each of the paragraphs of this Complaint as if fully set forth herein, with exception to paragraphs 52 to 57. This claim is plead in the alternative to the second cause of action (Breach of Contract).

59. Defendant has been enriched by its unfair acts and/or practices alleged herein.

60. The unfair acts and/or practices allowed Defendant to unlawfully receive monies that would not have otherwise been obtained.

61. Plaintiff and members of the National Class have paid Defendant for overdraft charges which were improperly assessed as a result of Defendant re-sequencing transactions from the largest amounts to the smallest amounts and across different days.

62. Defendant lacks any legal or business justification for having engaged in an unfair course of conduct as alleged herein, at the expense of Plaintiff and members of the National Class.

63. No other remedy at law can adequately compensate Plaintiff and members of the National Class for the damages occasioned by Defendant's conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on her behalf and on behalf of the Classes set forth herein, prays for relief as follows:

A. For an order certifying the Classes as set forth herein, and appointing Plaintiff and her counsel to represent the Classes;

B. For an order awarding Plaintiff and the Class members actual and compensatory damages in an amount which may be proven at trial;

C. For an order awarding Plaintiff and the Class members restitution and/or disgorgement and other equitable relief as the Court deems proper;

D. For an order awarding Plaintiff and the Class members punitive damages as to the appropriate causes of action;

E. For an order enjoining Defendant under the Illinois Consumer Fraud Act, 815 § 505/1, *et seq.*, from continuing to engage in the acts and practices as alleged herein;

F. For an order awarding Plaintiff and the Classes pre-judgment and post-judgment interest, as well as their reasonable attorneys' and expert-witness fees and other costs pursuant to Ill. Code of Civil Procedure 5/2-1303, and other statutes as may be applicable; and

G. For an order awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues plead herein.

DATED: October 21, 2009         __/s/ Sharon Harris_____

Ben Barnow
Sharon Harris
**BARNOW AND ASSOCIATES, P.C.**
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504

*Counsel for Individual and Representative
Plaintiff Shannon Schulte*

**OF COUNSEL:**

Burton H. Finkelstein
Tracy D. Rezvani
Elizabeth K. Tripodi
Eugene J. Benick
**FINKELSTEIN THOMPSON LLP**
1050 30th St NW
Washington, DC 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090