## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **SHANNON SCHULTE, on behalf of herself and all others similarly situated** | ) ) ) | **Case No. 1:09-CV-06655** |
| | ) | **The Honorable Robert M. Dow, Jr.** |
| **Plaintiff,** | ) ) | |
| **-v-** | ) ) | |
| **FIFTH THIRD BANK** | ) ) | |
| **Defendant.** | ) ) | |

### PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM
### IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
### <u>AND PUBLISHING OF NOTICE, AND SETTING OF A FINAL FAIRNESS HEARING</u>

**TABLE OF CONTENTS**

I. THE LITIGATION .................................................................................................1

II. THE SETTLEMENT .............................................................................................1

III. CERTIFICATION OF THE SETTLEMENT CLASS .......................................4

   A. The Settlement Class Meets All the Requirements for Class Certification
      Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure ...............................5

        1. The Class is Sufficiently Numerous Because Joinder of All Members of
           the Class is Impracticable ...........................................................................5

        2. There are Questions of Law and Fact Common to the Settlement Class.....6

        3. Representative Plaintiffs' Claims are Typical of the Settlement Class .......7

        4. Rule 23(a)'s Adequacy Requirement is Satisfied .......................................8

   B. The Requirement of Rule 23(b)(3) are Satisfied ........................................................8

IV. NOTICE................................................................................................................11

   A. Contents of Notice ...................................................................................................12

        1. Opting Out ..................................................................................................12

        2. Objecting ....................................................................................................13

   B. Scope of Notice ........................................................................................................14

V. PRELIMINARY APPROVAL IS APPROPRIATE...........................................15

VI. CONCLUSION....................................................................................................18

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................................4, 9, 10

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ...................................................................1, 2, 15, 16

*Bennett v. Behring Corp.*,
   96 F.R.D. 343 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) .......................................11

*Carnegie v. Household Int'l, Inc.*,
   376 F.3d 656 (7th Cir. 2004) ...............................................................................10

*Cotton v. Asset Acceptance, LLC*,
   No. 07 C 5005, 2008 WL 2561103 (N.D. Ill. June 26, 2008) ..................................10

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
   89 F.R.D. 87 (S.D.N.Y. 1981) ...............................................................................9

*Eisen v. Carlisle and Jacquelin*,
   417 U.S. 156 (1974) ............................................................................................11

*Felzen v. Andreas*,
   134 F.3d 873 (7th Cir. 1998) ................................................................................2

*Gasper v. Linvatec Corp.*,
   167 F.R.D. 51 (N.D. Ill. 1996) ..............................................................................7

*Gomez v. Illinois State Bd. of Educ.*,
   117 F.R.D. 394 (N.D. Ill. 1987) ............................................................................8

*Hispanics United of DuPage County v. Vill. of Addison, Ill.*,
   988 F. Supp. 1130 (N.D. Ill. 1997) .......................................................................15

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) ................................................................................16

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ....................................................................................4

ii

*In re Lupron Marketing and Sales Practices Litig.*,
   228 F.R.D. 75 (D. Mass. 2005) ................................................................9

*In re Prudential Sec. Ltd. P'ship Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................4

*In re Stock Exch. Options Trading Antitrust Litig.*,
   No. 99 Civ. 0962, 2005 WL 1635158 (S.D.N.Y. July 8, 2005) ...............16

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) .................................................................15

*Kaufman v. Am. Exp. Travel Related Servs. Co.*,
   264 F.R.D. 438 (N.D. Ill. 2009) .........................................................1, 16

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) ...................................................................7

*Mace v. Van Ru Credit Corp.*,
   109 F.3d 338 (7th Cir. 1997) .................................................................10

*Maxwell v. Arrow Fin. Servs., LLC*,
   No. 03 C 1995, 2004 WL 719278 (N.D. Ill. Mar. 31, 2004) .....................6

*Meiresonne v. Marriot Corp.*,
   124 F.R.D. 619 (N.D. Ill. 1989) ...............................................................6

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .............................................................................14

*Murray v. GMAC Mortgage Corp.*,
   434 F.3d 948 (7th Cir. 2006) .................................................................10

*Patrykus v. Gomilla*,
   121 F.R.D. 357 (N.D. Ill. 1988) ...........................................................5, 6

*Peters v. Nat'l R.R. Passenger Corp.*,
   966 F.2d 1483 (D.C. Cir. 1992) .............................................................11

*Phillips Co. v. Shutts*,
   472 U.S. 797 (1985) .........................................................................10, 14

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ..............................................................6, 8

iii

*Swanson v. Am. Consumer Indus.*,
   415 F.2d 1326 (7th Cir. 1969) ............................................................................................5

*Twigg v. Sears, Roebuck & Co.*,
   153 F.3d 1222 (11th Cir. 1998) ........................................................................................11

Statutes

28 U.S.C.A. §1715 ........................................................................................................................12

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

Other Authority

*Manual for Complex Litig.* (Third) § 30.41 at 237 (1995) ....................................................2, 16

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 4.21, 4.25 (1992) .................9

NOW COMES plaintiff, Shannon Schulte ("Plaintiff"), individually and on behalf of the Settlement Class (as defined in the Settlement Agreement and stated below), by and through counsel, and in support of her Motion for and Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement and Publishing of Notice, and Setting of a Final Fairness Hearing, states as follows:

## I.    THE LITIGATION

On October 21, 2009, Plaintiff initiated this consumer class actions against the defendant, Fifth Third Bank ("Fifth Third" or "Defendant"), alleging that Fifth Third's practice of re-sequencing its customers' debit/check card transactions from highest to lowest monetary value before processing such charges was unlawful. On February 1, 2010, Marlene Willard[1] filed a similar action in the Northern District of Georgia against Fifth Third, relating to Defendant's practice of re-sequencing its customers' debit/check card transactions from highest to lowest monetary amount prior to processing such transactions.

## II.    THE SETTLEMENT

After extensive and arm's length negotiations, Representative Plaintiffs and Fifth Third (collectively the "Settling Parties") entered into a Settlement Agreement, a copy of which is attached hereto as Exhibit A. The settlement is an excellent one, providing valuable and important benefits for Settlement Class Members, and readily meets the standard for preliminary approval—that is, it is well within the required range of possible approval. *Kaufman v. Am. Exp. Travel Related Servs. Co.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009) (quoting *Armstrong v. Bd. of*

---

[1] The term "Representative Plaintiffs" means Shannon Schulte and Marlene Willard. Additionally, the term "Proposed Settlement Class Counsel" means: Ben Barnow, Barnow and Associates, P.C.; Burton H. Finkelstein, Finkelstein Thompson LLP; Hassan A. Zavareei, Tycko & Zavareei LLP; and David J. Worley, Evangelista & Associates. While Plaintiff Willard is not a party to the Illinois action, upon entry of final approval of this settlement, the *Willard* action will be dismissed with prejudice in the Northern District of Georgia.

*Sch. Dirs. of City of Milwaukee,* 616 F.2d 305, 314 (7th Cir.1980), *overruled on other grounds*

*by Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998)); *Manual for Complex Litig.* (Third) § 30.41

at 237 (1995) (explaining the standard for preliminary approval). The Settlement Agreement

provides, *inter alia*:

> **A. Settlement Fund.** Fifth Third shall establish a $9,500,000 Settlement Fund, from which Settlement Class Members may receive reimbursement for overdraft charges incurred during any one continuous forty-five day period from October 21, 2004 to July 1, 2010, which were caused by Fifth Third's re-sequencing of debit/check card transactions. [Settlement Agreement ¶¶ 9, 23, 24]

> **B. Modification of Business Practices.** Fifth Third has agreed that it will modify its business practices so that charges from Fifth Third debit card transactions will no longer be re-sequenced from highest to lowest monetary amount prior to being processed. Rather, Fifth Third has agreed that it will process all such charges in chronological order (*i.e.*, in the order that they are presented to Fifth Third for payment, regardless of amount). [Settlement Agreement ¶ 10(a)]

> **C. Overdraft Assistance.** At Defendant's call centers, all telephone operators will be trained on issues related to overdraft fees and other overdraft issues, and will have the ability and authority to waive any overdraft fee for good cause ("good cause" may include, but not be limited to, an automatic waiver of one (1) overdraft fee per year, plus those resulting from errors in account reporting and other hardship situations such as hospitalization or illness causing an inability to examine account balances (medical documentation may be required for such claims)). [Settlement Agreement ¶ 10(b)]

> **D. Potential Trebling of Settlement Class Member Claims.** After the costs of Notice and Claims administration, attorneys' fees, costs, and expenses, and incentive awards are distributed, if the amount of valid claims submitted by Settlement Class Members is less than the amount of money remaining in the Settlement Fund, the remainder shall be distributed on a *pro rata* basis to each Settlement Class Member submitting a valid claim, with each such Settlement Class Member receiving up to (but not to exceed) three times the amount claimed on their Claim Form. [Settlement Agreement ¶ 30 (a)(ii)]

> **E. Cy Pres.** All amounts remaining in the Settlement Fund after the trebling distribution described above shall be distributed through a *cy pres* to one (1) nonprofit credit counseling organization, which shall be agreed to by Settling Parties and subject to the approval of the Court, in each of the twelve (12) states that Defendant has branches (Ohio, Illinois, Georgia, Florida, Tennessee,

Kentucky, Indiana, West Virginia, North Carolina, Missouri, Michigan, and Pennsylvania). [Settlement Agreement ¶¶ 30(c)(iii), 31]

**F. Notice and Claims Administration.** The costs of Notice and Claims Administration, subject to certain exclusions[2], shall be paid from the Settlement Fund, which is to be funded by Fifth Third, and payment of all such costs will be the sole responsibility of Fifth Third. [Settlement Agreement ¶¶ 14, 20, 22].

**G. Attorneys' fees, costs, and expenses.** Attorneys' fees, costs, and expenses, and incentive awards, subject to the approval of the Court, shall be paid from the Settlement Fund. [Settlement Agreement ¶¶ 11, 12, 29]

The Settlement Agreement is supported by Representative Plaintiffs and Proposed Settlement Class Counsel. The Settlement is intended to resolve all claims relating to Fifth Third's practice of re-sequencing certain debit/check card transactions during the Class Period. Representative Plaintiffs submit that the settlement is not only within the range of fair, adequate and reasonable under the relevant facts, but is in fact fair, adequate and reasonable, and should be preliminarily approved by the Court concurrent with certification of the requested Settlement Class. Accordingly, Representative Plaintiffs, by and through Proposed Settlement Class Counsel, respectfully move the Court for entry of an order:

(1) Preliminarily approving the settlement as set forth in the Settlement Agreement;

(2) Approving the Notice Plan;

(3) Appointing Hilsoft Notifications as Notice Administrator;

(4) Appointing the claims administrator agreed to by the Settling Parties as Claims Administrator;

---

[2] Fifth Third shall be responsible for the following activities, the costs of which will not be reimbursed from the Settlement Fund: the printing and mailing of stuffers in monthly statements; the purchasing of all materials relating to the printing and mailing of stuffers in monthly statements; the printing of language on the outside of envelopes containing such monthly statements advising Settlement Class Members of the class action Settlement Notice documents contained therein; the printing of language on the concerned monthly statements advising Settlement Class Members of the class action Settlement Notice documents; the maintenance of a banner on Defendant's website viewable by all Fifth Third customers and identifying the settlement website address. [Settlement Agreement ¶ 15]

(5) Certifying the Settlement Class;

(6) Appointing Shannon Schulte and Marlene Willard as Representative Plaintiffs;

(7) Appointing as Settlement Class Counsel: Ben Barnow, Barnow and Associates, P.C.; Burton H. Finkelstein, Finkelstein Thompson LLP; Hassan A. Zavareei, Tycko & Zavareei LLP; and David J. Worley, Evangelista & Associates; and

(8) Scheduling a Final Fairness Hearing in this matter.

## III.    CERTIFICATION OF THE SETTLEMENT CLASS

 "The settlement class device has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims," where the claims are small.  *In re Prudential Sec. Ltd. P'ship Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995); *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (holding that courts should favor the use of devices, including settlement classes, that foster negotiated conclusions to class actions).  A settlement class in complex litigation "actually enhances absent class members' opt-out rights because the right to exclusion is provided simultaneously with the opportunity to accept or reject the terms of a proposed settlement." *In re Prudential*, 163 F.R.D. at 205.

Prior to granting preliminary approval of a class action settlement, it is appropriate for a Court to certify a class for settlement purposes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  The Settling Parties have stipulated, for Settlement purposes only, to the following definition of the Settlement Class:

> All persons in the United States who hold or held a Fifth Third Account who at any time during the Class Period incurred at least one Overdraft Fee (as defined in the Settlement Agreement) associated with at least one Fifth Third Debit Card Transaction.

Settlement Agreement ¶ 7. Excluded from the Settlement Class are Fifth Third Bank, any parent, subsidiary, affiliate or sister company of Fifth Third Bank, and all officers or directors of Fifth Third Bank or any parent, subsidiary, affiliate or sister company at any time during the Class Period, and the legal representatives, heirs, successors, and assigns of any of the foregoing. *Id.* The Court presiding over any motion to approve the Settlement Agreement is excluded from the Settlement Class. *Id.* Also excluded from the Settlement Class is any person who timely submits a valid request to be excluded from this Settlement. *Id.*

The requirements of Rule 23 are readily satisfied in this matter. Thus, respectfully, the Settlement Class should be certified.

**A. The Settlement Class Meets All the Requirements for Class Certification Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure**

Rule 23(a) sets forth the following prerequisites for certifying a class: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are satisfied in this matter.

**1. The Class is Sufficiently Numerous Because Joinder of All Members of the Class is Impracticable**

Fed. R. Civ. P. 23(a)(1) requires a showing that "the class is so numerous that individual joinder of all members is impracticable." Fed. R. Civ. Proc. 23(a)(1). No "magic number" is necessary. *See Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). Courts in this judicial circuit have certified classes with less than 50 members. *Patrykus v.*

5

*Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988). The Settlement Class is estimated to include hundreds of thousands if not more than one million persons. Thus, the numerosity requirement is satisfied.

### 2. There are Questions of Law and Fact Common to the Settlement Class

Fed. R. Civ. P. 23(a)(2) requires that "there are questions of law or fact common to the class." "Commonality is not a demanding requirement: It calls only for the existence of at least one issue of fact or law common to all class members." *Meiresonne v. Marriot Corp*., 124 F.R.D. 619, 622 (N.D. Ill. 1989). The existence of a common nucleus of operative facts is usually enough to establish commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *Maxwell v. Arrow Fin. Servs., LLC*, No. 03 C 1995, 2004 WL 719278, *3 (N.D. Ill. Mar. 31, 2004) (a common nucleus of operative facts is present when a "defendant has allegedly directed standardized conduct toward the putative class members.") (citations omitted).

Questions of law and fact common to all Settlement Class Members exist, and include, *inter alia*:

a. Whether Fifth Third's practice of re-sequencing Settlement Class Members' debit/check card transactions by monetary value prior to processing such transactions violated applicable consumer protection statutes;

b. Whether Settlement Class Members were damaged as a result of Fifth Third's practice of re-sequencing their debit/check card charges by monetary value prior to processing such transactions, and, if so, what the proper measure of such damages is;

c. Whether Fifth Third's deposit agreement with Settlement Class Members constitutes an enforceable contact, and, if so, whether said deposit agreement expressly authorized Fifth Third to re-sequence Settlement Class Members' debit/check card transactions by monetary value prior to processing such transactions;

6

    d.      Whether Fifth Third's practice of re-sequencing Settlement Class Members' debit/check card transactions by monetary value prior to processing such transactions breached the covenant of good faith implied into any contract between Settlement Class Members and Fifth Third Bank; and

    e.      Whether Defendant was unjustly enriched as the result of re-sequencing Settlement Class Members' debit/check card transactions from highest to lowest amount prior processing such transactions.

These legal and factual questions are common to each member of the Settlement Class. Therefore, the commonality requirement is satisfied.

### 3. Representative Plaintiffs' Claims are Typical of Those of the Settlement Class

Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Whether a plaintiff's claims are typical of those of the other class members is closely related to the commonality inquiry. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.* Typicality does not require claims to be "identical," and is generally "liberally construed." *Gasper v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

Representative Plaintiffs' claims arise from the same course of conduct as the other Settlement Class Members' claims. Representative Plaintiffs and all other Settlement Class Members were subject to the same policy of Fifth Third of re-sequencing certain debit/check card transactions, and all incurred overdraft fees as a result of said policy. Additionally, Representative Plaintiffs and all other Settlement Class Members claims are premised on the same legal theories. Accordingly, the typicality requirement is satisfied.

7

### 4. Rule 23(a)'s Adequacy Requirement is Satisfied

Rule 23(a)(4) of the Federal Rules of Civil Procedure requires that: "(a) the plaintiffs' attorney[s] must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiffs must not have interests antagonistic to those of the class." *Rosario*, 963 F.2d at 1018. With regard to counsel, whereas here, attorneys have been found to be adequate in the past, it is persuasive evidence that they will be adequate again. *Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Representative Plaintiffs do not have any claims antagonistic to or in conflict with those of the other Settlement Class Members, as Representative Plaintiffs are pursuing the same legal theories as the rest of the Settlement Class relating to the same course of Defendant's conduct. Additionally, Proposed Settlement Class Counsel each have extensive backgrounds in litigating many complex litigation and consumer class actions, have been appointed class counsel in numerous cases, and have the resources necessary to prosecute this action to its conclusion. *See* Resumes of Proposed Settlement Class Counsel, attached hereto as Exhibit B. Thus, the adequacy requirement of Rule 23(a)(4) is satisfied.

### B. The Requirements of Rule 23(b)(3) are Satisfied

Rule 23(b)(3) authorizes class actions to proceed where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating

8

the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.* "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve the economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 92 (D. Mass. 2005) (citing *Amchem*, 521 U.S. at 615). Where, as here, a court is deciding on the certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes do not have to be considered. *Amchem*, 521 U.S. at 619. The remaining elements or Rule 23, however, continue to apply in settlement-only certification situations. *Id.* at 619.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Lupron*, 228 F.R.D. at 91 (*citing Amchem*, 521 U.S. at 623). "Rule 23(b)(3) does not require that *all* questions of law or fact be common; it only requires that the common questions *predominate* over individual questions." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981) (emphasis added); s*ee generally* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 4.21, 4.25 (1992). As demonstrated *supra* at 6 when addressing commonality, several issues of law and fact common to all Settlement Class Members are present in this matter. These common issues of law and fact predominate over any potential individual issues which may arise, as they could be resolve through the presentment of proof common to all Settlement Class Members. Thus, the predominance requirement of Rule 23(b)(3) is satisfied.

Additionally, the superiority requirement of Fed. R. Civ. P. 23(b)(3) is satisfied. "[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *Cotton v. Asset Acceptance, LLC*, No. 07 C 5005, 2008 WL 2561103 * 6 (N.D. Ill. June 26, 2008) ("the Seventh Circuit teaches that class treatment for actions involving thousands of consumer class members with the same claim are superior to individual actions") (quoting *Murray v. GMAC Mortgage Corp.* 434 F.3d 948, 953 (7th Cir. 2006)). Where, as here, a court is deciding on the certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes do not have to be considered. *Amchem*, 521 U.S. at 619 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

A class action is not only the most desirable, efficient, and convenient mechanism to resolve the claims of the Settlement Class, but it is almost certainly the only fair and efficient means available to adjudicate such claims. *See, e.g., Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [in such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available"). Individual Settlement Class Members likely would be unable or unwilling to shoulder the great expense of litigating the claims at issue against Defendant given the comparatively small size of each individual Settlement Class Members' claims. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) (stating that the "policy at the very core of the class action mechanism is to overcome the problem that small

10

recoveries do not provide the incentive for any individual to bring a solo action"). Thus, is desirable to adjudicate this matter as a class action.

## IV.    NOTICE

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement . . . ." Fed R. Civ .P. 23(e)(1)(B). Pursuant to Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances." The purpose of notice is to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp*., 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173–74 (1974)). Further, notice must fairly describe the litigation and the proposed settlement and its legal significance. *See, e.g., Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) ("[The notice] must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member[.]"); *Bennett v. Behring Corp*., 96 F.R.D. 343, 353 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) ("It is not the function of the settlement notice to fully inform the class of all the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to specifics may be obtained."). The Notice Plan, attached as Exhibit 1 to the Settlement Agreement, satisfies the requirements of Rule 23 and all relevant Due Process concerns.

## A.    Contents of Notice

Hilsoft Notifications, a nationally recognized class action notice provider, has created a comprehensive Notice Plan.  The proposed Summary Notice and Detailed Notice (hereinafter, collectively, "Notice") are included within Attachment B to the Notice Plan. Notice includes a fair summary of Settling Parties respective litigation positions; the general terms of the settlement as set forth in the Settlement Agreement; instructions for how to opt-out of or object to the settlement; the process and instructions for making a claim; and the date, time, and place of the Final Fairness Hearing. *Id.* The date that the Court sets for the Final Fairness Hearing should take into consideration that the Class Action Fairness Act ("CAFA") requires that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C.A. §1715(b)]." 28 U.S.C.A. §1715(d). Defendant is responsible for effectuating the required CAFA notice, and will advise Proposed Settlement Class Counsel when such notice is effectuated. Settlement Agreement ¶ 48.

### 1.    Opting Out

Any member of the Settlement Class who wishes to opt out of the Settlement Class must individually sign and timely submit written notice ("notice of exclusion") clearly manifesting his or her intent to be excluded from the Settlement Class to the designated Post Office box established for such purpose. *Id.* ¶ 17. The written notice must refer to *Schulte, et al. v. Fifth Third Bank* or *Willard, et al. v. Fifth Third Bancorp* and must list the account number(s) of the Settlement Class Member's Fifth Third account(s) linked to a Fifth Third debit card. *Id.* In addition, the written notice must include, for each account listed: (1) the full names and current addresses of everyone whose name is on the account; (2) a statement that everyone whose name

12

is on the account satisfies the criteria set forth in Paragraph 7 of the Settlement Agreement to be a Settlement Class Member; (3) a statement of intention to exclude everyone whose name is on the account from the Settlement Class; and (4) the signature of every person whose name is on the account. *Id.* To be effective, written notice must be postmarked at least twenty-one (21) days prior to the date as set by the Court in the Notice for the Final Fairness Hearing. *Id.*

### 2.    Objecting

Any member of the Settlement Class who wishes to object to the settlement must timely file a written statement of objection with the Court.[3] *Id.* ¶ 19. To be timely, a written statement of an objection in appropriate form must be filed with the Clerk of the United States District Court for the Northern District of Illinois, at a courthouse location to be designated by the Court, twenty-one (21) days prior to the date set in the Notice for the Final Fairness Hearing, and also served on Proposed Settlement Class Counsel, Ben Barnow, Barnow and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago, Illinois, 60602, and Defendant's counsel, Patrick F. Fischer, Keating, Muething & Klekamp PLL, One East Fourth Street, Suite 1400, Cincinnati, Ohio 45202. *Id.*

---

[3] The written statement of objection must set forth: (i) the title of the Action; (ii) the objector's full name, address, and telephone number, (iii) all grounds for the objection, accompanied by any legal support for the objection known to the objector or his or her counsel; (iv) the identify of all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing; (vi) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Fairness Hearing; (viii) a list of all other objections filed by the objector during the five (5) years prior to the date the objection was filed with the Court; (ix) a list of all other objections filed by the objector's counsel during the five (5) years prior to the date the objection was filed with the Court; and (x) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representations). Settlement Agreement ¶ 19.

**B.  Scope of Notice**

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), the United States Supreme Court described the due process standard for notice as "[n]otice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314; *see also Shutts*, 472 U.S. at 812. The Notice Plan is comprehensive and more than satisfies this standard, as it provides for notice to be provided to Settlement Class Members within Fifth Third monthly statements, through mailings, and by publication.

Potential Settlement Class Members who receive paper monthly statements from Fifth Third will receive summary notice within a monthly statement. Notice Plan at 4. The envelopes containing such statements and notice will be labeled to alert Settlement Class Members that such envelops include important legal information, and the statements themselves will direct Settlement Class Members to the included notice. *Id.* at 4. Potential Settlement Class Members who receive monthly statements electronically and have elected not to receive monthly paper statements by mail will receive a postcard containing summary notice and directing them to the settlement website. *Id.* at 4, 8. Additionally, Potential Settlement Class Members whose Fifth Third accounts are closed will be sent summary postcard notice by mail. *Id.*

The Notice Plan also includes a publication element. *Id.* at 4. A summary notice will appear once on a weekday in the highest circulation daily newspapers in nineteen (19) selected media markets with the highest number of Fifth Third branch offices. *Id.* Additionally, an informational release approved by Settling Parties and the Court will be issued to approximately 4,490 major press outlets throughout the United States. *Id.* at 5.

14

Finally, as noted above, an informational website will be established and will contain documents and other information regarding the Settlement. *Id.* The website will also allow Settlement Class Members to fill-out and submit claim forms electronically, and to print claims forms. *Id.* at 14. Additionally, throughout the class period, a banner displaying the notice headline will be posted on Fifth Third's website viewable by all Fifth Third customers. *Id.* at 5, 12. The banner will include the address of the settlement website. *Id.*

## V.     PRELIMINARY APPROVAL IS APPROPRIATE

Federal courts naturally favor the settlement of class action litigation.  *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Courts look upon the settlement of lawsuits with favor because such settlements promote "the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a mutually agreeable outcome." *Hispanics United of DuPage County v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997).  Indeed compromise is particularly appropriate in complex class actions.  *Id.*

In *Armstrong v. Bd. of Sch. Dirs. Of City of Milwaukee*, the Seventh Circuit detailed the two-step process that district courts use to review class action settlements:

> District court review of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. [Citation.] If the district court finds a settlement proposal 'within the range of possible approval,' it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

15

*Kaufman v. Am. Exp. Travel Related Servs. Co.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009) (quoting *Armstrong*, 616 F.2d at 314, *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)). "Also relevant to whether a proposed settlement should be preliminarily approved is whether it 'has no obvious deficiencies [and] does not improperly grant preferential treatment to class representatives or segments of the class.'" *Kaufman v. Am. Exp. Travel Related Servs. Co.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009) (quoting *In re Stock Exch. Options Trading Antitrust Litig.*, No. 99 Civ. 0962, 2005 WL 1635158, at *5 (S.D.N.Y. July 8, 2005)).

That there were serious, informed and non-collusive negotiations held in arriving at the proposed settlement is beyond dispute. Additionally, there are also no obvious flaws in the settlement or distribution plan, and no segment of the proposed settlement class is unduly favored over any other. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981); *Manual for Complex Litigation* at § 30.41 (noting that where the proposed settlement appears to be the product of "serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval should be granted").

The relief the Settlement Agreement provides for Settlement Class Members is outstanding. Fifth Third has agreed to create a settlement fund of $9.5 million to reimburse Settlement Class Members for an unlimited number of Overdraft Fees suffered during any one continuous 45 day period between October 21, 2004, and July 10, 2010. *See* Settlement Agreement ¶¶ 9, 24-24. There is no limit on the amount a Settlement Class Member may recover, and, Settlement Class Members submitting valid claims could potentially receive up to three times the amount of reimbursement requested. When compared to a settlement finally

16

approved by a California State Court in *Closson v. Bank of America N.A.*, No. CGC 04436877 (Cal. Super. Ct. 2009), the substantial and excellent relief provided for by the Settlement becomes readily apparent.[4] The *Closson* defendant was Bank of America, a company which reported assets of over ten times those of Fifth Third during the relevant time period (from 2004 until 2009), and the settlement provided for Bank of America to establish a $35 million settlement fund from which settlement class members could seek relief for harms suffered during a seven (7) years class period, not to exceed $78 per settlement class member. *See Closson v. Bank of America N.A.*, No. CGC 04436877, Final Settlement Agreement, ¶ 10 (Cal. Super. Ct. July 30, 2008) (hereinafter "Closson Settlement"). Despite the fact that Fifth Third reported assets of less than a tenth of those of Bank of America during the relevant time period, the Settlement Agreement provides for the creation of a $9.5 million Settlement Fund that is approximately one-third of the size of the $35 million settlement fund created in *Closson*. Settlement Agreement ¶ 9; *Closson* Settlement ¶ 10. By extension, the Settlement here, had it followed the formula in *Closson*, would equate to approximately $2.3 million. As the Settlement Fund at issue is four times as large, the Settlement is well within the ballpark the range of possible reasonable settlement.[5]

Additionally, the settlement provides for substantial non-monetary relief. *See Synfuel Tech.*, 463 F.3d at 654 (stating that Airborne's future changes will benefit those class members who continue to purchase services from Airborne). Fifth Third has agreed to end its practice of re-sequencing its customers' debit/check card transactions prior to processing such charges, and

---

[4] *See* Order Finally Approving Class Action Settlement, *Closson v. Bank of America N.A.*, No. CGC 04436877 (Cal. Super. Ct. Aug. 3, 2009), attached hereto as Exhibit C. A copy of the settlement agreement approved in *Closson* is attached hereto as Exhibit D.

[5] Moreover, the amount an individual class member can seek to recover is uncapped, as opposed to *Closson* where the class members could only be reimbursed up to $78. *Cf.* Settlement Agreement ¶ 24 with *Closson* Settlement ¶ 10.

will begin processing such transactions in the order Fifth Third receives them. Settlement

Agreement ¶ 10(a). This change in practices is significant, as it will almost certainly result in

Fifth Third customers' incurring fewer overdraft fees in the future. Additionally, Fifth Third has

agreed to train its telephone operators with respect to overdraft issues, and that such operators

will have authority to waive overdraft fees for good cause. *See* Settlement Agreement ¶ 10(b).

Finally, the settlement includes an important *cy pres* distribution. *Id.* ¶ 31. Funds

remaining in the Escrow Account after distributions to the Settlement Class, the costs of claims

administration and notice, attorneys' fees, costs, and expenses, and incentive awards, will not

revert to Defendant, but rather will be distributed through a *cy pres*. *Id.* This *cy pres* shall be

distributed to:

> one (1) nonprofit credit counseling organization in each of the 12 states that
> Defendant has branches (Ohio, Illinois, Georgia, Florida, Tennessee, Kentucky,
> Indiana, West Virginia, North Carolina, Missouri, Michigan, and Pennsylvania).
> The Settling Parties shall agree on the designated nonprofit organization in each
> state, subject to the approval of the Court.

*Id.* Thus, the remaining Settlement Funds will be distributed to nonprofit credit counseling

agencies, a substantial and important benefit to the Settlement Class, and all other consumers

located in those states.

## VI.    CONCLUSION

WHEREFORE, based on foregoing, Representative Consumer Plaintiffs respectfully request

that the Court enter an Order:

> (1) Preliminarily approving the settlement as set forth in the Settlement
>      Agreement;
>
> (2) Approving the Notice Plan;
>
> (3) Appointing Hilsoft Notifications as Notice Administrator;

18

(4) Appointing the claims administrator agreed to by the Settling Parties as Claims Administrator;

(5) Certifying the Settlement Class;

(6) Appointing Shannon Schulte and Marlene Willard as Representative Plaintiffs;

(7) Appointing as Settlement Class Counsel: Ben Barnow, Barnow and Associates, P.C.; Burton H. Finkelstein, Finkelstein Thompson LLP; Hassan A. Zavareei, Tycko & Zavareei LLP; and David J. Worley, Evangelista & Associates; and

(8) Scheduling a Final Fairness Hearing in this matter.


Dated: May 27, 2010

Respectfully submitted,


__/s/ Ben Barnow_____
Ben Barnow
**Barnow and Associates, P.C.**
1 North LaSalle, Suite 4600
Chicago, IL 60602
(312) 621-2000

Of counsel:

Burton H. Finkelstein
**Finkelstein Thompson LLP**
The Duvall Foundry
1050 30th Street, N.W.
Washington, D.C. 20007
(202) 337-8000

Hassan A. Zavareei
**Tycko & Zavareei LLP**
Suite 808
2000 L Street, N.W.
Washington, D.C. 20036
(202) 973-0900

19

David James Worley
**Evangelista & Associates, LLC**
One Glenlake Parkway
Suite 700
Atlanta, GA 30328
404-478-7195

*Proposed Settlement Class Counsel*

**<u>Certificate of Service by Electronic Means</u>**

     I, Ben Barnow, one of the attorneys for Plaintiff, hereby certify that the proceeding document was caused to be served electronically this 27th day of May 2010, pursuant to ECF as to Filing users, and that I shall comply with LR 5.5 as to any party who is not a filing user or represented by a filing user.

                                          /s/ Ben Barnow_____

21

### List of Exhibits

Settlement Agreement...........................................................................................................A

Resumes of Proposed Settlement Class Counsel ..........................................................B

Order Finally Approving Class Action Settlement,
*Closson v. Bank of America N.A.*, No. CGC 04436877 (Cal. Super. Ct. Aug. 3, 2009) ...............C

Settlement Agreement,
*Closson v. Bank of America N.A.*, No. CGC 04436877 (Cal. Super. Ct.) .....................................D