**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHANNON SCHULTE, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No. 1:09-cv-06655 |
| -v- | The Honorable Robert M. Dow, Jr. |
| FIFTH THIRD BANK, | |
| Defendant. | |

**OBJECTIONS OF MICHELLE KEYES, AMANDA RATLIFF, AND VERDEL RATLIFF**
**TO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**
**OF PROPOSED CLASS ACTION SETTLEMENT**

Michelle Keyes, the named plaintiff in *Keyes v. Fifth Third Bank*, S.D. Fla. Case No. 10-cv-21283, an overlapping class action made part of Multidistrict Litigation Proceeding No. 2036, *In re Checking Account Overdraft Litigation*, assigned to the Hon. James Lawrence King (the "MDL,") as well as Amanda and Verdel Ratliff, members of the proposed settlement class, by and through their counsel, including Plaintiffs' Lead Counsel and Plaintiffs' Executive Committee appointed by Judge King to represent the interests of Fifth Third class members in the MDL, respectfully submit the following objections to the proposed settlement.

## I.  <u>INTRODUCTION</u>

The proposed settlement is fundamentally flawed and should not be granted preliminary approval.  The Court cannot determine whether the proposed settlement is adequate, because the parties have not presented any estimate of class member damages.  The proposed plan of allocation is inequitable and unfair, in that it would give many class members a windfall while leaving others undercompensated.  The settlement was negotiated with insufficient discovery to enable Plaintiffs' counsel to determine the settlement value of the class' claims.  Finally, the proposed claims process is unnecessary, and unduly burdensome to class members.  For all these reasons, the proposed settlement is not deserving of preliminary approval, which should be denied.

## II.  <u>NEITHER THE COURT NOR CLASS MEMBERS CAN DETERMINE THE ADEQUACY OF THE SETTLEMENT WITHOUT A RELIABLE ESTIMATE OF CLASS MEMBER DAMAGES, BUT NO SUCH ESTIMATE HAS BEEN PRESENTED</u>

In *Reynolds v. Beneficial Nat. Bank*, 288 F. 3d 277 (7th Cir. 2002), the Seventh Circuit criticized the district court for approving a class action settlement as adequate without first requiring a reliable estimate of class member damages, which is the only yardstick against which the adequacy of a settlement can be measured:

- 1 -

We do not know whether the $25 million settlement that the district judge approved is a reasonable amount given the risk and likely return to the class of continued litigation; we do not have sufficient information to make a judgment on that question. What we do know is that, as in such cases as *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1124 (7th Cir.1979); *Ficalora v. Lockheed California Co.*, 751 F.2d 995, 997 (9th Cir.1985) (per curiam); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1150-51 (11th Cir.1983), and *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214, 1218-19 (5th Cir.1978), the judge did not give the issue of the settlement's adequacy the care that it deserved.

In finding that $25 million was an adequate settlement, the judge relied in part on an unsworn report by James Adler, an accountant who purported to estimate the damages caused by the defendants' alleged violations of law. He was not deposed or subjected to cross-examination and the judge did not discuss the adequacy of his methodology. Adler came up with a figure of $60 million, but it is unclear whether this was intended to be an estimate of the entire damages that the class might hope to recover if the case was tried and went to judgment and what legal assumptions underpinned the estimates.

\* \* \*

Although there is no proof that the settlement was actually collusive in the reverse-auction sense, the circumstances demanded closer scrutiny than the district judge gave it. He painted with too broad a brush, substituting intuition for the evidence and careful analysis that a case of this magnitude, and a settlement proposal of such questionable antecedents and circumstances, required.

\* \* \*

[T]he judge should have made a greater effort (he made none) to quantify the net expected value of continued litigation to the class, since a settlement for less than that value would not be adequate. Determining that value would require estimating the range of possible outcomes and ascribing a probability to each point on the range . . . .

A high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes. Still, much more could have been done here without (what is obviously to be avoided) turning the fairness hearing into a trial of the merits. For example, the judge could have

> insisted that the parties present evidence that would enable four
> possible outcomes to be estimated: call them high, medium, low,
> and zero. . . . Some approximate range of percentages, reflecting
> the probability of obtaining each of these outcomes in a trial (more
> likely a series of trials), might be estimated, and so a ballpark
> valuation derived.

*Id*. at 280, 282-85 (citations omitted). *See also Reynolds v. Beneficial Nat. Bank*, 260 F. Supp.

2d 680 (N.D. Ill. 2003) (opinion after remand; declining to approve settlement and disqualifying

class counsel due to attempt to settle case without first undertaking sufficient discovery to

estimate class damages); *In re Microsoft Antitrust Litig*., 185 F. Supp., 2d 519, 526-27 (D. Md.

2002) (declining to grant preliminary approval to proposed class action settlement where, as

here, the record contained insufficient "information by which to . . . reach a conclusion as to a

reasonable range of value").

        In lieu of providing an estimate of the damages sustained by Fifth Third customers, the

settlement proponents argue that the amount offered in settlement is greater, on the basis of the

bank's relative assets, than a settlement of similar claims against Bank of America approved by a

California state court in *Closson v. Bank of America N.A*., Cal. Super. Ct. No. CGC 04436877.

*See* Pltfs' Mem., at 17. This "adequacy by analogy" argument is no substitute for the "effort . . .

to quantify the net expected value of continued litigation to the class" required by the Seventh

Circuit. As the *Microsoft* Court explained:

> Assessment of the adequacy of a proposed settlement requires
> evaluation both of the value of the settlement and the value of the
> claims being settled. . . . [T]he record contains sufficient
> information by which to evaluate the parties' respective
> contentions and reach a conclusion as to a reasonable range of
> value. However, as to the second factor in the equation, the parties
> have widely divergent views which, on the present record, are
> largely theoretical and have not been sufficiently tested.

185 F. Supp. 2d at 526.

        Even if such an "adequacy by analogy" argument *was* legally cognizable (it is not), it

would fall apart here for the simple reason that the *Closson* settlement remains the subject of multiple, vigorously prosecuted appeals challenging its adequacy, which has not been established, and may never be.[1]  *See* Declaration of Barry Himmelstein in Support of Objections ("Himmelstein Decl."), Exh. A (copy of Appellants' Opening Brief in *Closson* appeal).

After presiding over similar litigation against Wells Fargo through summary judgment, and after issuing numerous opinions about the most significant legal issues presented by the case,[2] the Hon. Wm. H. Alsup of the Northern District of California refused to grant preliminary approval to a proposed settlement of $16 million for Wells Fargo's *California accountholders alone*, finding that "16 million is very low for a case where your expert said the damages were 200 million;" that plaintiffs had "a strong claim, not a weak claim;" that the proposed settlement was not "in the ballpark and even close to a reasonable settlement," calling it "a nonstarter in my judgment," and strongly indicating that he would not consider approving any settlement that provided class members with a recovery of less than fifty cents on the dollar.  *See* Transcript of Proceedings (May 13, 2009) (Himmelstein Decl., Exh. B) at 3:9-6:18.  Judge King, who presides over the *In re Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.), similarly found that these cases have "legs," denying the bank defendants' omnibus motions to dismiss, and along with it, their principal legal defenses to liability.  *See* Order Ruling on Omnibus Motions to Dismiss (Himmelstein Decl., Exh. C).

Because this Court, not to mention class members deciding whether to exercise their opt-out rights, cannot tell whether this is a "good" or "bad" deal for the class, a grant of preliminary

---

[1] In addition, the *Schulte* plaintiffs make a false comparison in likening their case to the *Closson* case.  *Closson* was *not* a case challenging the legality of the re-ordering of debit card transactions, but rather was a false advertising case which challenged the truth of some limited, discrete advertising describing the bank's posting practices.  Thus, by its nature, *Closson* was a far more limited case.  *See* Himmelstein Decl., Exh. A.

[2] *See Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550 (N.D. Cal. Sept. 11, 2008); *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 2009 WL 1246988 (N.D. Cal. May 5, 2009); *Gutierrez v. Wells Fargo & Co.*, 2009 WL 1246689 (N.D. Cal. May 5, 2009); *Gutierrez v. Wells Fargo & Co.*, 2009 WL 1247040 (N.D. Cal. May 5, 2009); *Gutierrez v. Wells Fargo & Co.*, 2010 WL 1233810 (N.D. Cal. Mar. 26, 2010) .

approval would be improper.

III.     **THE ALLOCATION OF THE SETTLEMENT PROCEEDS IS ARBITRARY AND CAPRICIOUS, RESULTING IN WINDFALLS TO SOME CLASS MEMBERS AND UNDERPAYMENTS TO OTHERS**

The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate."  *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citations and internal quotations omitted); *see also Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers,* L.L.P., 212 F.R.D. 400, 410 (E.D.Wis. 2002) ("A plan of allocation of settlement proceeds in a class action must also be fair and reasonable."); *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, 2001 WL 1568856 *4 (N.D.Ill.) ("The same standards of fairness, reasonableness and adequacy that apply to the settlement apply to the Plan of Allocation.").  "The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 964 (3d Cir.1983).  Here, the proposed fund distribution is unfair and unreasonable, in that it forces class members to choose a single 45-day period in which to claim a refund overdraft charges, while proposing to release their claims for over *five years* of overdraft charges.

In pertinent part, the Settlement Agreement provides that:

> A Settlement Class Member shall specify on the Claim Form the total amount of Overdraft Fees that the Settlement Class Member incurred during any continuous forty-five (45) day period during the Settlement Class Period, which they must identify by months and year.
>
> Each Settlement Class Member who submitted a valid Claim Form shall receive the total amount claimed on the Claim Form.
>
> If the aggregate amount of submitted claims does not exceed the remainder of funds in the Escrow Account, . . . [e]ach Settlement

881477.1

Class Member who submitted a valid Claim Form shall receive the total amount claimed on the Claim Form; [i]f there are still funds remaining in the Escrow Account, the remainder shall be distributed on a pro rata basis with each Settlement Class member receiving up to . . . three times the amount claimed on their Claim Forms. [¶] If there are still funds in the Escrow Account . . . the remainder of the funds . . . shall be paid out through a *cy pres* distribution . . . . [¶] If the total amount of submitted claims exceeds the funds available in the Escrow Account . . . the funds remaining . . . shall be distributed to Settlement Class Members submitted [sic] valid Claim Forms on a pro rata basis.

Settlement Agreement ¶¶ 24, 30.

Neither the Settlement Agreement nor Plaintiffs' moving papers offer any rationale or justification for failing to allocate the settlement proceeds in proportion to the damages sustained by class members over the *entire* class period, which runs from October 21, 2004 through July 1, 2010. The proposed single 45-day period for claiming a refund of overdraft fees is manifestly unfair and inequitable, in that a class member who paid a larger total amount of overdraft charges over the entire class period would receive less compensation than a class member who paid a *lower* total amount of overdraft fees but incurred a larger portion of the fees during a single 45-day period. For example, a class member who incurred $1,000 in improper overdraft charges over the class period, but no more than $100 in improper overdraft charges during any 45 days within that period, would be allocated a portion of the settlement fund based on only $100 (*i.e.*, 10% of their damages), while a class member who incurred $200 in improper overdraft charges over the class period, but incurred them all within 45 days, would be allocated a portion of the settlement fund based on twice this amount ($200), even though they sustained only 20% of the other class member's damages.

While courts have tolerated differences in the treatment of class members in distribution, they have done so only "when real and cognizable differences exist" between the "likelihood of ultimate success" for different plaintiffs. *In re Lucent Technologies, Inc., Securities Litig.*, 307

- 6 -

F. Supp. 2d 633, 649 (D.N.J. 2004). This type of merit-based weighting has been approved by courts where substantially different or additional claims have been asserted by certain class members and not others. *In re PaineWebber LTD Partnerships Litig.*¸ 171 F.R.D. 104, 133 (S.D.N.Y. 1997) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir.1981). No such differences exist here that would justify anything other than a straight *pro rata* allocation based on the damages sustained by each class member over the *entire* class period.

This mis-allocation of settlement funds is further amplified by the treatment of any funds remaining after the initial distribution. Instead of using the "excess" funds to reimburse class members for Fifth Third overdraft charges they incurred *outside* a narrow 45-day window, the proposed settlement would use that money instead to pay *windfalls* of up to treble damages to class members on charges that have already been fully refunded as part of the initial distribution.

As the plan of allocation embodied in the proposed settlement overcompensates some class members at the expense of others, with no justification for such differential treatment, it is fatally flawed and should be rejected.

## IV.  THE PROPOSED SETTLEMENT WAS NEGOTIATED WITH INSUFFICIENT DISCOVERY

The Seventh Circuit requires a district court to consider "the stage of the proceedings and amount of discovery completed at the time of settlement" in order to determine whether the settlement is "fair, reasonable and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). "This factor 'captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.' " *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Products*

*Liability Litig.*, 55 F.3d 768, 813 (3d Cir. 1995)). Here, the docket reflects no formal or informal discovery, and the early stage of the proceedings suggests that none has been conducted.[3] The lack of discovery necessarily made it impossible for there to be "an adequate appreciation of the merits of the case before negotiating." *Id.* Indeed, the preliminary approval papers contain no discussion whatsoever of the merits of the case.

Nor may the failure to ascertain the merits prior to settlement be cured by the brief, 30-day period of "confirmatory discovery" provided for in the Settlement Agreement—half of which has already elapsed. *See* Settlement Agreement ¶ 37. As one court has explained, confirmatory discovery is an inadequate substitute for adversary discovery. which is meant to take place *prior* to settlement:

> In this case, no discovery occurred prior to negotiations. After a settlement was reached, confirmatory discovery was performed . . . . Confirmatory discovery, by its very nature, is not adversarial. In contrast, "pretrial negotiations and discovery must be sufficiently adversarial so that they are not 'designed to justify a settlement ... [but are] an aggressive effort to ferret out facts helpful to prosecution of the suit.'" *Martens v. Smith Barney, Inc.* 181 F.R.D. 243, 263 (S.D.N.Y.1998) (quoting *Saylor v. Lindsley*, 456 F.2d 896, 899 (2d Cir.1972)). The absence of any adversarial discovery is a negative factor in persuading the Court of the wisdom of settlement, at this time, on these terms . . . .

*Moore v. Halliburton Co.*, 2004 WL 2092019 *7 (N.D.Tex.)

Here, the adversary discovery that should have taken place *prior* to negotiation of the settlement will never occur; instead, counsel for plaintiffs will engage in a brief period of cooperative discovery intended solely to justify the settlement. Accordingly, this factor strongly counsels against a grant of preliminary approval.

---

[3] During a June 8, 2010 conference call, counsel for Objectors asked counsel for Plaintiffs and counsel for Fifth Third whether any discovery had been conducted, but they declined to respond.

881477.1

## V.     THE CLAIMS PROCESS UNDULY BURDENS CLASS MEMBERS

As noted above, the proposed settlement requires class members to pour over nearly six years of bank statements hunting for the 45-day period during which they were assessed the greatest number of overdraft charges. Because bank statements are typically issued monthly, this determination cannot be made, for any 45-day period, without examining 2-3 bank statements. Should a class member succeed in this exercise—which many, if not most would deem not worth the trouble—Fifth Third may, in any event, "verify the information provided on Claim Forms" using "the information contained in its business records relating to the Settlement Class Members' accounts." Settlement Agreement ¶ 26. On request, Fifth Third will make only the last 16 months of account statements available online, although the claims period goes back to 2004. *Id*. ¶ 25.

There is simply no excuse for forcing class members to dig up and dig through nearly six years of account statements, line them up 2-3 at a time, and attempt to determine which 45-day period yielded the greatest amount of overdraft charges, when Fifth Third could easily make that determination for each class member using the very same business records it intends to use to "verify" the claims once submitted, and deposit the appropriate amount directly into their accounts. Instead, the proposed settlement creates a paperwork nightmare relatively few will find worth the effort, only to have their work double-checked by Fifth Third before payout in any event. Such an unnecessary claims procedure will unnecessarily deter the filing of claims, and should be rejected.[4] Indeed, a "claims made" settlement of similar overdraft charge litigation against Wells Fargo resulted in the payment of only 104 claims at $20 each, out of a "claims-made" settlement amount of $3,000,000. *See* Declaration of Daniel G. Lamb, Jr. re *Smith v.*

---

[4] In addition, the proposed settlement would give class members only 45-days to complete this exercise. *See* Settlement Agreement ¶ 23. In light of the amount of materials that must be gathered, and the work required, this is insufficient.

*Wells Fargo Bank, N.A., et al.* Settlement (Himmelstein Decl., Exh. D) ¶¶ 12(c), 19.

**VI.     CONCLUSION**

         The Court cannot determine whether the proposed settlement is adequate, because the

parties have not presented any estimate of class member damages.  The proposed plan of

allocation is inequitable and unfair, in that it would give many class members a windfall while

leaving others undercompensated.  The settlement was negotiated with insufficient discovery to

enable Plaintiffs' counsel to determine the settlement value of the class' claims.  Finally, the

proposed claims process is unncecssary, and unduly burdensome to class members.  For all these

reasons, the proposed settlement is not deserving of preliminary approval, which should be

denied.


Dated:  June 9, 2010

                                             Respectfully submitted,




                                             _____*/s/ Timothy P. Mahoney*_____
                                             Timothy P. Mahoney
                                             **Hagens Berman**
                                             1144 W. Lake Street, Suite 400
                                             Oak Park, IL  60301
                                             (708) 628-4961

                                             Local Counsel

                                             Barry R. Himmelstein
                                             **Lieff, Cabraser, Heimann & Bernstein, LLP**
                                             275 Battery Street, 29th Floor
                                             San Francisco, CA  94111
                                             (415) 956-1000

881477.1

Bruce S. Rogow
Robert C. Gilbert
**Alters Boldt Brown Rash & Culmo, P.A.**
4141 N.E. 2nd Avenue
Miami, FL 33137
(305) 571-8550

Ruben Honik
**Golomb & Honik, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
(215) 985-9177
Robert C. Josefsberg
Victor M. Diaz, Jr.
John Gravante, III
**Podhurst Orseck, P. A.**
City National Bank Building
25 W Flagler Street, Suite 800
Miami, FL 33130-1780
(305) 358-2800

Ted E. Trief
Barbara E. Olk
**Trief & Olk**
150 E 58th Street, 34th Floor
New York, NY 10155
(212) 486-6060

E. Adam Webb
G. Franklin Lemond, Jr.
**Webb, Klase & Lemond, L.L.C.**
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
(770) 444-9325

881477.1

Russell W. Budd
Bruce W. Steckler
Melissa K. Hutts
Renee M. Melancon
**Baron & Budd, P.C.**
3102 Oak Lawn Ave., Suite 1100
Dallas, TX  75219
(214) 521-3605

Plaintiffs' Executive Committee in *In re Checking Account Overdraft Litigation*, MDL No. 2036 (S. D. Fla.)

Counsel for Objectors Michelle Keyes, Amanda Ratliff, and Verdel Ratliff

- 12 -