### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SHANNON SCHULTE, on behalf of<br>herself and all others similarly situated | ) | Case No. 1:09-CV-06655 |
| | ) | |
| | ) | The Honorable Robert M. Dow, Jr. |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| FIFTH THIRD BANK | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' RESPONSE TO NOTICE OF RECENT DEVELOPMENT
SUPPORTING OBJECTIONS OF MICHELLE KEYES,
AMANDA RATLIFF, AND VERDEL RATLIFF TO PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

### I.      Introduction

On Aug. 13, 2010, attorneys for objectors Michelle Keyes, Amanda Ratliff, and Verdel

Ratliff ("Objectors") filed what they have styled as a Notice of Recent Development, which they

assert, with argument, supports their pending objections to the proposed settlement.  [D.E. #53]

Their filing is comprised of three paragraphs, each flawed in material respects (as more fully set

forth herein), and is accompanied by the recent decision in *Gutierrez v. Wells Fargo Bank*, Case

No. C07-05923 WHA (N.D. Cal.).  Plaintiffs respond to the filing paragraph-by-paragraph, in

the order indicated below.

### II.     Paragraph 2

The second paragraph of Objectors' filing focuses on the *Gutierrez* ruling.  Although

Objectors' counsel have particular knowledge regarding the *Gutierrez* case, they fail to provide

details to the Court that separate that case from the litigation currently pending before this Court.

For example, this case was not filed under California law; that body of law is different than the law under which this litigation can be advanced. On information and belief, at the design of Objectors' counsel here, the cases currently pending in the MDL are divided into two categories: the first category includes California-only classes; the remaining cases contain all other jurisdictions in which the banks do business, except California. Thus, it is clear that the difference in California law is not lost on Objectors' counsel. Further, Objectors state that the *Gutierrez* ruling is "based on the same wrongful overdraft fee policies and practices which form the ***backbone*** of the litigation against Fifth Third Bank here . . . ." *See* Notice of Recent Development Supporting Objections of Michelle Keyes, Amanda Ratliff, and Verdel Ratliff to Plaintiff's Motion for Preliminary Approval of Proposed Class Action Settlement ("Notice") at 1 (emphasis added). A "backbone" alone, however, does not make a body whole anymore than it provides all of the answers to a particular litigation. There is no question that there are similarities in these cases—just as every human has a similar backbone. But, that does not mean that each case (like each human) does not have significant differentiating features. These cases are brought under different laws, against different banks, with different banking practices. To mask these differences with such a broad generality, as Objectors' offer, is to engage in sophistry.

In *Gutierrez*, there were multiple considerations in the ruling, including principles uniquely applicable to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("Section 17200") (as opposed to the law that is applicable here), as well as the assorted set of facts particular to Wells Fargo's conduct. The court in *Gutierrez* relied heavily on the California version of U.C.C. § 4-303 and its California-specific comments, which expressly prohibit establishing a practice solely to maximize overdraft fees; indeed, the court tethered its

Section 17200 and good faith and fair dealing rulings to it. *See Gutierrez* at 60–69. The Illinois version of U.C.C. § 4-303, however, has not been read by courts in that manner.

Further, there are numerous factual distinctions between *Gutierrez* and the instant litigation. For example, in *Gutierrez*, the plaintiffs were able to establish bad faith in large part through the use of "smoking gun" documents and practices, which included the following:

- The shadow line of credit, where Wells Fargo would determine if it was likely that the consumer could pay back the cost of the item and the overdraft fee or whether it should block the transaction and charge an NSF fee. *See Gutierrez*, at 6, 24–25, 67–69.

- Wells Fargo had many smoking gun emails and memos about gouging its customers. *See Gutierrez*, at 25–34.

- Wells Fargo could not show it considered 12 CFR 7.4002 in making its overdraft fee determinations. *See Gutierrez*, at 46–47.

There are no assurances that Plaintiffs would uncover such unique facts or documents in this matter—even after years of discovery. To assume otherwise is tantamount to making a high-stakes gamble that could in fact undermine—not strengthen—Plaintiffs' case against Fifth Third. Similarly, Plaintiffs cannot presume that the expert witnesses presented by Fifth Third would make the same admissions made by Wells Fargo's expert, such as that Wells Fargo's disclosures were "so difficult for consumers to understand" and that "very few people read" the disclosures. *See Gutierrez*, at 51.

## III.     Paragraph 3

In paragraph three of their filing, again, without analysis or support, Objectors conclude that "[t]he decision *underlines each and every basis asserted by the settling parties* to support the proposed settlement." Notice at 1 (emphasis added). That is pure hyperbole. In fact, many aspects of the *Gutierrez* ruling (in addition to those stated above) support the reasons previously

presented in favor of preliminary approval of the pending Settlement Agreement. For instance, the *Gutierrez* ruling does not undermine the value of immediate and final resolution of this dispute without further risk to the putative Settlement Class. Objectors and their counsel ignore this important consideration, and act as if the *Gutierrez* ruling is already written in stone. Concurrently, however, these same counsel denigrate the *Closson v. Bank of America N.A.* settlement, which has received final approval after publication of notice and a full final fairness hearing, because it is on appeal (and being challenged by the same counsel challenging this settlement). Similarly, the *Gutierrez* ruling does not undermine the argument that the only final Circuit Court of Appeals decision on record, *Hassler v. Sovereign Bank*, No. 09-2982, 2010 WL 893134 (3d Cir. Mar. 15, 2010), presents further risk to Plaintiffs in this case. The finality of *Hassler* is undeniable juxtaposed the interim ruling represented by the *Gutierrez* ruling, which was reached under different and inapplicable law.

Most critically, the $203 million restitution award in *Gutierrez* supports the fairness and adequacy of the fund that would be established under the Settlement Agreement here. Assuming that the *Gutierrez* award withstands the appeal that Wells Fargo has already announced it intends to file, and adjusting it for the relative size between the class certified in *Gutierrez* and the proposed Settlement Class here, that judgment is reduced, on a comparative basis, to $29 million. In Plaintiffs' brief in response to Objectors [D.E. #45], Plaintiffs noted that the class of Wells Fargo's California consumers is approximately six (6) to eight (8) times the size of Fifth Third (based on a comparison of the number of deposit accounts under $100,000 at each bank). Using 1/7 as a comparison (the average size of Fifth Third's deposit accounts compared to those at Wells Fargo, as described), the $203 million award in *Gutierrez* is reduced to $29 million, were

such a ruling to apply with full and equal force against Fifth Third under the most favorable of circumstances.

On even the most favorable determination, the value here—in excess of $9.5 million, which represents approximately 32% based on at least one calculation of potential recovery—is well-above the acceptable range of settlement percentages. *See, e.g., Lazy Oil Co. v. Witco*, 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (approving settlement amounting to 5.35% of damages for the entire class period, and 25.5% of the damages falling within the limitations period); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. 1993) (approving settlement of approximately 12.7 to 15.3 percent of the estimated $2 billion minimum possible trebled recovery); *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million settlement over objections that "best possible recovery would be approximately $121 million"); *Behrens v. Wotemco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("The mere fact that the proposed settlement of $0.20 a share is a small fraction of the desired recovery of $3.50 a share is not indicative of an inadequate compromise"), *aff'd* 899 F.2d 21 (11th Cir.1990); *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2, 1998 U.S. Dist. LEXIS 23238, at *8 (D.D.C. Oct. 23, 1998) ("Courts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; but an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness.") (emphasis in original).

Additionally, the proposed settlement here provides for valuable injunctive relief, including: putting an end to high-to-low re-ordering of debit card transactions; and Fifth Third training its customer service representatives on overdrafts and granting them the authority to

waive any overdraft fee for good cause, including an automatic waiver of one overdraft fee per year. In light of this relief, the above calculation becomes even more favorable to this settlement.

Importantly, the monetary and injunctive relief is being made available to members of the putative Settlement Class now, instead of after protracted litigation, a trial on the merits, and a lengthy appeal process. This distinction from *Gutierrez* should not be ignored. Objectors and their counsel have had ample opportunity to put their views before this Court, including their views on the *Guiterrez* case. In their latest filing, Objectors took the opportunity to make assertions that are readily refuted. The equity of the proposed settlement far outweighs the self-interest represented by the pending objection. Substantial delay in publication of the proposed settlement will cause harm to the rights of the putative Settlement Class, whereas permitting notice of the settlement to issue at this time in accordance with the terms of the Settlement Agreement will not harm the rights of Objectors, as their rights are preserved under the Settlement Agreement and through the process for final approval of the settlement. They can be heard along with any other objectors that may appear, and will constitute a complete record of objections, if any, not merely those of a few driven by patent self-interest.

Putting aside the fact that an analysis of *Gutierrez* supports the settlement here and is otherwise inapposite, Objectors' attempt to apply a non-final development occurring subsequent to the proposed settlement in an effort to defeat the proposed settlement does not comport with established law, and amounts to nothing more than a request that the Settlement Agreement between the parties be invalidated. This argument fails for three simple reasons.

First, as the law makes clear, "[a] settlement agreement is considered a contract and, accordingly, the enforcement of settlement agreements is governed by principles of contract

law." *Dunlap v. Chicago Osteopathic Hosp.*, 48 F.3d 1221, 1995 WL 94876, at *1 (7th Cir.

1995) (citations omitted) (unpublished disposition). Further, "the legal framework that existed at

the time of a contract's execution must bear on its construction. Contracts are presumed to be

written in contemplation of existing applicable law." *Florida East Coast Railway Co. v. CSX

Transportation, Inc.*, 42 F.3d 1125, 1129 (7th Cir. 1994) (citations omitted). Thus,

> a subsequent change in the law cannot retrospectively alter the parties' agreement.
> Whereas the law in effect at the time of execution sheds light on the parties['] 
> intent, subsequent changes in the law that are not anticipated in the contract
> generally have no bearing on the terms of their agreement.

*Id.* (citations omitted).

Second, it cannot be said that the *Gutierrez* ruling is either binding or entirely applicable

here. It is not a change in the law, but simply a lone decision rendered by a lone judge, that is

non-final and subject to appellate review.

Third, even if the *Gutierrez* ruling could arguably be construed as a change in the law, "a

supervening change in law will not alone suffice as a ground for invalidating a settlement

agreement." *Holland v. Virginia Lee Co.*, 188 F.R.D. 241, 251 (W.D. Va. 1999) (citations

omitted); *see also Anita Foundations, Inc. v. ILGWU Nat. Retirement Fund*, 902 F.2d 185, (2d

Cir. 1990) (reaffirming "the established rule that a change in the law does not render an

agreement void," and holding that "[t]he uncertainty of a legal position and desire to avoid the

risk of a lawsuit are the impetus for many out-of-court settlements") (internal quotations and

citations omitted)).

"[A] class action settlement is to be evaluated according to the state of the law as of the

time it was presented to the district court for approval." *Armstrong v. Bd. of Sch. Directors of

City of Milwaukee*, 616 F.2d 305, 322 (7th Cir. 1980), *overruled on other grounds, Felzen v.*

7

*Andreas*, 134 F.3d 873 (7th Cir. 1998) (citing *Dawson v. Pastrick*, 600 F.2d 70, 76 (7th Cir.

1979)). And, as the Third Circuit held in *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d

Cir. 2010), which likewise involved a class action settlement:

> We first note that changes in the law after settlement do not affect the validity of
> the agreement and do not provide a legitimate basis for rescinding the settlement.
> Albeit in the context of a Fed. R. Civ .P. 60(b) motion, we have held that a
> favorable change in the law post-settlement does not give a settling party a basis
> to repudiate an otherwise valid settlement agreement. *Coltec Industries, Inc. v.
> Hobgood*, 280 F.3d 262, 273 (3d Cir. 2002); *see also Agostini v. Felton*, 521 U.S.
> 203, 239 (1997) (observing that "intervening developments in the law by
> themselves rarely constitute the extraordinary circumstances required for relief
> under Rule 60(b)(6)"); *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007). Of
> particular concern in *Coltec* was the belief that the company was attempting to
> escape the consequences of a bargain it regretted in hindsight. *Id.* We noted that
> "even if Coltec's decision to settle was improvident in hindsight, the decision has
> been made and cannot be revisited," and held that the company must bear "the
> consequences of its informed, counseled and voluntary decision" to settle. *Id.* at
> 275.

## IV.    Paragraph 1

The reason that Plaintiffs respond to the paragraphs out of order is two-fold. First, the

above analysis of *Gutierrez* and the Notice of Recent Development is believed to respond

substantively to the positions taken by the Objectors and the ruling in *Gutierrez*. Second,

Objectors and their counsel have created other positions to stop this settlement, and by their own

conduct, have attempted to make those positions substantive. It is respectfully suggested that

those positions are inaccurate, and to the degree that they require a response, such a response is

set forth below for the record.

Without any desire to belabor the extant record, it is respectfully suggested as noteworthy

that a number of the representations made by Objectors here are, at best, skewed in a light more

favorable to Objectors than the reality of the situation presents. First, the representation that the

*Keyes* action is "an overlapping class action made part of Multidistrict Litigation Proceeding No.

8

2036, *In re Checking Account Overdraft Litigation*," belies the fact that the *Keyes* case was filed months after the *Schulte* action currently pending before this Honorable Court, and appears to have been shepherded to the Florida jurisdiction, even though the plaintiff is from Ohio and the lawsuit is against an Ohio-based bank. *See* Notice at 1. That conduct is coupled with Objectors' counsel then filing their motion to transfer this matter to the MDL; that attempt failed. In fact, at the hearing on Objectors' counsel's MDL motion before the Judicial Panel on Multidistrict Litigation, attorney Robert C. Gilbert agreed with the panel that the review process before this Court should go forward.

Objectors' counsel also claim that they have been "appointed by Judge King to represent the interests of Fifth Third class members in the MDL." Notice at 1. This is, at best, a misleading assertion. As Plaintiffs have pointed out, Judge King denied the MDL PEC's strident objection to Fifth Third's motion for an extension of time to respond to the *Keyes* Complaint when Fifth Third notified Judge King about the motion for preliminary approval pending before this Court. Judge King has not repudiated or contradicted the ruling of the MDL Panel (consented to by Mr. Gilbert himself) that the merits of this settlement should be decided by this Court, and not by Judge King. *See* Plaintiffs' Response to Objections of Michelle Keyes, Amanda Ratliff, and Verdel Ratliff to Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement [D.E. #45]. This disclosure has not swayed Objectors' counsel to change their position, and they continue to use it as a tool in their attempt to prevent the advancement of this settlement.

## V.     Conclusion

To date, Objectors' counsel have taken actions before this Court to prevent the review to which the Class is entitled.  Indeed, Objectors' counsel's self-interest shines through in the closing line of its filing:  "this Court should deny preliminary approval so that this case can be transferred to the MDL."  Notice at 1.  Based on their conduct, it appears that Objectors' counsel have put their own interests as lead counsel in the MDL proceedings ahead of the interests of the putative Settlement Class currently before the Court, a class that they allegedly seek to represent.

WHEREFORE, Plaintiffs respectfully request that the Court issue an order granting preliminary approval and authorizing publication of the proposed notice in accordance with the Settlement Agreement, and such other relief as the Court deems appropriate.

Dated:  August 19, 2010                          Respectfully submitted,


                                          __/s/ Ben Barnow_____
                                          Ben Barnow
                                          **Barnow and Associates, P.C.**
                                          1 North LaSalle, Suite 4600
                                          Chicago, IL  60602
                                          (312) 621-2000

                                          Burton H. Finkelstein
                                          **Finkelstein Thompson LLP**
                                          The Duvall Foundry
                                          1050 30th Street, N.W.
                                          Washington, D.C. 20007
                                          (202) 337-8000

                                          Hassan A. Zavareei
                                          **Tycko & Zavareei LLP**
                                          Suite 808
                                          2000 L Street, N.W.
                                          Washington, D.C. 20036
                                          (202) 973-0900

                                                    10

*Of Counsel:*

David James Worley
**Evangelista & Associates, LLC**
One Glenlake Parkway
Suite 700
Atlanta, GA 30328
404-478-7195

*Proposed Settlement Class Counsel*

## <u>Certificate of Service by Electronic Means</u>

I, Ben Barnow, one of the attorneys for Plaintiff, hereby certify that the proceeding document was caused to be served electronically this 19th day of August 2010, pursuant to ECF as to Filing users, and that I shall comply with LR 5.5 as to any party who is not a filing user or represented by a filing user.

/s/ Ben Barnow_____