IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHANNON SCHULTE, on behalf of herself and all others similarly situated | ) ) ) | Case No. 1:09-CV-06655 |
| Plaintiff, | ) ) ) | (Judge Dow) |
| -v- | ) ) | FIFTH THIRD BANK'S RESPONSE TO NOTICE OF RECENT |
| FIFTH THIRD BANK | ) ) | DEVELOPMENT SUPPORTING OBJECTIONS OF MICHELLE |
| Defendant. | ) ) ) ) ) ) ) ) | KEYES, AMANDA RATLIFF, AND VERDELL RATLIFF TO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT |

### I. INTRODUCTION

On August 13, 2010, counsel for Objectors Michelle Keyes, Amanda Ratliff, and Verdell Ratliff (collectively "Objectors") filed a "Notice of Recent Development Supporting Objections of Michelle Keyes, Amanda Ratliff, and Verdell Ratliff to Plaintiff's Motion for Preliminary Approval of Proposed Class Action Settlement" [Doc. #53] (the "Notice"). In the Notice, Objectors (without any meaningful factual or legal analysis) claim that the recent decision in *Gutierrez v. Wells Fargo Bank*, Case No. C07-05923 WHA (N.D. Cal.) "undermines each and every basis asserted by the settling parties to support the proposed settlement." (*See* Notice at 1).[1] Such rhetoric, however, has no basis in fact or law. Indeed, as discussed below, *Gutierrez* is not only easily distinguishable, but it actually helps demonstrate how the proposed settlement in this case is fair, adequate, and reasonable.

---

[1] Judge William Alsup issued the decision and order in *Gutierrez* on August 10, 2010. The decision and order is cited herein as "Order at _____."

## II. ARGUMENT

### A. *Gutierrez* Is Distinguishable From The Case At Bar

Despite the Objectors' unsubstantiated claim that *Gutierrez* is "a case based on the same wrongful overdraft fee policies and practices which form the backbone of the litigation against Fifth Third Bank here and actions pending against approximately three dozen other banks which have been transferred to the MDL," *Gutierrez* is actually very different from the case at bar.

The most obvious difference is the legal principles upon which the two cases were brought and upon which *Gutierrez* was decided. *Gutierrez*, for instance, was almost entirely based on California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. ("Section 17200"), a statute that authorizes many unique causes of action and theories of recovery.[2] One such unique aspect is that to establish liability under the "fraudulent restriction" of Section 17200, a plaintiff need only show that members of the public are likely to be deceived. (*See* Order at 69 (citing *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (Cal. 2009)). Thus, unlike common law fraud claims, which require proof of falsity, scienter, and actual reliance, it is not necessary for a plaintiff to prove that a fraudulent deception under Section 17200 was actually false, known to be false by the defendant, or reasonably relied upon by the alleged victim who incurred damages. (*See* Order at 69 (citing *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1025-1026 (9th Cir. 2008)). Similarly, Section 17200 allows a court to award restitution "without individualized proof of deception, reliance and injury," and also provides that absent class members on whose behalf a Section 17200 action is prosecuted need not show on an individualized basis that they lost money or property as a result of a Section 17200 violation.

---

[2] One commentator has criticized Section 17200 as being "a law so bizarrely pro-plaintiff as to be a major disincentive for many companies to do business in [California]." Walter Olson, *The Shakedown State*, WALL ST. J. Journal, July 22, 2003, at A10. Presumably, this is at least one reason why Objectors' counsel has divided the cases currently pending in the MDL into two categories – California-only classes (which can take advantage of Section 17200) and all other jurisdictions.

(*See* Order 86 (citing *Tobacco II*, 46 Cal.4th at 320)). No such novel claims or theories are present in the case at bar.

Moreover, the *Gutierrez* court relied upon California's version of the Uniform Commercial Code, and its California-specific comments, in order to "tether" the plaintiffs' Section 17200 "unfair business practices" claim against Wells Fargo. (*See* Order at 60). In particular, the *Gutierrez* court relied upon California's UCC § 4-303(b), which addresses the relationship between a payor bank and presenters of items for payment. Under California's UCC § 4-303(b), a bank has the ability to pay any debit item charged to a deposit account of its customers "in any order." Cal. Com. Code § 4303(b). The California legislature, however, added a legislative comment to California's UCC § 4-303 that specifically required a payor bank to act in good faith when deciding the order in which debit items would be paid:

> The only restraint on the discretion given to the payor bank under subsection (b) is that the bank act in good faith. For example, the bank could not properly follow an established practice of maximizing the number of returned checks for the sole purpose of increasing the amount of returned check fees charged to the customer.

Cal. Com. Code § 4303(b), cmt. 7. Based on that Comment and California case law dealing with good faith and fair dealing, the *Gutierrez* court concluded that, under California law, banks are required to act in good faith when deciding the order in which debit items would be paid and could not, for example, establish posting practices for the sole purpose of maximizing penalties imposed on customers. (*See* Order at 61).

Illinois law (and most other states' law), however, does not mirror California law on these points. Indeed, while the text of Illinois' UCC § 4-303(b) is the same as California's UCC § 4-303(b), Illinois has not adopted the California-specific comment requiring payor banks to act in accordance with notions of "good faith," notwithstanding the terms of the parties' actual

agreement, when determining the payment order of debit items. Instead, Illinois courts have held that a claim for a breach of the implied duty of good faith and fair dealing is not cognizable when a party to a contract has merely exercised its rights according to the express terms of the contract. *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395-396 (7th Cir. 2003) (citing *Northern Trust Co. v. VIII South Michigan Assoc.*, 276 Ill. App. 3d 355, 657 N.E.2d 1095 (1st Dist. 1995). Using this reasoning, Illinois courts have rejected claims for breach of the implied duty of good faith and fair dealing brought against banks for using a high-to-low posting method when the bank's deposit agreement with its customers allows the bank to charge items from high-to-low. *See Hill v. St. Paul Federal Bank for Savings*, 329 Ill. App. 3d 705, 768 N.E.2d 322, 325-327 (1st Dist. 2002) (plaintiff's claim that banks violated their duty of good faith and fair dealing by choosing a high-to-low posting method, which resulted in more overdraft fees, was dismissed because there can be no lack of good faith in acting as authorized by the UCC, regardless of the defendants' intent in choosing it).[3] *See also Bank of America, N.A. v. Shelbourne Development Group, Inc.*, __ F.Supp.2d __, No. 09 C 4963, 2010 WL 3269647, \*\*9-11 (N.D. Ill. Aug. 18, 2010) (dismissing duty of good faith and fair dealing claim and holding that bank was entitled to enforce the terms of the parties' loan agreement as written).

The more relevant "recent development" (and one which the Objectors cannot escape) is the case of *Hassler v. Sovereign Bank*, in which the Third Circuit affirmed the dismissal of a breach of contract claim that dealt with overdraft fees and the posting order of debit card transactions. *See Hassler v. Sovereign Bank*, 2010 WL 893134 (3rd Cir. March 15, 2010) (affirming *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509 (D.N.J. 2009)). In *Hassler*, a bank

---

[3] The same reasoning has been applied by numerous other courts throughout the country. *See*, *e.g.*, *Hill v. St. Paul Federal Bank for Savings*, 329 Ill. App. 3d 705, 768 N.E.2d 322, 325 (1st Dist. 2002); *Fetter v. Wells Fargo Bank, N.A.*, 110 S.W.3d 683 (Tex. App. 2003); *Daniels v. PNC Bank, N.A.*, 738 N.E.2d 447 (Ohio Ct. App. 2000); *Smith v. First Union National Bank*, 958 S.W.2d 113 (Tenn. Ct. App. 1997); *Torres v. Wells Fargo*, 2008 WL 2397460 (N.D. Cal. June 11, 2008).

customer brought a purported class action against a bank, alleging that the bank's posting of electronic debit transactions from highest-to-lowest violated the implied covenant of good faith and fair dealing. *Hassler*, 644 F. Supp. 2d at 511. The court specifically rejected plaintiff's claim and granted the bank's motion to dismiss. *Id.* After explaining that a party does not breach the implied covenant because its decision disadvantaged another party, the court held that because the deposit agreement permitted the bank to order its customers' electronic debits from highest to lowest, to its advantage, the plaintiff's breach of implied covenant of good faith and fair dealing had to be dismissed as a matter of law. *Id.* at 518-519.

Thus, Objectors' claim that the *Gutierrez* decision "undermines each and every basis asserted by the settling parties to support the proposed settlement" is nothing more than disingenuous hyperbole. In reality, *Gutierrez* is an outlier decided on unique facts and law specific to that case.

      **B.**    ***Gutierrez* Actually Demonstrates The Fairness And Adequacy Of The Proposed Settlement**

As Representative Plaintiffs stated in their Response to Notice of Recent Development Supporting Objections of Michelle Keyes, Amanda Ratliff, and Verdell Ratliff to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement [Doc. #54] ("Plaintiffs' Response"), the $203 million dollar restitution award in *Gutierrez* actually supports the fairness and adequacy of the proposed settlement in this case.

Courts of this District have recognized that while "[t]he determination of a 'reasonable' settlement is not susceptible of a mathematical equation yielding a particular sum," courts have approved class action settlements where "the benefits amounted to a small percentage of the potential recovery." *Goldsmith v. Technology Solutions*, 1995 WL 17009594, *5 (N.D. Ill. Oct. 10, 1995). The Second Circuit has gone so far as to state that "there is no reason, at least in

theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of a potential recovery." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455, n.2 (2d Cir. 1974). Indeed, courts have routinely approved class action settlements as reasonable where the settlement amount was only a small percentage of the potential recovery. *See*, *e.g.*, *Weinberger v. Kendrick*, 698 F.2d 61, 65 (2d Cir. 1982) (affirming approval of settlement even though "it is not disputed" that the $2.84 million settlement would be only a negligible percentage of the losses suffered by the class, estimated by objectors' counsel as between $250 million and $1 billion); *Cagan v. Anchor Savings Bank FSB*, 1990 WL 73423, **12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class action settlement over objections, notwithstanding that the "theoretical best possible recovery would be approximately $121 million" or less than 1/5 of 1%); *Fischer Bros. v. Mueller Brass Co.*, 630 F.Supp. 493, 499 (E.D. Pa. 1985) (approving settlement of 0.2% of potential recovery); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (approving settlement of 5.7% of potential recovery), *aff'd* 899 F.2d 21 (11th Cir. 1990).

Here, even if the Court were to presume (*arguendo* only) that Fifth Third could potentially be liable (which Fifth Third denies) for $200 million (like Wells Fargo in *Gutierrez*), the proposed settlement amount would still fall into the acceptable range of settlement percentages cited above.[4] Moreover, as pointed out in Plaintiffs' Response, Fifth Third is ***significantly*** smaller than Wells Fargo and any potential recovery would not be anywhere near $200 million. Thus, the proposed settlement amount in this case is clearly fair, adequate, and reasonable.

---

[4] And this does not even take into account the valuable injunctive relief in the proposed settlement.

### III.   CONCLUSION

The settlement in this case is fair, adequate, and reasonable.  *Gutierrez* does nothing to change that fact.  Accordingly, Fifth Third respectfully requests that the Court preliminarily approve the settlement in this case and authorize the publication of the proposed notice in accordance with the settlement agreement.

Respectfully submitted,

/s/ Steven A. Levy
Patrick F. Fischer (admitted pro hac vice)
Drew M. Hicks (admitted pro hac vice)
KEATING MUETHING & KLEKAMP PLL
One East Fourth St.
Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6400
Fax: (513) 579-6457
pfischer@kmklaw.com
dhicks@kmklaw.com

-and-

Steven A. Levy
Roger A. Lewis
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
Phone: (312) 201-4000
Fax: (312) 863-7465
steven.levy@goldbergkohn.com
roger.lewis@goldbergkohn.com

*Attorneys for Defendant,*
*Fifth Third Bank*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on August 30, 2010, he caused a copy of the attached **Fifth Third Bank's Response to Notice of Recent Development Supporting Objections of Michelle Keyes, Amanda Ratliff, and Verdell Ratliff to Plaintiff's Motion for Preliminary Approval of Proposed Class Action Settlement** to be served via the Court's electronic notice system upon:

| | |
|---|---|
| Ben Barnow<br>Sharon Harris<br>Barnow and Associates, P.C.<br>One North LaSalle Street<br>Suite 4600<br>Chicago, IL 60602 | Timothy P. Mahoney<br>Hagens Berman Sobol Shapiro LLP<br>1144 West Lake Street, Suite 400<br>Oak Park, IL 60301 |
| Jeffrey Ostrow<br>Kopelowitz Ostrow Ferguson Weiselberg<br>     Keechl<br>200 S.W. 1st Avenue, 12th Floor<br>Fort Lauderdale, FL 33301 | Robert C. Gilbert<br>Alters Law Firm, P.A.<br>4141 N.E. 2nd Avenue, Suite 201<br>Miami, FL 33137 |
| Burton H. Finkelstein<br>Finkelstein Thompson LLP<br>1050 30th Street, N.W.<br>Washington, DC 20007 | Barry R. Himmelstein<br>Lieff Cabrasen & Heimann<br>275 Battery Street<br>30th Floor Embarcedero Ctr. West<br>San Francisco, CA 94111 |
| Jeffrey D. Kaliel<br>Hassan A. Zavareei<br>Tycko & Zavareei LLP<br>2000 L Street, N.W., Suite 808<br>Washington, DC 20036 | |

/s/ Steven A. Levy