# The Andela Consulting Group, Inc.
### 16311 Ventura Blvd., Suite 845
### Encino, California 91436

Thomas A. Tarter
Managing Director
Expert Witness – Banking
Consulting – Financial and Management

Phone: (818) 380-3102
Fax: (818) 501-5412
Email: ttarter@earthlink.net

# EXPERT REPORT

### Prepared By

## Thomas A. Tarter

**Shannon Schulte and Marlene Willard, on behalf of themselves and all others similarly situated, Plaintiffs**

**vs.**

**Fifth Third Bank, Defendant**

**Case Number: 1: 09 – CV – 06655; and
1: 10 – CV – 00271**

**March 4, 2011**

/s/ Thomas A. Tarter

## TABLE OF CONTENTS

**INTRODUCTION** ............................................................................................3

**SUMMARY OF CONCLUSIONS** ..................................................................3

**QUALIFICATIONS** ........................................................................................4

**DOCUMENTS AND MATERIALS RELEVANT TO
ANALYSIS** ......................................................................................................5

**SCOPE OF ENGAGEMENT** ........................................................................6

**DISCUSSION, FINDINGS, OBSERATIONS AND OPINIONS** ..................7

    **Preface** ...........................................................................................7

    **Information Considered in Developing Models** ..........................8

    **Methodology for the Estimation of Excess OD Fees** ..................9

    **Methodology for Determining Discounted Present Value of
    Injunctive Relief for the Elimination of Excess OD Fees** ........13

**Conclusions** .................................................................................................14

**Supplemental Information** ..........................................................................17

**Exhibits:**

| | |
|---|---|
| **Exhibit A:** | **Andela Overview and Tarter CV** |
| **Exhibit B:** | **Case Log – T. Tarter** |
| **Exhibit C:** | **Transactional Re-sequencing Tables: Examples 1 to 3.** |
| **Exhibit D:** | **Graph of the Probability of a Mismatch Between Transactions Processed Chronologically vs. Batch Processing that Re-sequences Transactions from high-to-low Dollar Value Relative to the Number of Transactions Processed.** |
| **Exhibit E:** | **Excess OD Fee Revenue Models: Models 1 to 3.** |
| **Exhibit F:** | **Excess OD Fee Accountholder Savings - Present Value Computation** |

## EXPERT REPORT OF THOMAS TARTER

## INTRODUCTION

I have been retained by Barnow and Associates, P.C., Tycko & Zavareei LLP, Finkelstein Thompson LLP and Evangelista & Associates (collectively, "Plaintiffs' Counsel") on behalf of Shannon Schulte and Marlene Willard and all others similarly situated (collectively "Plaintiff(s)") in this civil action to provide consulting and calculations pertaining to the computation of estimated overdraft fees ("OD Fees") resulting from the re-sequencing of Debit Card and ATM transactions from "high-to-low item dollar value" instead of chronological item processing ("Excess Overdraft Fees") during the period of October 21, 2004 to June 30, 2010 (the "Class Period") by Fifth Third Bank (sometimes "FTB" or "Defendant"). Additionally, I have been requested to estimate the present value of the change in FTB's business practices required by the Settlement Agreement, namely to no longer re-sequence Debit Card and ATM transactions from high-to-low dollar value.

For purposes of rendering my observations and opinions as set forth in this report, I have utilized facts provided by FTB or through filings of the Court docket.

This report is subject to amendment, modification and supplementation based upon documents, facts, further analysis, information or testimony that may be provided to me in the future.

## SUMMARY OF CONCLUSIONS

1.  Excess Overdraft Fees During the Class Period: $ 97.7 Million
2.  Present Value of Injunctive Relief: $ 58.8 Million over 5 years; and $108.3 Million over 10 year, computed at a 3.5% discount rate.

## QUALIFICATIONS

I am the Managing Director of The Andela Consulting Group, Inc. ("ACG"), a consulting firm whose services include research, management consulting (especially for troubled companies), litigation consulting and expert witness services. I have significant experience in banking, business and consulting.

I have served as a financial and management consultant, business advisor and board member for public and private companies engaged in deposit transactions. I have also acted as a reorganization advisor to the majority shareholders of The Bank of Saipan and as an advisor approved by a federal regulatory agency for a troubled bank's deposit and operational controls.

My experience also includes service as a senior bank officer at four banks; service on the board of directors of two banks; service as an independent outside director and chair of the Audit Committee of First Alliance Mortgage[1] and service as an advisor to banks and financial institutions.

My experience in the banking and financial institution industry spans more than 40 years. I started my career at Lloyds Bank California, where I was a Vice President in the Corporate Finance and California Divisions. I then moved to Sanwa Bank of California, where I was Vice President and Senior Credit Officer for Southern California. I have also worked at Bank of Los Angeles, as Founding Director, President and Chief Executive Officer; Center National Bank, as Director, President and Chief Executive Officer; First Los Angeles Bank, as Executive Vice President; and Western States Bankcard Association, as a director. I was also director of the Fort Ord Credit Union, advisor to Matadors Community Credit Union and a founder and organizer of Hancock Savings Bank.

---

[1] Service subsequent to FAMCO's bankruptcy filing.

Since 1995, I have also served as an appointed mediator for the Bankruptcy Mediation Program of the United States Bankruptcy Court for the Central District of California.

I have a Masters of Business Administration from Santa Clara University and a Bachelor of Science in business from the University of California at Los Angeles.

A copy of my résumé and an overview of The Andela Consulting Group, Inc. are attached as Exhibit A.

## DOCUMENTS AND MATERIALS RELEVANT TO ANALYSIS

In formulating the observations and opinions expressed in this report, I have reviewed various documents ("Documents") that include but are not limited to the following:

- Class Action Complaint;
- Settlement Agreement (the "Settlement Agreement");
- Opinion and Order of Preliminary Approval, Certification of the Settlement Class, Approval of the Notice Plan, and Scheduling a Date for a Final Fairness Hearing;
- Objections to Preliminary Approval and to Final Approval;
- Documents provided by FTB including data and information pertaining to monthly summaries of consumer overdraft item fees, daily fee dollars, waivers, reversals and charge offs, net consumer fees, principal losses, realized fees, the number of monthly overdraft occurrences, the number of accounts with occurrences (posting of an OD fee), and the average number of occurrences;
- Affidavit of Kevin Sullivan, dated March 4, 2011;
- FTB's 2004 – 2009 10 K Reports;
- FTB's 2010, 3rd Quarter 10 Q Report;
- FTB's web site;

- Federal Reserve Bank web site;
- Federal Deposit Insurance Corporation ("FDIC") web site;
- Office of the Comptroller Currency ("OCC") web site;
- Findings of Fact and Conclusions of Law After Bench Trial, Gutierrez, et al vs. Wells Fargo Bank, N.A.;
- Final Settlement Agreement and Order Finally Approving Class Action Settlement, Closson, et al., vs. Bank of America, N.A., et al.;
- Various articles and materials including footnote references contained in this report.

During my banking, business, financial institution and consulting career, in addition to what I have learned from my professional work experience, I have attended numerous seminars, conferences and courses. I have studied various textbooks and read professional and trade publications. The subject matters covered by these materials include: bank operations, corporate governance, deposit accounts, deposit processing, deposit service charges, damages, and economic trends in financial services industries. While the sources for these materials may vary, they are sponsored or published by various organizations closely associated with banking, business, and deposit processing.


## SCOPE OF ENGAGEMENT


I have been requested by Plaintiffs' Counsel to:

- Assess the amount of Excess OD Fees caused by FTB re-sequencing Debit Card and ATM transactions from high-to-low dollar value during the Class Period.

- Assess the present value of FTB's change in business practices, required by the Settlement Agreement to no longer re-sequence Debit Card and ATM transactions from high-to-low dollar value.

## DISCUSSION, FINDINGS, OBSERVATIONS AND OPINIONS

As discussed in this report, I may use terms that have a legal connotation. However, in the context of this report, I am not discussing, observing and/or opining from a legal perspective, but rather from a banking and business perspective regarding the use of such terms as they are commonly used in the ordinary course of business by banking, business and credit industry professionals.

As a result of my Document examination and analysis, together with my own extensive background and direct experience in the banking and financial institution industry, an executive officer at various banks and as a consultant to banks for decades, I have formulated the observations and opinions expressed in this report.

### Preface

This case has many complexities and raises economic, public policy and social issues with respect to Debit Card and ATM transaction processing, fees, service charges and the creation of a banking method for increasing bank fee income and depleting accountholder accounts.

The impact of overdraft fees and associated posting practices is limited to approximately one fifth of accountholders. According to a report from the American Bankers Association ("ABA"), with respect to U.S. deposit accountholders, "[M]ore than 3/4ths of bank customers did not pay any debit card overdraft fees during the 12 months through mid-August [2010]." "In a telephone survey of 1,010 U.S. adults that Ipsos-Reid conducted for the group August 14, August 15, 77% of respondents said that they did not pay a debit card overdraft fee during the previous 12 months, while 21% said they had paid one or more overdraft fee. The remaining 2% were unsure."[2] The inference I drew

---

[2] American Banker, Kate Fitzgerald, Most Customers Avoid Overdraft Hit, September 17, 2010.

from the aforementioned statistics is that the great majority of FTB's customers would not be affected by the Settlement Agreement.

At this juncture, both Plaintiffs and Defendant have reached a settlement (the "Settlement") that is subject to the approval of the Court.

**Information Considered in Developing Financial Models**

For the Class Period (October 21, 2004 – July 1, 2010) FTB has provided detailed, nonpublic information which it has designated Confidential. That information was utilized in developing models to estimate Excess OD Fees and the present value of the injunctive relief portion of the Settlement Agreement to accountholders.

Documents provided by FTB include data and information pertaining to monthly summaries of consumer overdraft item fees, daily fee dollars, waivers, reversals and charge offs, net consumer fees, principal losses, realized fees, the number of monthly overdraft occurrences, the number of accounts with overdraft fee occurrences, and the average number of occurrences per account.

Data captured by FTB from January to July 2010 reflects that Debit Card and ATM transactions accounted for between approximately 54% and 59% of total transaction volume. This supports my models' assumption that approximately 57% of transaction volume was associated with Debit Card and ATM transactions and, accordingly, approximately 57% of overall overdraft fees were associated with those types of transactions.

Another variable considered was accountholder funds availability, which I assumed is tied directly to the deposit of accountholder paychecks. Based on my direct experience in banking and business, it is my opinion that bi-monthly payroll payments are the most

prevalent form for the issuance of paychecks, although other common forms of payroll payment include weekly and monthly payments. In addition, it is also my opinion that the highest level of overdraft fees would logically, therefore, have been incurred by accountholders typically prior to their payroll payment dates.

Accordingly, for forming my conclusions, I assumed that OD Fees, for individual accountholders, tended to occur in clusters of 2 or 3 days per month and tend to correlate with diminished available account balances prior to their replenishment from paycheck deposits.

**Methodology for Estimation of Excess OD Fees**

At FTB, batch processing for the calculation of OD Fees is run at the end of each business day, Tuesday through Friday, for transactions made since the end of the previous banking day. Processing at the end of the banking day on Monday incorporates transactions made since the end of the banking day on the previous Friday. As such, OD Fees associated with electronic transactions (Debit Card and ATM) are assessed only during each of these business cycles, normally 19 to 23 times per month.

FTB maintains and provided aggregate monthly totals and calculated averages for OD Fees per account, which I felt were commercially reasonable to rely upon for modeling purposes. FTB information included average monthly data on the number of overdraft transactions incurred by accountholders who incurred one or more OD Fee. For example, for the month of January 2005, FTB's records indicate that for the 160,407 accountholders who incurred an overdraft fee, the average number of OD Fees per account was 3.22. Over the Class Period, according to the records provided by FTB, the average number of OD Fees per account per month ranged from a low of 3.12 to a high of 4.24.

For modeling purposes, I employed a methodology that estimated the total amount of Excess OD Fees posted by FTB during the Class Period using the aggregate monthly data provided by FTB. Models were constructed to utilize the average number of overdraft transactions per account per month to estimate total Excess OD Fee revenue using various weighted "clustering" assumptions.

If an accountholder were to make only one Debit Card or ATM transaction during any business cycle, it is true that there can be no difference in the assessment of that transaction, for OD Fee purposes, between chronologically based processing or batch processing that re-sequences transactions from high-to-low dollar value. By way of illustration, assume that an accountholder makes three electronic debit charges during the course of a month. If those transactions are made during three different processing cycles, then there would be no difference between the assessment of OD Fees if processed on a chronological basis or in a batch processing mode that re-sequences transactions from high-to-low dollar value. Hence, "zero" or "one" overdraft fee would be incurred independent of the processing method used, and would depend only on the account balance.

If, however, all three transactions occurred during the same business cycle, the number of OD Fees would depend on both the account balance and the processing method of those transactions (chronological or batch re-sequenced).

As the first step in my analysis, in order to estimate maximum Excess OD Fee revenue for a given month, it was assumed that each accountholder who was charged at least one overdraft fee made the average number of transactions on one day. I then independently determined what percentage of these transactions (on average) would result in Excess OD Fees, and applied the result to the net transaction overdraft fee revenues posted by FTB.

To establish these percentages, a set of matrices was developed to determine the probability of different OD Fees being assessed under chronological transaction processing as opposed to batch high-to-low processing. Matrices were developed for

two, three and four individual transactions, all made on the same day, which looked at the number of OD Fees assessed for all possible chronological sequences of these Debit Card and ATM dollar transactions compared to all possible combinations of the available balance of the accountholder related to these transactions. (A matrix for "one" transaction was not required as the probability of a difference in the assessment of overdraft fees is zero.) The probability for a "mismatch" in the assignment of OD Fees between chronological and batch re-sequencing processing for 1, 2, 3 and 4 transactions was determined to be 0%, 10%, 17.65%, and 20.21%, respectively. (Exhibit C, Examples 1 to 3).

The probabilities derived in the above paragraph were then used to plot a graph (Exhibit D) that represents the relationship between the number of transactions and their associated probability for a mismatch[3] in OD Fees. A "best-fit" curve was then constructed between the coordinates for 1 through 4 transactions per day, and were further graphically projected for transactions greater than four per day, so that appropriate probabilities could be assigned to the average number of transactions per account per month supplied in the FTB data, that were not in whole numbers.

The next step was to construct a financial model in order to estimate the sum of Excess OD Fees over the Class Period. To do this, I relied on FTB-furnished data on OD Fee revenues. This data included:

> (a) the number of monthly transactions subject to overdraft fees multiplied by the individual overdraft fee applicable for that month (defined by FTB as "Consumer Overdraft Item Fees");
> (b) the sum of the direct per-transaction overdraft fees in "a" above and a "daily" fee applied by the bank for unresolved negative balances remaining after a given number of days;

---

[3] A mismatch represents a condition where the number of transactions assessed an overdraft fee under chronological processing in the order received does not equal the number of transactions assessed an OD Fee under batch processing that re-sequences transactions from a high-to-low dollar value.

   (c) the sum referenced in "b" above reduced by subsequent Waivers, Reversals, and Fee Charge-offs (defined by FTB to be "Consumer Net Fees"); and lastly,

   (d) the sum referenced in "c" above adjusted by principal losses to the bank resulting from the payment of required merchant debit transactions on behalf of accountholders with insufficient funds (defined by FTB to be "Realized Fees").

For the purposes of the model, Consumer Net Fees (or the sum of per unit charges and daily fees adjusted for waivers, reversals and charge-offs) was chosen because in my opinion it constituted the best available data on the net assessment of OD Fees on accountholders.

In my opinion, the Excess OD Fee model calculated an estimated maximum value for Excess OD Fees. This is because the model includes Debit Card and ATM OD Fees and Daily OD Fees (fees assessed if an accountholder did not pay off their account overdraft within a specific number of days) net of waivers, reversals and charge offs. And, because not all Daily OD Fees would have resulted from high-to-low reordering, the inclusion of all such fees in the Excess OD Fee model means Excess OD Fees were computed on potentially higher values.

According to information provided by FTB, approximately 57% of transactions and OD fees arise out of the Debit Card and ATM activity with which the Settlement Agreement is concerned. Therefore, for each month the model was programmed to adjust Consumer Net Fees by 57%. The resultant derived "electronic" Consumer Net Fee total was then multiplied by the probability of a mismatch between chronological and batch re-sequence processing for the average number of OD transactions for that month. (I estimated representative data for October, November and December of 2004, as this information was not available). Adding the resulting totals provides an estimate for the maximum amount of Excess OD Fee revenue earned by FTB over the Class Period. (Exhibit E: Model 1.)

Given the likelihood that not all overdraft transactions for each accountholder are made on the same day, alternative overdraft transaction scenarios were input into the model to estimate the amount of excess overdraft fee revenue posted by FTB under each scenario. Therefore, the model (Exhibit E: Models 2 and 3) was also run with the assumptions that the:

> (a) average number of OD transactions was evenly divided between two days; and
>
> (b) average number of OD transactions was evenly divided among three different days.

**Methodology for Determining Discounted Present Value of Injunctive Relief for the Elimination of Excess OD Fees**

Before calculating the present value ("PV") of Excess OD Fee savings that would be achieved by the elimination of the current practice of re-sequencing electronic debit transactions from high-to-low value, it was necessary to determine the impact of Regulation E ("Reg. E").

Regulation E was amended in 2009 with changes becoming effective in July and August of 2010, relevant only to Debit Card and ATM transactions. These changes provide that accountholders can only be assessed overdraft fees for Debit Card and ATM transactions if they have affirmatively provided authorization to a financial institution like FTB to process debit card and ATM transactions against insufficient account balances. Without this authorization the financial institution must block the approval of accountholder debit transactions if an account balance is not sufficient to cover the transaction.

Data received from FTB included several months of OD Fee revenue earned (through November 2010) following implementation of Regulation E. I selected September to November 2010 for comparison with the same three months from the prior year, 2009, because in reviewing this data it appears that the impact of Reg. E had not been fully normalized during August 2010.

In comparing the Consumer Overdraft Item Fee revenues for 2009 and 2010 for these three months, it appears that the impact of Reg. E reduced FTB's OD Fee revenue by approximately 36%. (Exhibit F). The 36% reduction in Consumer OD Fees relates only to Reg. E and does not take into account any potential effects from injunctive relief.

Given changes in public usage of the banking system over the past few years, it was decided to use the most recent completed calendar year for which data was available as the best indicator of future trends. As such the estimated Excess OD Fees for 2009 were then reduced by the 36% to account for the impact of Reg. E. The remainder of $13,025,584, represents the annualized effect of injunctive relief provided by the Settlement. That $13,025,584 is Excess OD Fees that that would have not been assessed under a chronological posting order. (Exhibit F)

The PV of this number was then calculated at a discount rate of 3.50% (to correlate with the 10-year U.S. Treasury Bond), assuming this reduction in Excess OD Fees will remain relatively constant over the next ten years. (Exhibit F).

In preparing this Report, I have taken into consideration that the U.S. Treasury Bond is a common index that is used to compare investment alternatives.[4] It has been my direct experience that many investors and banks view U.S. Treasury Bonds as being the safest investment. The U.S. Treasury Bond is also viewed as a "pure" rate because it represents a market rate of interest that is available for an investor at a given point in time in the market for a specific period of time.

## CONCLUSIONS

1. Excess Overdraft Fees During the Class Period: As discussed above, the amount of Excess OD Fees caused by FTB re-sequencing Debit Card and ATM transactions from

---

[4] As of 03/02/11 and 03/03/11, the yield on U.S. Treasury Bonds was 3.47% and 3.56%, respectively. For computation purposes I selected 3.50%. In effect, the higher the discount rate the lower the PV.

high-to-low dollar value during the Class Period has been modeled using three different "clustering" assumptions. Estimated Excess OD Fees for each model are as follows:

    a. If the average number of overdraft transactions per month for each accountholder all occur on one day, $161.4 million represents the maximum estimated Excess OD Fee revenue over the Class Period. (Exhibit E – 1).

    b. If the average number of overdraft transactions per month for each accountholder is evenly divided over two separate days, $139.4 million represents the estimated Excess OD Fee revenue over the Class Period. (Exhibit E – 2).

    c. If the average number of overdraft transactions per month for each accountholder is evenly divided over three separate days, $55.9 million represents the estimated Excess OD Fee revenue over the Class Period. (Exhibit E – 3).

As discussed on pages 8 and 9 above, because bi-monthly payroll payments are the most prevalent form for the issuance of paychecks, it is my opinion that the highest incidence of overdraft fee transactions tend to occur in clusters of 2 or 3 days per month and tend to correlate with diminished available account balances prior to their replenishment from paycheck deposits.

Therefore, given my assumption that accountholder transactions subject to overdraft fees tend to occur in clusters on 2 or 3 days per month, I averaged section 1-b and 1-c above to arrive at my considered estimate of $97.7 million in Excess OD Fees over the Class Period.

2.  **Present Value of Injunctive Relief:** The discounted net present value of the elimination of Excess OD Fees caused by FTB re-sequencing Debit Card and ATM

transactions from high-to-low dollar value has been computed at a 3.5% discount rate[5] to equal $58.8 million over five years, or $108.3 million over ten years.

---

[5] In the event a higher discount rate was selected such as 5% or 10% instead of 3.5% the resultant PV computations would have been $56,393,963 or $100,580,109, respectively for 5 and 10 years. However, if a lower discount rate such as 2%, the resultant PV computations would have been $61,395,564 and $117,003,418, respectively for 5 and 10 years

**Supplemental Information**

Pursuant to Federal Rule of Civil Procedure 26: Disclosure of expert testimony, the following is submitted:

1. Expert Witness:

Thomas A. Tarter
Managing Director
The Andela Consulting Group, Inc.
16311 Ventura Boulevard, Suite 845
Encino, CA 91436
818-380-3102

2. Data and information considered by the expert witness in formulating his opinions:

Please refer to the Documents, Discussion Findings, Observations and Opinions sections of this report.

3. Statement of all opinions to be expressed and the basis and reasons therefore:

Please refer to the Discussions, Findings, Observations and Opinions Section of the Report.

4. Compensation:

   $275/hr for consulting, analysis and research

5. Publications:

Consumer Law Pleadings, National Consumer Law Center Manual, 2004-06; excerpts of reports inclusive of predatory lending and credit damages.


6. List of Cases in which I testified at deposition, arbitration or trial 2006 to date of this report.

Please refer to Exhibit B.

17

Andela and Tarter Background Information:                    FTB Report
                                                            March 4, 2011

See Attached:

Andela Overview
Tarter Resume
Addendum to Tarter Resume

**EXHIBIT A**

# The Andela Consulting Group, Inc.
### 16311 Ventura Blvd., Suite 845
### Encino, CA 91436

Thomas A. Tarter, Managing Director
Expert Witness – Banking
Consulting – Financial and Management

Phone: (818) 380-3102
Fax: (818) 501-5412
E-Mail:ttarter@earthlink.net

The Andela Consulting Group, Inc. ("Andela Consulting"), managed by Thomas Tarter, primarily engages in Business and Financial Restructuring, Bank Consultation and Expert Witness/Litigation Support. Andela Consulting has provided business reorganization, operation, management, financial advice to financial institutions and businesses. With more than forty years of experience as a banker, business executive and consultant, Mr. Tarter brings to Andela Consulting extensive knowledge on how businesses, banks and related financial institutions operate. Andela Consulting has been involved in many matters which include: financial institution reorganization, banking, cash controls and management; checking accounts; bank operations; corporate governance and credit.

Andela Consulting was formed in 1993 and since that time its associates have worked with many types of clients in a variety of areas. These include: (i) Regulatory approved Operational Study of a troubled bank; (ii) Developed court approved business rehabilitation and marketing plans for a troubled bank; (iii) Appointed to the board of directors of First Alliance Mortgage Company, as an independent, outside director and Audit Committee Chair, after the company filed for bankruptcy protection (iv) Director, Sunshine Makers, Inc, *dba* Simple Green; (v) Monarch Bank to provide expert testimony and litigation consultation regarding bank depository and IRA accounts; (vi) A large Nevada Real Estate Development Company to provide turnaround management and financial advice; (vii) Advanta National Bank -consultation regarding credit card collection practices; (viii) Consumer credit - TILA, loan and lease transactions, ID theft, credit damages; (ix) A Viatical Service Company to provide expert testimony and litigation consultation regarding asset-based lending industry customs, standards and practices and lender liability issues; (x) A Financial Institution to provide expert testimony and litigation consultation regarding real estate loan restructuring, construction and permanent lending; (xi) Ford Motor Credit Corporation to provide expert testimony and litigation consultation regarding lender liability, collateral protection and creditor disclosure involving an energy production project; (xii) Developed a cash management and control system for multiple inter-related Chapter 11 debtors operating in several states including Hawaii; (xiii); Marin Outdoor, appointed as common stock trustee and later as a director in connection with its financial restructuring and Chapter 11 proceedings; (xiv) Oswell Self Storage to provide turnaround management and advisory services to a Chapter 11 debtor.

Since 1993, Andela Consulting has provided business management and financial consulting services involving: (i) banking and financial institutions, (ii) corporate boards, (iii) commercial, consumer, real estate and corporate finance, (iv) business reorganization, and (v) turnaround management services. The consulting and expert

witness services of Andela Consulting involve the areas of: (i) Management – Interim & Turnaround; (ii) Interest Rate; (iii) Business, loan and bankruptcy plan feasibility analysis – Operational & Financial; (iv) Board of Directors – Membership & Consultation; and (v) Debt & Equity Restructuring.

# THOMAS A. TARTER
## CURRICULUM VITAE
**The Andela Consulting Group, Inc.**
**16311 Ventura Blvd., Suite 845**
**Encino, CA 91436**
Phone: (818) 380-3102 or (818) 414-6685
E-Mail: ttarter@earthlink.net

## EDUCATION::

University of California at Los Angeles, Bachelor of Science degree in Business, 1965.

University of Santa Clara, Master of Business Administration degree with a specialization in Finance, 1969.

## LECTURER:

Mr. Tarter has been an instructor, panelist and guest lecturer for several professional organizations and institutions of higher education, including the following:

> American Institute of Banking
> American Management Association
> Los Angeles City College
> United States Small Business Administration
> Gonzaga University School of Law
> Practicing Law Institute
> International Council of Shopping Centers
> International Institute of Business and Banking
> National Association of Consumer Advocates
> Orange County Bankruptcy Forum
> Los Angeles Chapter of the American Society of Appraisers
> Southern California Chapter of the Appraisal Institute

## PROFESSIONAL EXPERIENCE:

September 1993 – Present
**The Andela Consulting Group, Inc.**, Managing Director

> Specializes in providing management, financial and advisory services involving deposit accounts, corporate governance, credit damages, credit cards, lending, management, financial and banking matters. Mr. Tarter has served on boards, assisted in corporate restructures and has provided advisory services to a diverse group of clients including corporations, law firms, banks, financial institutions and governmental agencies including the United States Small Business Administration.

Thomas A. Tarter CV
Page 2

**October 1985 – August 1993**
**First Los Angeles Bank,** Executive Vice President, Member of Officers Loan
Committee
> During his association with First Los Angeles Bank was responsible for
> supervising the bank's largest banking region, developed compensation and
> incentive programs, asset/liability management, development of operating and
> credit policies and procedures and strategic planning. Additional responsibilities
> included deposit programs and systems, credit and risk management, marketing,
> public communications, mergers, acquisitions, the development of non-traditional
> banking businesses such as mortgage banking division and an SBA department.

**November 1984 – September 1985**
**Center National Bank,** Director, President and Chief Executive Officer
> Recruited to administer a troubled financial institution. Developed programs to
> implement regulatory requirements and to constrict the bank's assets to adhere to
> capital constraints. Developed and implemented policies and procedures
> involving deposits, credit administration and personnel including compensation,
> termination, staff curtailment and recruitment.

**January 1980 – October 1984**
**Bank of Los Angeles,** Organizer, Founding Director, President and Chief Executive
Officer
> Responsible for organization and completion of two stock offerings, initial (1982)
> and secondary (1984), both of which were over subscribed. Responsible for the
> initial and ongoing organization of the bank as well as supervising its operations
> and growth. Negotiated the acquisition of the American City Bank - Beverly
> Hills from the Federal Deposit Insurance Corporation. Developed and
> implemented policies and procedures including compensation, personnel, bank
> operations, deposits, credit and audit.

**1977 – 1980**
**First Los Angeles Bank,** Regional Vice President and member of the bank's Officers
Loan Committee

**1976 – 1977**
**Sanwa Bank of California,** Vice President and Senior Credit Officer for Southern
California and Member of Loan Committee
> Responsible for administering the bank's loan portfolio in Southern California
> including the implementation of policies, procedures and controls to monitor the
> bank's deposits, corporate, real estate and consumer loan activities and risk
> management..

Thomas A. Tarter
Page 3

1969 – 1975
**Lloyds Bank California**, Vice President, Corporate and California Divisions
> Responsible for the administration and development of major corporate
> relationships. Developed new deposit and lending programs including acceptance
> and SBA financing.

Additionally, Mr. Tarter was a founding organizer of Hancock Savings Bank. He shared
responsibility for its formation and organization. He also co-organized and coordinated
its initial stock offering.

## TESTIMONY:

Mr. Tarter has provided expert testimony at deposition and trial in municipal, state and
federal courts as well as at arbitration.

Litigation and consultation clients include: Mobil Oil Corporation, Ford Motor Credit
Corporation, Advanta National Bank, Bank of The West, Credit First Bank, Republic
Bank, Sanwa Bank, Citicorp, Deutsche Bank, JPMorgan Chase, Wells Fargo Bank,
Union Bank of California, Washington Mutual, Bank of Saipan, United Mortgage,
Gonzaga University, Harvard University Law School, City of Oxnard, Small Business
Administration; and individuals, municipalities, partnerships and businesses.

## BOARD MEMBERSHIPS AND BUSINESS AFFILIATIONS
## HAVE INCLUDED:

> Western States Bankcard Association
> Sunshine Makers, Inc. d/b/a Simple Green
> Fort Ord Credit Union
> Holiday World RV
> Marin Outdoor (Bankruptcy related directorship)
> First Alliance Mortgage Company (Appointed during bankruptcy proceedings)
> American Standard Development Company, Inc.
> BKLA Bancorp
> Center Financial
> Los Angeles Bankruptcy Forum
> Los Angeles Business Council, member of Executive Committee
> Loyola Marymount University Fine Arts/Film School Council
> Los Angeles Free Net, Inc. (Internet)

## MEDIATOR:

Appointed by the United States Bankruptcy Court – Central District of California to its
panel of mediators.

### Addendum to CV of Thomas A. Tarter

Qualifications: My background involves experience with large and small banks. Lloyds Bank California, Sanwa Bank of California and First Los Angeles Bank were subsidiaries of very large banks. At Sanwa Bank and First Los Angeles Bank, I was involved in evaluating potential acquisitions that involved "healthy" and "distressed" banks. At First Los Angeles Bank, I was also involved in the purchase of loans from the F.D.I.C. and the sale of non-performing loans.

I was also involved in the formation of a savings bank and a commercial bank that were located in Los Angeles, California. While I did not serve on the board of directors of the savings bank, I provided advice involving staffing, capital and regulatory issues to directors and senior management. I was involved in the formation of a commercial bank — Bank of Los Angeles. At the Bank of Los Angeles, I was involved in the acquisition of another bank that was closed by state and federal regulators, purchased loans from the FDIC and the RTC. Issues involved in the acquisition included: deposit retention, deposit withdrawal requests, possible run on deposits, liquidity, borrower loan defaults and lender liability claims, performing and non-performing loans. It was a complicated process that worked out positively because well-defined business and strategic plans were quickly developed and implemented.

I was also approved by regulatory agencies to serve as the chief executive officer of a financially troubled bank, Center National Bank. This assignment resulted in the identification of significant additional problems within the bank that prior to my employment had not been discovered by either the bank's independent auditors or by the regulators. My duties included: Securities and Exchange Commission disclosures, valuation of the loan portfolio, amendment of financial reports, the sale of loans, shrinkage of deposits, capital infusion and implementation of new policies, procedures and controls.

Subsequent to First Alliance Mortgage Corporation ("FAMCO") filing for bankruptcy protection, I was approved and appointed with the concurrence of the board of directors, creditors and court to the board of directors of FAMCO which was a public, SEC reporting financial services company. I served during bankruptcy proceedings as its Audit Committee, Chair. I was also appointed to serve during reorganization on the board of directors of a regional retail company.

I have served as a director of the Western States Bankcard Association and as an advisor to various financial institutions and companies involving credit card, lender liability, TILA, and UDAP issues.

I have also been appointed to the panel of mediators by the United Sates Bankruptcy Court for the Central District of California.

**EXHIBIT B**

**List of cases that the expert witness has testified at trial, deposition, mediation or arbitration included the following:**

1. John Doe vs Church of Latter Day Saints, et. Al; Los Angeles, CA, Depo 02/11

2. Empire Merchandizing vs. Bank Rhode Island, Providence, Rhode Island, Depo 02/11; Trial 02/11.

3. United States of America vs. 718 West Wilson, et al, San Diego, CA, Depo 01/11

4. Dufour vs. Informative Research, et al, Garden Grove, CA, Depo 01/11

5. Amex vs Alexander Max, et al, Rockville, MD, Depo 10/10

6. Umpqua Bank vs Larmont, et al, Sacramento, CA, Depo 10/10

7. In Re: Mammoth Arrowhead 1, LLC, Phoenix, AZ, Trial 09/10

8. D. Alexander vs Anderson, et al, Los Angeles, CA, Depo 08/10

9. In re: Quarry Pond, LLC, et al, San Francisco, CA, Trial 06/10

10. Abdi vs Mulhearn, et al, Los Angeles, CA, Arb 06/10

11. Lovett vs Citibank, et al, Los Angeles, CA, Depo 05/10; Trial 10/10

12. Charon Solutions, Inc. vs Jensen, et al, Los Angeles, CA, Depo 05/10

13. Faye Estates, LLC vs Eastern Savings Bank, Los Angeles, CA, Depo 04/10

14. Zey vs Dyck-O'Neal, et al, St. Louis, MO, Depo 04/10

15. In re: Mendoza, et a, Santa Rosa, CA., Trial 04/10

16. In re: Bacchus, et al, Santa Ana, CA, Depo 02/10; Trial 02/10

17. Matthews vs Chase, et al, Jacksonville, FL, Depo 02/10

18. DeWitt vs Monterey Insurance company, et al., San Diego, CA, Depo 02/10; Trial 04/10

19. Jung vs Hamni Bank, et al., Los Angeles, CA, Depo 01/10

20. Garcia vs Triton Acceptance, Los Angeles, CA, Depo 12/09; Trial 12/09

21. CNA, et al vs Lloyds, et al, Chicago, CA, Depo 11/09

22. Hickerson vs Financial Freedom, et al, Ventura, CA Depo 11/09

23. Perry vs Mega Life, et al., Phoenix, AZ, Depo 11/09

24. In re: McBride's RV Storage, LLC., Riverside, CA, Depo 10/09; Trial 10/09

25. Cartwright vs CMI, WSFS, Experian, et al. Los Angeles, CA, Depo 09/09; 10/09; 12/09

26. Miller, et al vs. Norton Financial, Greer, Safe Harbor Financial, et al. San Diego, CA, Depo 09/09; Trial 05/10

27. Petty vs Petty, Jackson, CA, Trial 08/09

28. Marcus vs Vorspan, et al, Los Angeles, CA, Depo 07/09; Arb 08/09

29. Hwang vs Fang Fashion, et al, Los Angeles, CA, Depo 06/09

30. Elie vs Smith, San Mateo, CA, Depo 06/09

31. In re Waterstone, LLC, et al, Reno, NV, Trial 06/09

32. Heil Construction, Inc., vs Security Pacific Bank, et al., Bakersfield, CA, Depo 05/09

33. UJV, et al vs Lewis, Jennings, Ross, et al. Grand Rapids, MI, Depo 02/08; Trial 04/09

34. Blackburn vs. Duckor, et al, San Diego, CA, Dep 03/09; Arb 03/09

35. Holly Young vs Bigelow, Los Angeles, CA Depo 03/09; Trial 06/09

36. Levenson vs WaMu, et al., Los Angeles, CA, Depo 01/09; Arb 05/09

37. Drury - Countrywide, et al., Tampa, FL, Depo 10/08

38. Karen Cappuccio vs Countrywide, et al, Philadelphia, PA, Trial 09/08

39. Mark Anderson vs WaMu, et al, San Diego, CA, Depo 09/08

40. Ellis vs PHEAA, KeyBank, et al, Los Angeles, CA, Depo 07/08

41. Quinn vs Cherry Lane Auto, et al, Spokane, WA, Trial 06/08

42. In re I-5 Social Services Corporation, Debtor, Fresno, CA, Depo 05/08

43. Walsh et al vs Bank of Petaluma, et al, Santa Clara, CA, Depo 04/08; Trial 09/08

44. Gorman vs HSBC, Experian, et al, New York, NY, Depo 04/08

45. Shokatz vs Better Business Financial Services, Kelly Lucas & Pacifico LLP, et al, Milwaukee, WI, Depo 03/08

46. Austin vs HSBC, et al, San Diego, CA, Depo 03/08

47. Melton vs Friend, et al, Santa Ana, CA, Depo 01/08

48. OES vs West Coast Bank, et al, Portland OR, Trial 01/08

49. Michigan First Credit Union vs CUMIS, et al, Detroit MI, Depo 12/07; Trial 01/09

50. Ligon vs Chase, et al, Dallas, TX, Depo 11/07

51. Williams vs. AutoNation, Los Angels, CA, Depo 11/07; Trial 12/07

52. Weldon vs. Launch Marketing Concepts, Inc., Los Angeles, CA, Depo 11/07; Arbitration 12/07

53. Arnold vs LNR, Los Angeles, CA, Depo 10/07

54. Squirty's Collision, et al vs Finishmaster, et al, Depo 09/07; Trial 09/07

55. Casey vs US Bank, et al, Santa Ana, CA, Depo 09/07; Trial 10/07

56. Nardelli vs MetLife, et al, Phoenix, AZ, Depo 09/07; 08/08; Trial 03/09

57. Cha, et al vs WFB, et al, Los Angeles, CA, Depo 08/07; Trial 09/07

58. Ho, et al vs Wells Fargo Bank, et al, Los Angeles, CA, Depo 08/07; Trial 08/08

59. Ott vs Markley Group, et al, Los Angeles, CA, Depo 06/07

60. Hayden vs. Hayden, Los Angeles, CA Arbitration 05/07

61. Nelson vs. Arrow Financial Services, et al, Los Angeles, CA, Depo 04/07; Trial 05/07

62. Foppiano vs. Union Bank of California, Sacramento, CA, Depo 04/07

63. Board of Health Dept vs Virginia Jefferies, et al, Mansfield, OH, Depo 04/07

64. DeLuna vs Bank America, Los Angeles, CA, Depo 12/06; Trial 06/07

65. Pertiera vs Bank America, Los Angeles, CA, Depo 12/06

66. United States vs. Flores, Los Angeles, CA, Trial 12/06

67. Lehman vs Net Bank, et al, Indianapolis, In, Depo 12/06

68. Kay vs. Washington Mutual, et al., Sacramento, CA, Depo 09/06

69. Loudd vs. Weston, Conseco, GreenTree, et al., Los Angeles, CA, Trial 09/06

70. Associated Bank, et al vs Brady Martz, Minneapolis, MN, Dep 09/06

71. Satey vs Chase Manhattan Bank, et al, Los Angeles, CA, Dep 08/06

72. 1124 Marylin Drive Development, LLC vs Elyaszadeh, Los Angeles, CA, Dep 04/06;
    Trial 07/06

73. Paradigm Industries, Inc. vs Yang, Wells Fargo Bank, et al., Los Angeles, CA, Dep
    03/06; trial 04/06

74. Bank of America vs Mark Guzy, et al, San Francisco, CA, Dep 03/06

75. First State Bank of Taos, et al. vs Close, Albuquerque, NM, Dep 02/06

76. Neumann, et al. vs. Friedland, et al, San Jose, CA, Dep 02/06

77. Babijian, et al vs Union Bank of California, Los Angeles, CA, Dep 01/06

78. Bistro Executive, Inc., et al, vs Rewards Network, Inc., et al, Dep 01/06

79. Lu, et al, Los Angeles, CA, Arbitration, 11/05

80. Fisher vs Wells Fargo Home Mortgage, et al, Los Angeles, CA Dep 11/05, Trial
    04/07


The aforementioned list may be subsequently supplemented in the event that a matter(s)
was inadvertently omitted. Dates have been estimated to the best of my recollection.

# EXHIBIT C

**Tables of Possible Mismatches in the Assignment of OD Fees
Between Chronological (Chron.) Processing and Batch (B) Re-sequence Processing
For Accounts with at least One Potential Overdraft Posting per Day.**

*The following three examples have been created to determine the probability of a mismatch between chronological processing and batch re-sequence processing for two, three and four transactions all occuring on the same processing day. The structure of each example is the same.*

*In Example number 1, two proposed Debit Card/ATM transactions are selected.
Following this selection, a series of ranges (a, b and c) are defined that establish all possible combinations of an accountholder balance that relate to these transaction amounts.*

*Next a comparative matrix is generated. The two columns on the left compare all possible chronological ordering of these transactions (Chron-C), with the same transactions if re-sequenced from high-to-low dollar value (Re-sequenced-B). For each of these two orders of processing a determination was made as to how many OD Fees would have been posted for each possible account balance. Mismatches have been bolded.*

*At the bottom of each matrix the sum of each "C" and "B" column are totaled, with the combined totals for each shown on the far left. The difference between these two numbers represents the number of mismatches between the application of the two processing methods. That diference, divided by the total number of re-sequenced fees posted represent the mismatch probability.*

**Example Number 1**

Assumptions
      **Two** potential overdraft fees per day.
      Proposed two debit card/ATM transactions subject to the fee: $25 and $50
      Resulting account balance ranges prior to posting of fees used for analysis:
            a. Less than $25
            b. Equal to or greater than $25 but less than $50
            c. Equal to or greater than $50 but less than $75
            Note: if $75 or greater all transactions would have cleared with no OD fees

Table of possible outcomes.

| Order of Processing | | # of OD fees posted with account balance of: | | |
|---|---|---|---|---|
| Chron. (C) | Re-sequenced (B) | **a**<br>C  B | **b**<br>C  B | **c**<br>C  B |
| $50<br>$25 | $50<br>$25 | 2  2 | 2  2 | 1  1 |
| $25<br>$50 | $50<br>$25 | 2  2 | **1**  **2** | 1  1 |

| | | a | b | c |
|---|---|---|---|---|
| Chron. (C) | 9 | 4 | 3 | 2 |
| Re-sequenced (B) | 10 | 4 | 4 | 2 |

**Result**: Since chronological processing would have generated 9 OD Fees while re-sequencing generated 10 OD Fees, in 1 out of every 10 potential OD postings (10%) the account would have been negatively affected by batch re-sequence processing.

**Example Number 2**

Assumptions

        **Three** potential overdraft fees per day.

        Proposed three debit card/ATM transactions subject to the fee:  $10, $25 and $50

        Resulting account balance ranges prior to posting of fees used for analysis:

            a.  Less than $10

            b.  Equal to or greater than $10 but less than $25

            c.  Equal to or greater than $25 but less than $35

            d.  Equal to or greater than $35 but less than $50

            e.  Equal to or greater than $50 but less than $60

            f.  Equal to or greater than $60 but less than $75

            g.  Equal to or greater than $75 but less than $85

            Note: if $85 or greater all transactions would have cleared with no OD fees

Table of possible outcomes.

| Order of Processing | | a | | b | | c | | d | | e | | f | | g | |
| Chron. (C) | Re-sequenced (B) | C | B | C | B | C | B | C | B | C | B | C | B | C | B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $50 | $50 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2 | 2 | 2 | 2 | 1 | 1 |
| $25 | $25 | | | | | | | | | | | | | | |
| $10 | $10 | | | | | | | | | | | | | | |
| $50 | $50 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2 | 2 | **1** | **2** | 1 | 1 |
| $10 | $25 | | | | | | | | | | | | | | |
| $25 | $10 | | | | | | | | | | | | | | |
| $25 | $50 | 3 | 3 | 3 | 3 | **2** | **3** | **2** | **3** | 2 | 2 | 2 | 2 | 1 | 1 |
| $50 | $25 | | | | | | | | | | | | | | |
| $10 | $10 | | | | | | | | | | | | | | |
| $25 | $50 | 3 | 3 | 3 | 3 | **2** | **3** | **1** | **3** | **1** | **2** | **1** | **2** | 1 | 1 |
| $10 | $25 | | | | | | | | | | | | | | |
| $50 | $10 | | | | | | | | | | | | | | |
| $10 | $50 | 3 | 3 | **2** | **3** | **2** | **3** | **1** | **3** | **1** | **2** | **1** | **2** | 1 | 1 |
| $25 | $25 | | | | | | | | | | | | | | |
| $50 | $10 | | | | | | | | | | | | | | |
| $10 | $50 | 3 | 3 | **2** | **3** | **2** | **3** | **2** | **3** | 2 | 2 | **1** | **2** | 1 | 1 |
| $50 | $25 | | | | | | | | | | | | | | |
| $25 | $10 | | | | | | | | | | | | | | |
| Chron. (C) | 84 | 18 | | 16 | | 14 | | 12 | | 10 | | 8 | | 6 | |
| Re-sequenced (B) | 102 | | 18 | | 18 | | 18 | | 18 | | 12 | | 12 | | 6 |

**Result**:  Since chronological processing would have generated 84 OD Fees while re-sequencing generated 102 OD Fees, in 18 out of every 102 potential OD postings (17.65%) the account would have been negatively affected by batch re-sequence processing.

**Exhibit C – Transactional Re-sequencing Tables**

**Example Number 3**

Assumptions

**Four** potential overdraft fees per day.

Proposed four debit card/ATM transactions subject to the fee: $10, $25, $50 and $70

Resulting account balance ranges prior to posting of fees used for analysis:

a. Less than $10
b. Equal to or greater than $10 but less than $25
c. Equal to or greater than $25 but less than $35
d. Equal to or greater than $35 but less than $50
e. Equal to or greater than $50 but less than $60
f. Equal to or greater than $60 but less than $70
g. Equal to or greater than $70 but less than $75
h. Equal to or greater than $75 but less than $80
i. Equal to or greater than $80 but less than $85
j. Equal to or greater than $85 but less than $95
k. Equal to or greater than $95 but less than $105
l. Equal to or greater than $105 but less than $120
m. Equal to or greater than $120 but less than $130
n. Equal to or greater than $130 but less than $145
o. Equal to or greater than $145 but less than $155
Note: if $155 or greater all transactions would have cleared with no OD fees

**Result:** Since chronological processing would have generated 900 OD Fees while re-sequencing generated 1,128 OD Fees, in 228 out of every 1,128 potential OD postings (20.21%) the account would have been negatively affected by batch re-sequence processing.

See tables below.

**Example Number 3 (cont.)**

Table of possible outcomes.

# of OD fees posted with account balance of:

| Order of Processing | | a | | b | | c | | d | | e | | f | | g | | h | | i | | j | | k | | l | | m | | n | | o | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chron. (C) | Re-sequenced (B) | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B |
| $10 | $70 | 4 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 3 | 3 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 2 | 1 | 2 | 1 | 1 |
| $70 | $50 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $50 | $25 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $25 | $10 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $10 | $70 | 4 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 3 | 3 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 1 | 3 | 1 | 2 | 1 | 2 | 1 | 1 |
| $70 | $50 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $25 | $25 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $50 | $10 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $10 | $70 | 4 | 4 | 3 | 4 | 3 | 4 | 2 | 4 | 2 | 4 | 2 | 4 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 1 | 3 | 1 | 2 | 1 | 2 | 1 | 1 |
| $25 | $50 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $70 | $25 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $50 | $10 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $10 | $70 | 4 | 4 | 3 | 4 | 3 | 4 | 2 | 4 | 2 | 4 | 2 | 4 | 2 | 3 | 2 | 3 | 2 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 2 | 1 | 2 | 1 | 1 |
| $25 | $50 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $50 | $25 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $70 | $10 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $10 | $70 | 4 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 2 | 4 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 2 | 1 | 2 | 1 | 1 |
| $50 | $50 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $70 | $25 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $25 | $10 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $10 | $70 | 4 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 2 | 4 | 2 | 3 | 2 | 3 | 2 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 2 | 1 | 2 | 1 | 1 |
| $50 | $50 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $25 | $25 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| $70 | $10 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| | Total | a | | b | | c | | d | | e | | f | | g | | h | | i | | j | | k | | l | | m | | n | | o | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chron. (C) | 900 | 96 | | 90 | | 84 | | 80 | | 74 | | 70 | | 64 | | 60 | | 56 | | 50 | | 46 | | 40 | | 36 | | 30 | | 24 | |
| Re-sequenced (B | 1128 | 96 | | 96 | | 96 | | 96 | | 96 | | 96 | | 72 | | 72 | | 72 | | 72 | | 72 | | 72 | | 48 | | 48 | | 24 | |

**Example Number 3 (cont.)**

Table of possible outcomes.

# of OD fees posted with account balance of:

| Order of Processing | | a | | b | | c | | d | | e | | f | | g | | h | | i | | j | | k | | l | | m | | n | | o | |
| Chron. (C) | Re-sequenced (B) | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $25 / $70 / $50 / $10 | $70 / $50 / $25 / $10 | 4 | 4 | 4 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2 | 3 | 2 | 3 | 2 | 2 | 2 | 2 | 1 | 1 |
| $25 / $70 / $10 / $50 | $70 / $50 / $25 / $10 | 4 | 4 | 4 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2 | 3 | 1 | 3 | 1 | 2 | 1 | 2 | 1 | 1 |
| $25 / $50 / $70 / $10 | $70 / $50 / $25 / $10 | 4 | 4 | 4 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 2 | 2 | 2 | 1 | 1 |
| $25 / $50 / $10 / $70 | $70 / $50 / $25 / $10 | 4 | 4 | 4 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 4 | 3 | 3 | 2 | 3 | 2 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 2 | 1 | 2 | 1 | 1 |
| $25 / $10 / $70 / $50 | $70 / $50 / $25 / $10 | 4 | 4 | 4 | 4 | 3 | 4 | 2 | 4 | 2 | 4 | 2 | 4 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 1 | 3 | 1 | 2 | 1 | 2 | 1 | 1 |
| $25 / $10 / $50 / $70 | $70 / $50 / $25 / $10 | 4 | 4 | 4 | 4 | 3 | 4 | 2 | 4 | 2 | 4 | 2 | 4 | 2 | 3 | 2 | 3 | 2 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 2 | 1 | 2 | 1 | 1 |

**Example Number 3 (cont.)**

Table of possible outcomes.

| Order of Processing | | # of OD fees posted with account balance of: | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chron. (C) | Re-sequenced (B) | **a** C | B | **b** C | B | **c** C | B | **d** C | B | **e** C | B | **f** C | B | **g** C | B | **h** C | B | **i** C | B | **j** C | B | **k** C | B | **l** C | B | **m** C | B | **n** C | B | **o** C | B |
| $50 | $70 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 4 | 3 | 4 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2 | 2 | 2 | 2 | 1 | 1 |
| $70 | $50 |
| $25 | $25 |
| $10 | $10 |
| $50 | $70 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 4 | 3 | 4 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2 | 2 | 1 | 2 | 1 | 1 |
| $70 | $50 |
| $10 | $25 |
| $25 | $10 |
| $50 | $70 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 4 | 3 | 4 | 3 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 2 | 2 | 2 | 1 | 1 |
| $25 | $50 |
| $70 | $25 |
| $10 | $10 |
| $50 | $70 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 4 | 3 | 4 | 3 | 3 | 2 | 3 | 2 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 2 | 1 | 2 | 1 | 1 |
| $25 | $50 |
| $10 | $25 |
| $70 | $10 |
| $50 | $70 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 4 | 2 | 4 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 3 | 2 | 2 | 1 | 2 | 1 | 1 |
| $10 | $50 |
| $70 | $25 |
| $25 | $10 |
| $50 | $70 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 4 | 2 | 4 | 2 | 3 | 2 | 3 | 2 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 2 | 1 | 2 | 1 | 1 |
| $10 | $50 |
| $25 | $25 |
| $70 | $10 |

**Example Number 3 (cont.)**

Table of possible outcomes.

# of OD fees posted with account balance of:

| Order of Processing | | a | | b | | c | | d | | e | | f | | g | | h | | i | | j | | k | | l | | m | | n | | o | |
| Chron. (C) | Re-sequenced (B) | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B | C | B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $70 $50 $25 $10 | $70 $50 $25 $10 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2 | 2 | 2 | 2 | 1 | 1 |
| $70 $50 $10 $25 | $70 $50 $25 $10 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2 | 2 | **1** | **2** | 1 | 1 |
| $70 $25 $50 $10 | $70 $50 $25 $10 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | **2** | **3** | **2** | **3** | 2 | 2 | 2 | 2 | 1 | 1 |
| $70 $25 $10 $50 | $70 $50 $25 $10 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | **2** | **3** | **1** | **3** | **1** | **2** | **1** | **2** | 1 | 1 |
| $70 $10 $50 $25 | $70 $50 $25 $10 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 3 | 3 | 3 | **2** | **3** | **2** | **3** | **2** | **3** | **2** | **3** | 2 | 2 | **1** | **2** | 1 | 1 |
| $70 $10 $25 $50 | $70 $50 $25 $10 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 3 | 3 | 3 | **2** | **3** | **2** | **3** | **2** | **3** | **1** | **3** | **1** | **2** | **1** | **2** | 1 | 1 |

**EXHIBIT D**

**Exhibit D: Graph of the Probability of a Mismatch Between Transactions Processed Chronologically vs. Batch Re-sequencing**



Mismatch Probability for Each Number of Transactions Processed Daily

**EXHIBIT E**

**EXHIBIT E - 1**

Exhibit E-1:  Reference

To derive what in my opinion is the maximum amount of OD Fee revenue generated by FTB as a result of its re-sequencing practice, the following calculations were made.

For each month from October 2004 to June 2010, the Consumer Overdraft Item Fees (Item Dollars) received by FTB in that month (Column C) and the Consumer Overdraft Item Fees plus Daily Fees net of waivers, reversals and charge offs (Consumer Net Fees: Column D) were multiplied by 57% (Column E), to reflect that approximately 57% of OD Fees were generated by Debit Card and ATM Transactions. Columns F and G respectively contain the product of this calculation.

Column H contains the data from FTB as to the average number of OD Fees incurred by all accounts with at least one OD Fee that month.  Reading this average number of OD Fee transactions from Column H across the graph in Exhibit D results in the mismatch probability shown in Column I.

To calculate the variance amount, which represents the amount of OD Fees FTB earned as a result of re-sequencing, the total amount of electronic Item Dollars (Column F) is multiplied by the estimated mismatch probability (Column I) and the percentage of the month covered by the settlement agreement (Column J).

A similar calculation is performed using the electronic Consumer Net Fees (Column G) instead of the total amount of electronic Item Dollars (Column F) in order to more accurately reflect reductions for waivers, reversals and charge offs.  Columns  K and L represent the results of those calculations.  Column L has been utilized in my analysis because, in my opinion, this value constituted the best available data on the net assessment of OD Fees on accountholders.

Totals for Column L are shown on page three.

**Exhibit E-1:  Excess OD Fee Revenue Model**
Estimated Maximum Revenue Generated from Debit Card and ATM Transactions
Resulting from Re-sequencing vs. Chronological Processing
Assuming the Average Number of Fees Assessed per Month All Occur on One Day

| A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | FTB Data | FTB Data | FTB Data | (E * C) | (E * D) | FTB Data | From Graph | Percentage | (F * I * J) | (G * I * J) |
| | | | | | Electronic Fees | | Average # | | | Variance Amount | |
| | | Item Dollars | Consumer Net | Electronic | Derived from | Derived from | of Fees/Acct | Estimated | Fraction | On Item | On Consumer |
| Year | Month | OD Fees Only | Fees - GL | Charge % | Item Dollars | Consumer Net | w/OD Fees Per Month | Mismatch Probability | of Month | Dollars | Net |
| 2004 | Oct. | $16,000,000 | $14,000,000 | 57% | $9,120,000 | $7,980,000 | 3.40 | 18.90% | 35% | $603,288 | $527,877 |
| 2004 | Nov. | $16,000,000 | $14,000,000 | 57% | $9,120,000 | $7,980,000 | 3.40 | 18.90% | 100% | $1,723,680 | $1,508,220 |
| 2004 | Dec. | $16,000,000 | $14,000,000 | 57% | $9,120,000 | $7,980,000 | 3.40 | 18.90% | 100% | $1,723,680 | $1,508,220 |
| 2005 | Jan. | $15,471,983 | $17,155,025 | 57% | $8,819,030 | $9,778,364 | 3.22 | 18.40% | 100% | $1,622,702 | $1,799,219 |
| 2005 | Feb. | $14,298,100 | $15,268,767 | 57% | $8,149,917 | $8,703,197 | 3.18 | 18.20% | 100% | $1,483,285 | $1,583,982 |
| 2005 | Mar. | $17,483,703 | $19,308,838 | 57% | $9,965,711 | $11,006,038 | 3.41 | 18.90% | 100% | $1,883,519 | $2,080,141 |
| 2005 | Apr. | $17,103,060 | $18,072,837 | 57% | $9,748,744 | $10,301,517 | 3.35 | 18.70% | 100% | $1,823,015 | $1,926,384 |
| 2005 | May | $18,122,970 | $19,150,449 | 57% | $10,330,093 | $10,915,756 | 3.46 | 19.10% | 100% | $1,973,048 | $2,084,909 |
| 2005 | June | $23,585,621 | $22,604,802 | 57% | $13,443,804 | $12,884,737 | 3.65 | 19.50% | 100% | $2,621,542 | $2,512,524 |
| 2005 | July | $21,506,869 | $20,112,329 | 57% | $12,258,915 | $11,464,028 | 3.49 | 19.20% | 100% | $2,353,712 | $2,201,093 |
| 2005 | Aug. | $23,606,923 | $21,918,905 | 57% | $13,455,946 | $12,493,776 | 3.59 | 19.40% | 100% | $2,610,454 | $2,423,793 |
| 2005 | Sep. | $22,898,561 | $21,351,857 | 57% | $13,052,180 | $12,170,558 | 3.53 | 19.30% | 100% | $2,519,071 | $2,348,918 |
| 2005 | Oct. | $21,806,103 | $20,221,857 | 57% | $12,429,479 | $11,526,458 | 3.50 | 19.20% | 100% | $2,386,466 | $2,213,080 |
| 2005 | Nov. | $21,996,380 | $20,064,274 | 57% | $12,537,937 | $11,453,730 | 3.50 | 19.20% | 100% | $2,407,284 | $2,199,116 |
| 2005 | Dec. | $22,995,786 | $20,642,376 | 57% | $13,107,598 | $11,766,154 | 3.49 | 19.20% | 100% | $2,516,659 | $2,259,102 |
| 2006 | Jan. | $21,186,295 | $19,902,697 | 57% | $12,076,188 | $11,344,537 | 3.43 | 19.00% | 100% | $2,294,476 | $2,155,462 |
| 2006 | Feb. | $17,193,920 | $15,546,166 | 57% | $9,800,534 | $8,861,315 | 3.19 | 18.30% | 100% | $1,793,498 | $1,621,621 |
| 2006 | Mar. | $19,399,177 | $18,387,407 | 57% | $11,057,531 | $10,480,822 | 3.29 | 18.60% | 100% | $2,056,701 | $1,949,433 |
| 2006 | Apr. | $18,358,363 | $17,612,760 | 57% | $10,464,267 | $10,039,273 | 3.28 | 18.50% | 100% | $1,935,889 | $1,857,266 |
| 2006 | May | $22,489,280 | $21,691,753 | 57% | $12,818,890 | $12,364,299 | 3.53 | 19.30% | 100% | $2,474,046 | $2,386,310 |
| 2006 | June | $23,099,634 | $22,173,932 | 57% | $13,146,791 | $12,639,141 | 3.47 | 19.10% | 100% | $2,514,857 | $2,414,076 |
| 2006 | July | $21,229,571 | $20,343,653 | 57% | $12,100,855 | $11,595,882 | 3.38 | 18.80% | 100% | $2,274,961 | $2,180,026 |
| 2006 | Aug. | $24,067,235 | $22,390,693 | 57% | $13,718,324 | $12,762,695 | 3.49 | 19.20% | 100% | $2,633,918 | $2,450,437 |
| 2006 | Sep. | $20,954,061 | $20,006,922 | 57% | $11,943,815 | $11,403,946 | 3.34 | 18.70% | 100% | $2,233,493 | $2,132,538 |
| 2006 | Oct. | $21,180,902 | $20,151,992 | 57% | $12,073,114 | $11,486,635 | 3.40 | 18.90% | 100% | $2,281,819 | $2,170,974 |
| 2006 | Nov. | $18,527,157 | $17,660,460 | 57% | $10,560,479 | $10,066,462 | 3.19 | 18.30% | 100% | $1,932,568 | $1,842,163 |
| 2006 | Dec. | $18,126,019 | $16,093,321 | 57% | $10,331,831 | $9,173,193 | 3.12 | 18.00% | 100% | $1,859,730 | $1,651,175 |

**Exhibit E-1: Excess OD Fee Revenue Model (page 2)**
**(Average number of fees assessed per month all on one day.)**

| A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | FTB Data | FTB Data | FTB Data | (E * C) | (E * D) | FTB Data | From Graph | | (F * I * J) | (G * I * J) |
| | | | | | Electronic Fees | | Average # of Fees/Acct w/OD Fees Per Month | Estimated | Percentage of the | Variance Amount | |
| | | Item Dollars | Consumer Net | Electronic | Derived from Item Dollars | Derived from Consumer Net | | Mismatch | Fraction | On Item Dollars | On Consumer Net |
| Year | Month | OD Fees Only | Fees - GL | Charge % | | | | Probability | of Month | | |
| 2007 | Jan. | $21,376,888 | $20,218,813 | 57% | $12,184,826 | $11,524,723 | 3.42 | 19.00% | 100% | $2,315,117 | $2,189,697 |
| 2007 | Feb. | $17,092,915 | $16,025,241 | 57% | $9,742,962 | $9,134,387 | 3.18 | 18.30% | 100% | $1,782,962 | $1,671,593 |
| 2007 | Mar. | $19,128,738 | $18,568,971 | 57% | $10,903,381 | $10,584,313 | 3.31 | 18.60% | 100% | $2,028,029 | $1,968,682 |
| 2007 | Apr. | $18,674,711 | $18,479,463 | 57% | $10,644,585 | $10,533,294 | 3.35 | 18.70% | 100% | $1,990,537 | $1,969,726 |
| 2007 | May | $25,469,986 | $24,743,387 | 57% | $14,517,892 | $14,103,731 | 3.79 | 19.90% | 100% | $2,889,061 | $2,806,642 |
| 2007 | June | $23,799,434 | $23,277,820 | 57% | $13,565,677 | $13,268,357 | 3.61 | 19.40% | 100% | $2,631,741 | $2,574,061 |
| 2007 | July | $25,370,292 | $23,740,673 | 57% | $14,461,066 | $13,532,184 | 3.77 | 19.80% | 100% | $2,863,291 | $2,679,372 |
| 2007 | Aug. | $28,482,022 | $26,290,525 | 57% | $16,234,753 | $14,985,599 | 3.83 | 19.90% | 100% | $3,230,716 | $2,982,134 |
| 2007 | Sep. | $25,253,197 | $23,516,099 | 57% | $14,394,322 | $13,404,176 | 3.78 | 19.80% | 100% | $2,850,076 | $2,654,027 |
| 2007 | Oct. | $28,824,566 | $26,499,444 | 57% | $16,430,003 | $15,104,683 | 3.98 | 20.20% | 100% | $3,318,861 | $3,051,146 |
| 2007 | Nov. | $27,069,595 | $25,211,085 | 57% | $15,429,669 | $14,370,318 | 3.80 | 19.90% | 100% | $3,070,504 | $2,859,693 |
| 2007 | Dec. | $26,442,366 | $24,077,699 | 57% | $15,072,149 | $13,724,288 | 3.84 | 20.00% | 100% | $3,014,430 | $2,744,858 |
| 2008 | Jan. | $26,750,531 | $24,719,840 | 57% | $15,247,803 | $14,090,309 | 4.16 | 20.50% | 100% | $3,125,800 | $2,888,513 |
| 2008 | Feb. | $21,031,216 | $19,125,845 | 57% | $11,987,793 | $10,901,732 | 3.85 | 20.00% | 100% | $2,397,559 | $2,180,346 |
| 2008 | Mar. | $20,236,041 | $19,285,606 | 57% | $11,534,543 | $10,992,795 | 3.86 | 20.00% | 100% | $2,306,909 | $2,198,559 |
| 2008 | Apr. | $24,781,597 | $23,376,768 | 57% | $14,125,510 | $13,324,758 | 4.10 | 20.40% | 100% | $2,881,604 | $2,718,251 |
| 2008 | May | $24,727,533 | $23,500,671 | 57% | $14,094,694 | $13,395,382 | 4.08 | 20.40% | 100% | $2,875,318 | $2,732,658 |
| 2008 | June | $26,225,279 | $25,608,606 | 57% | $14,948,409 | $14,596,905 | 4.08 | 20.40% | 100% | $3,049,475 | $2,977,769 |
| 2008 | July | $29,921,285 | $27,506,521 | 57% | $17,055,132 | $15,678,717 | 4.24 | 20.70% | 100% | $3,530,412 | $3,245,494 |
| 2008 | Aug. | $27,737,103 | $25,634,296 | 57% | $15,810,149 | $14,611,549 | 3.98 | 20.20% | 100% | $3,193,650 | $2,951,533 |
| 2008 | Sep. | $30,479,796 | $27,929,586 | 57% | $17,373,484 | $15,748,864 | 4.15 | 20.50% | 100% | $3,561,564 | $3,228,517 |
| 2008 | Oct. | $29,518,939 | $26,698,813 | 57% | $16,825,795 | $15,218,323 | 3.99 | 20.30% | 100% | $3,415,636 | $3,089,320 |
| 2008 | Nov. | $21,587,850 | $19,100,218 | 57% | $12,305,075 | $10,887,124 | 3.65 | 19.50% | 100% | $2,399,490 | $2,122,989 |
| 2008 | Dec. | $27,144,719 | $24,210,947 | 57% | $15,472,490 | $13,800,240 | 3.93 | 20.10% | 100% | $3,109,970 | $2,773,848 |

**Exhibit E-1: Excess OD Fee Revenue Model (page 3)**
**(Average number of fees assessed per month all on one day.)**

| A | B | C FTB Data | D FTB Data | E FTB Data | Electronic Fees | | H FTB Data | I From Graph | J Fraction of Month | Variance Amount | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | F (E * C) | G (E * D) | | | | K (F * I * J) | L (G * I * J) |
| Year | Month | Item Dollars OD Fees Only | Consumer Net Fees - GL | Electronic Charge % | Derived from Item Dollars | Derived from Consumer Net | Average # of Fees/Acct w/OD Fees Per Month | Estimated Mismatch Probability | Percentage of the Month | On Item Dollars | On Consumer Net |
| 2009 | Jan. | $23,550,567 | $22,316,884 | 57% | $13,423,823 | $12,720,624 | 3.69 | 19.70% | 100% | $2,644,493 | $2,505,963 |
| 2009 | Feb. | $19,276,853 | $17,522,002 | 57% | $10,987,806 | $9,987,541 | 3.58 | 19.40% | 100% | $2,131,634 | $1,937,583 |
| 2009 | Mar. | $20,763,860 | $19,550,953 | 57% | $11,835,400 | $11,144,043 | 3.69 | 19.70% | 100% | $2,331,574 | $2,195,377 |
| 2009 | Apr. | $22,502,323 | $22,724,838 | 57% | $12,826,324 | $12,953,158 | 3.73 | 19.70% | 100% | $2,526,786 | $2,551,772 |
| 2009 | May | $23,902,794 | $24,394,491 | 57% | $13,624,593 | $13,904,860 | 3.83 | 19.90% | 100% | $2,711,294 | $2,767,067 |
| 2009 | June | $26,524,362 | $25,579,638 | 57% | $15,118,886 | $14,580,394 | 3.96 | 20.20% | 100% | $3,054,015 | $2,945,240 |
| 2009 | July | $25,440,312 | $24,486,533 | 57% | $14,500,978 | $13,957,324 | 3.77 | 19.80% | 100% | $2,871,194 | $2,763,550 |
| 2009 | Aug. | $24,328,801 | $23,489,963 | 57% | $13,867,417 | $13,389,279 | 3.77 | 19.80% | 100% | $2,745,748 | $2,651,077 |
| 2009 | Sep. | $26,608,217 | $24,920,336 | 57% | $15,166,684 | $14,204,592 | 3.93 | 20.10% | 100% | $3,048,503 | $2,855,123 |
| 2009 | Oct. | $25,367,728 | $23,805,958 | 57% | $14,459,605 | $13,569,396 | 3.80 | 19.90% | 100% | $2,877,461 | $2,700,310 |
| 2009 | Nov. | $21,294,732 | $19,937,199 | 57% | $12,137,997 | $11,364,203 | 3.83 | 19.90% | 100% | $2,415,461 | $2,261,476 |
| 2009 | Dec. | $25,860,752 | $23,820,407 | 57% | $14,740,629 | $13,577,632 | 4.12 | 20.50% | 100% | $3,021,829 | $2,783,415 |
| 2010 | Jan. | $21,065,936 | $20,092,382 | 57% | $12,007,584 | $11,452,658 | 3.81 | 19.90% | 100% | $2,389,509 | $2,279,509 |
| 2010 | Feb. | $17,005,889 | $15,580,110 | 57% | $9,693,357 | $8,880,663 | 3.63 | 19.50% | 100% | $1,890,205 | $1,731,729 |
| 2010 | Mar. | $19,712,848 | $19,120,576 | 57% | $11,236,323 | $10,898,728 | 3.86 | 20.00% | 100% | $2,247,265 | $2,179,746 |
| 2010 | Apr. | $20,170,743 | $20,293,886 | 57% | $11,497,324 | $11,567,515 | 3.79 | 19.90% | 100% | $2,287,967 | $2,301,935 |
| 2010 | May | $19,315,688 | $19,057,670 | 57% | $11,009,942 | $10,862,872 | 3.83 | 19.90% | 100% | $2,190,978 | $2,161,712 |
| 2010 | June | $23,649,529 | $22,713,927 | 57% | $13,480,232 | $12,946,938 | 3.99 | 20.30% | 100% | $2,736,487 | $2,628,228 |
| Gross Totals: | | $1,538,156,206 | $1,456,318,752 | | $876,749,037 | $830,101,689 | | | | $170,492,468 | $161,447,869 |

**EXHIBIT E - 2**

Exhibit E-2: Reference

To derive what in my opinion is the maximum amount of OD Fee revenue generated by FTB as a result of its re-sequencing practice, the following calculations were made.

For each month from October 2004 to June 2010, the Consumer Overdraft Item Fees (Item Dollars) received by FTB in that month (Column C) and the Consumer Overdraft Item Fees plus Daily Fees net of waivers, reversals and charge offs (Consumer Net Fees: Column D) were multiplied by 57% (Column E), to reflect that approximately 57% of OD Fees were generated by Debit Card and ATM Transactions. Columns F and G respectively contain the product of this calculation.

Column H contains the data from FTB as to the average number of OD Fees incurred by all accounts with at least one OD Fee that month. However, since Exhibit E-2 assumes those charges were spread over two days, the figure in Column H is halved. The result of this computation is shown in Column I. Reading this halved number of OD Fee transactions from Column I across the graph in Exhibit D results in the mismatch probability shown in Column J.

To calculate the variance amount, which represents the amount of OD Fees FTB earned as a result of re-sequencing, the total amount of electronic Item Dollars (Column F) is multiplied by the estimated mismatch probability (Column J) and the percentage of the month covered by the settlement agreement (Column K).

A similar calculation is performed using the electronic Consumer Net Fees (Column G) instead of the total amount of electronic Item Dollars (Column F) in order to more accurately reflect reductions for waivers, reversals and charge offs. Columns L and M represent the results of those calculations. Column M has been utilized in my analysis because, in my opinion, this value constituted the best available data on the net assessment of OD Fees on accountholders.

Totals for Column M are shown on page three. However, the total shown at the bottom of Column M represents only one half of the estimated amount of Excess OD Fees. Because the average number of OD Fee transactions was divided between two days, this total must then be doubled to arrive at the complete two-day total for Excess OD Fees.

Also shown at the bottom of page three is the sum of Column M for 2009 only. This total is then doubled for the same reason as above, and that value is used in the Present Value computation in Exhibit F.

**Exhibit E-2: Excess OD Fee Revenue Model**
*Estimated Maximum Revenue Generated from Debit Card and ATM Transactions*
*Resulting from Re-sequencing vs. Chronological Processing*
*Assuming the Average Number of Fees Assessed per Month are Evenly Divided Between Two Days*

| A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Electronic Fees | | Average # of Fees/Acct | | | | Variance Amount | |
| | | FTB Data | FTB Data | FTB Data | (E * C) | (E * D) | FTB Data | (H * 0.5) | Estimated | Percentage | (F * J * K) | (G * J * K) |
| | | Item Dollars | Consumer Net | Elec. | Derived from | Derived from | w/OD Fees | 50% of | Mismatch | of the | On Item | On Consumer |
| Year | Month | OD Fees Only | Fees - GL | Chg. % | Item Dollars | Consumer Net | Per Month | Average (2 days) | Probability From Graph | Month Fraction of Month | Dollars | Net |
| 2004 | Oct. | $16,000,000 | $14,000,000 | 57% | $9,120,000 | $7,980,000 | 3.40 | 1.70 | 6.90% | 35% | $220,248 | $192,717 |
| 2004 | Nov. | $16,000,000 | $14,000,000 | 57% | $9,120,000 | $7,980,000 | 3.40 | 1.70 | 6.90% | 100% | $629,280 | $550,620 |
| 2004 | Dec. | $16,000,000 | $14,000,000 | 57% | $9,120,000 | $7,980,000 | 3.40 | 1.70 | 6.90% | 100% | $629,280 | $550,620 |
| 2005 | Jan. | $15,471,983 | $17,155,025 | 57% | $8,819,030 | $9,778,364 | 3.22 | 1.61 | 6.10% | 100% | $537,961 | $596,480 |
| 2005 | Feb. | $14,298,100 | $15,268,767 | 57% | $8,149,917 | $8,703,197 | 3.18 | 1.59 | 6.00% | 100% | $488,995 | $522,192 |
| 2005 | Mar. | $17,483,703 | $19,308,838 | 57% | $9,965,711 | $11,006,038 | 3.41 | 1.71 | 7.10% | 100% | $707,565 | $781,429 |
| 2005 | Apr. | $17,103,060 | $18,072,837 | 57% | $9,748,744 | $10,301,517 | 3.35 | 1.68 | 6.70% | 100% | $653,166 | $690,202 |
| 2005 | May | $18,122,970 | $19,150,449 | 57% | $10,330,093 | $10,915,756 | 3.46 | 1.73 | 7.30% | 100% | $754,097 | $796,850 |
| 2005 | June | $23,585,621 | $22,604,802 | 57% | $13,443,804 | $12,884,737 | 3.65 | 1.83 | 8.20% | 100% | $1,102,392 | $1,056,548 |
| 2005 | July | $21,506,869 | $20,112,329 | 57% | $12,258,915 | $11,464,028 | 3.49 | 1.75 | 7.50% | 100% | $919,419 | $859,802 |
| 2005 | Aug. | $23,606,923 | $21,918,905 | 57% | $13,455,946 | $12,493,776 | 3.59 | 1.80 | 8.10% | 100% | $1,089,932 | $1,011,996 |
| 2005 | Sep. | $22,898,561 | $21,351,857 | 57% | $13,052,180 | $12,170,558 | 3.53 | 1.77 | 7.60% | 100% | $991,966 | $924,962 |
| 2005 | Oct. | $21,806,103 | $20,221,857 | 57% | $12,429,479 | $11,526,458 | 3.50 | 1.75 | 7.50% | 100% | $932,211 | $864,485 |
| 2005 | Nov. | $21,996,380 | $20,094,264 | 57% | $12,537,937 | $11,453,730 | 3.50 | 1.75 | 7.50% | 100% | $940,345 | $859,030 |
| 2005 | Dec. | $22,995,786 | $20,642,376 | 57% | $13,107,598 | $11,766,154 | 3.49 | 1.75 | 7.50% | 100% | $983,070 | $882,461 |
| 2006 | Jan. | $21,186,295 | $19,902,697 | 57% | $12,076,188 | $11,344,537 | 3.43 | 1.72 | 7.20% | 100% | $869,486 | $816,800 |
| 2006 | Feb. | $17,193,920 | $15,546,166 | 57% | $9,800,534 | $8,861,315 | 3.19 | 1.60 | 6.00% | 100% | $588,032 | $531,679 |
| 2006 | Mar. | $19,399,177 | $18,387,407 | 57% | $11,057,531 | $10,480,822 | 3.29 | 1.65 | 6.40% | 100% | $707,682 | $670,773 |
| 2006 | Apr. | $18,358,363 | $17,612,760 | 57% | $10,464,267 | $10,039,273 | 3.28 | 1.64 | 6.30% | 100% | $659,249 | $632,474 |
| 2006 | May | $22,489,280 | $21,691,753 | 57% | $12,818,890 | $12,364,299 | 3.53 | 1.77 | 7.60% | 100% | $974,236 | $939,682 |
| 2006 | June | $23,099,634 | $22,173,932 | 57% | $13,166,791 | $12,639,141 | 3.47 | 1.74 | 7.40% | 100% | $974,343 | $935,296 |
| 2006 | July | $21,229,571 | $20,343,653 | 57% | $12,100,855 | $11,595,882 | 3.38 | 1.69 | 6.80% | 100% | $822,858 | $788,520 |
| 2006 | Aug. | $24,067,235 | $22,390,693 | 57% | $13,718,324 | $12,762,695 | 3.49 | 1.75 | 7.50% | 100% | $1,028,874 | $957,202 |
| 2006 | Sep. | $20,954,061 | $20,006,902 | 57% | $11,943,815 | $11,403,946 | 3.34 | 1.67 | 6.60% | 100% | $788,292 | $752,660 |
| 2006 | Oct. | $21,180,902 | $20,151,992 | 57% | $12,073,114 | $11,486,635 | 3.40 | 1.70 | 6.90% | 100% | $833,045 | $792,578 |
| 2006 | Nov. | $18,527,157 | $17,660,460 | 57% | $10,560,479 | $10,066,462 | 3.19 | 1.60 | 6.00% | 100% | $633,629 | $603,988 |
| 2006 | Dec. | $18,126,019 | $16,093,321 | 57% | $10,331,831 | $9,173,193 | 3.12 | 1.56 | 5.60% | 100% | $578,583 | $513,699 |

**Exhibit E-2: Excess OD Fee Revenue Model (page 2)**
**(Average number of fees assessed per month divided between two days.)**

| A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | FTB Data | FTB Data | FTB Data | (E * C) | (E * D) | FTB Data | (H * 0.5) (2 days) | From Graph | Fraction of Month | (F * J * K) | (G * J * K) |
| | | | | | Electronic Fees | | Average # of Fees/Acct w/OD Fees Per Month | | | | Variance Amount | |
| | | Item Dollars OD Fees Only | Consumer Net Fees - GL | Electronic Charge % | Derived from Item Dollars | Derived from Consumer Net | | 50% of Average | Estimated Mismatch Probability | Percentage of the Month | On Item Dollars | On Consumer Net |
| Year | Month | | | | | | | | | | | |
| 2007 | Jan. | $21,376,888 | $20,218,813 | 57% | $12,184,826 | $11,524,723 | 3.42 | 1.71 | 7.10% | 100% | $865,123 | $818,255 |
| 2007 | Feb. | $17,092,915 | $16,025,241 | 57% | $9,742,962 | $9,134,387 | 3.18 | 1.59 | 6.00% | 100% | $584,578 | $548,063 |
| 2007 | Mar. | $19,128,738 | $18,568,971 | 57% | $10,903,381 | $10,584,313 | 3.31 | 1.66 | 6.50% | 100% | $708,720 | $687,980 |
| 2007 | Apr. | $18,674,711 | $18,479,463 | 57% | $10,644,585 | $10,533,294 | 3.35 | 1.68 | 6.70% | 100% | $713,187 | $705,731 |
| 2007 | May | $25,465,986 | $24,743,387 | 57% | $14,517,892 | $14,103,731 | 3.79 | 1.90 | 9.00% | 100% | $1,306,610 | $1,269,336 |
| 2007 | June | $23,799,434 | $23,277,820 | 57% | $13,565,677 | $13,268,357 | 3.61 | 1.81 | 8.10% | 100% | $1,098,820 | $1,074,737 |
| 2007 | July | $25,370,292 | $23,740,673 | 57% | $14,461,066 | $13,532,184 | 3.77 | 1.89 | 9.00% | 100% | $1,301,496 | $1,217,897 |
| 2007 | Aug. | $28,482,022 | $26,290,525 | 57% | $16,234,753 | $14,985,599 | 3.83 | 1.92 | 9.20% | 100% | $1,493,597 | $1,378,675 |
| 2007 | Sep. | $25,253,197 | $23,516,099 | 57% | $14,394,322 | $13,404,176 | 3.78 | 1.89 | 9.00% | 100% | $1,295,489 | $1,206,376 |
| 2007 | Oct. | $28,824,566 | $26,499,444 | 57% | $16,430,003 | $15,104,683 | 3.98 | 1.99 | 9.90% | 100% | $1,626,570 | $1,495,364 |
| 2007 | Nov. | $27,069,595 | $25,211,085 | 57% | $15,429,669 | $14,370,318 | 3.80 | 1.90 | 9.00% | 100% | $1,388,670 | $1,293,329 |
| 2007 | Dec. | $26,442,366 | $24,077,699 | 57% | $15,072,149 | $13,724,288 | 3.84 | 1.92 | 9.20% | 100% | $1,386,638 | $1,262,634 |
| 2008 | Jan. | $26,750,531 | $24,719,840 | 57% | $15,247,803 | $14,090,309 | 4.16 | 2.08 | 10.70% | 100% | $1,631,515 | $1,507,661 |
| 2008 | Feb. | $21,031,216 | $19,125,845 | 57% | $11,987,793 | $10,901,732 | 3.85 | 1.93 | 9.30% | 100% | $1,114,865 | $1,013,861 |
| 2008 | Mar. | $20,236,041 | $19,285,606 | 57% | $11,534,543 | $10,992,795 | 3.86 | 1.93 | 9.30% | 100% | $1,072,713 | $1,022,330 |
| 2008 | Apr. | $24,781,597 | $23,376,768 | 57% | $14,125,510 | $13,324,758 | 4.10 | 2.05 | 10.50% | 100% | $1,483,179 | $1,399,100 |
| 2008 | May | $24,727,533 | $23,500,671 | 57% | $14,094,694 | $13,395,382 | 4.08 | 2.04 | 10.20% | 100% | $1,437,659 | $1,366,320 |
| 2008 | June | $26,225,279 | $25,608,606 | 57% | $14,948,409 | $14,596,905 | 4.08 | 2.04 | 10.20% | 100% | $1,524,738 | $1,488,884 |
| 2008 | July | $29,921,285 | $27,506,521 | 57% | $17,055,132 | $15,678,717 | 4.24 | 2.12 | 11.20% | 100% | $1,910,175 | $1,756,016 |
| 2008 | Aug. | $27,737,103 | $25,634,296 | 57% | $15,810,149 | $14,611,549 | 3.98 | 1.99 | 9.90% | 100% | $1,565,205 | $1,446,543 |
| 2008 | Sep. | $30,479,796 | $27,629,586 | 57% | $17,373,484 | $15,748,864 | 4.15 | 2.08 | 10.70% | 100% | $1,858,963 | $1,685,128 |
| 2008 | Oct. | $29,518,939 | $26,698,813 | 57% | $16,825,795 | $15,218,323 | 3.99 | 2.00 | 10.00% | 100% | $1,682,580 | $1,521,832 |
| 2008 | Nov. | $21,587,850 | $19,100,218 | 57% | $12,305,075 | $10,887,124 | 3.65 | 1.83 | 8.20% | 100% | $1,009,016 | $892,740 |
| 2008 | Dec. | $27,144,719 | $24,210,947 | 57% | $15,472,490 | $13,800,240 | 3.93 | 1.97 | 9.60% | 100% | $1,485,359 | $1,324,823 |

**Exhibit E-2: Excess OD Fee Revenue Model (page 3)**
(Average number of fees assessed per month divided between two days.)

| A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | FTB Data | FTB Data | FTB Data | (E * C) | (E * D) | FTB Data | (H * 0.5) | Estimated | Fraction of Month | (F * J * K) | (G * J * K) |
| | | | | Electronic Fees | | | Average # of Fees/Acct | | | | Variance Amount | |
| Year | Month | Item Dollars OD Fees Only | Consumer Net Fees - GL | Electronic Charge % | Derived from Item Dollars | Derived from Consumer Net | w/OD Fees Per Month | 50% of Average (2 days) | Mismatch Probability From Graph | Percentage of the Month | On Item Dollars | On Consumer Net |
| 2009 | Jan. | $23,550,567 | $22,316,884 | 57% | $13,423,823 | $12,720,624 | 3.69 | 1.85 | 8.40% | 100% | $1,127,601 | $1,068,532 |
| 2009 | Feb. | $19,276,853 | $17,522,002 | 57% | $10,987,806 | $9,987,541 | 3.58 | 1.79 | 8.00% | 100% | $879,024 | $799,003 |
| 2009 | Mar. | $20,763,860 | $19,550,953 | 57% | $11,835,400 | $11,144,043 | 3.69 | 1.85 | 8.40% | 100% | $994,174 | $936,101 |
| 2009 | Apr. | $22,502,323 | $22,724,838 | 57% | $12,826,324 | $12,953,158 | 3.73 | 1.87 | 8.60% | 100% | $1,103,064 | $1,113,972 |
| 2009 | May | $23,902,794 | $24,394,491 | 57% | $13,624,593 | $13,904,860 | 3.83 | 1.92 | 9.20% | 100% | $1,253,463 | $1,279,247 |
| 2009 | June | $26,524,362 | $25,579,638 | 57% | $15,118,886 | $14,580,394 | 3.96 | 1.98 | 9.70% | 100% | $1,466,532 | $1,414,298 |
| 2009 | July | $25,440,312 | $24,486,533 | 57% | $14,500,978 | $13,957,324 | 3.77 | 1.89 | 9.00% | 100% | $1,305,088 | $1,256,159 |
| 2009 | Aug. | $24,328,801 | $23,489,963 | 57% | $13,867,417 | $13,389,279 | 3.77 | 1.89 | 9.00% | 100% | $1,248,067 | $1,205,035 |
| 2009 | Sep. | $26,608,217 | $24,920,336 | 57% | $15,166,684 | $14,204,592 | 3.93 | 1.97 | 9.60% | 100% | $1,456,002 | $1,363,641 |
| 2009 | Oct. | $25,367,728 | $23,805,958 | 57% | $14,459,605 | $13,569,396 | 3.80 | 1.90 | 9.00% | 100% | $1,301,364 | $1,221,246 |
| 2009 | Nov. | $21,294,732 | $19,937,199 | 57% | $12,137,997 | $11,364,203 | 3.83 | 1.92 | 9.20% | 100% | $1,116,696 | $1,045,502 |
| 2009 | Dec. | $25,860,752 | $23,820,407 | 57% | $14,740,629 | $13,577,632 | 4.12 | 2.06 | 10.50% | 100% | $1,547,766 | $1,425,655 |
| 2010 | Jan. | $21,065,936 | $20,092,382 | 57% | $12,007,584 | $11,452,658 | 3.81 | 1.91 | 9.10% | 100% | $1,092,690 | $1,042,191 |
| 2010 | Feb. | $17,005,889 | $15,580,110 | 57% | $9,693,357 | $8,880,663 | 3.63 | 1.82 | 8.20% | 100% | $794,855 | $728,211 |
| 2010 | Mar. | $19,712,848 | $19,120,576 | 57% | $11,236,323 | $10,898,728 | 3.86 | 1.93 | 9.30% | 100% | $1,044,978 | $1,013,583 |
| 2010 | Apr. | $20,170,743 | $20,293,886 | 57% | $11,497,324 | $11,567,515 | 3.79 | 1.90 | 9.00% | 100% | $1,034,759 | $1,041,076 |
| 2010 | May | $19,315,688 | $19,057,670 | 57% | $11,009,942 | $10,862,872 | 3.83 | 1.92 | 9.20% | 100% | $1,012,915 | $999,388 |
| 2010 | June | $23,649,529 | $22,713,927 | 57% | $13,480,232 | $12,946,938 | 3.99 | 2.00 | 10.00% | 100% | $1,348,023 | $1,294,699 |
| Total: | | $1,538,156,206 | $1,456,318,752 | | $876,749,037 | $830,101,689 | | | | | $73,710,756 | $69,706,927 |

Two day Total (Multiplied by two to adjust for the month the model assumption that the aggregate total reflects only one of two days)   $147,421,512   $139,413,848

Sum of 2009 only:   $14,128,393
2009 total multiplied by two:   $28,256,782

**EXHIBIT E - 3**

Exhibit E-3: Reference

To derive what in my opinion is the maximum amount of OD Fee revenue generated by FTB as a result of its re-sequencing practice, the following calculations were made.

For each month from October 2004 to June 2010, the Consumer Overdraft Item Fees (Item Dollars) received by FTB in that month (Column C) and the Consumer Overdraft Item Fees plus Daily Fees net of waivers, reversals and charge offs (Consumer Net Fees: Column D) were multiplied by 57% (Column E), to reflect that approximately 57% of OD Fees were generated by Debit Card and ATM Transactions. Columns F and G respectively contain the product of this calculation.

Column H contains the data from FTB as to the average number of OD Fees incurred by all accounts with at least one OD Fee that month. However, since Exhibit E-3 assumes those charges were spread over three days, the figure in Column H is divided by three. The result of this computation is shown in Column I. Reading this resultant number of OD Fee transactions from Column I across the graph in Exhibit D results in the mismatch probability shown in Column J.

To calculate the variance amount, which represents the amount of OD Fees FTB earned as a result of re-sequencing, the total amount of electronic Item Dollars (Column F) is multiplied by the estimated mismatch probability (Column J) and the percentage of the month covered by the settlement agreement (Column K).

A similar calculation is performed using the electronic Consumer Net Fees (Column G) instead of the total amount of electronic Item Dollars (Column F) in order to more accurately reflect reductions for waivers, reversals and charge offs. Columns L and M represent the results of those calculations. Column M has been utilized in my analysis because, in my opinion, this value constituted the best available data on the net assessment of OD Fees on accountholders.

Totals for Column M are shown on page three. However, the total shown at the bottom of Column M represents only one third of the estimated amount of Excess OD Fees. Because the average number of OD Fee transactions was divided between three days, this total must then be tripled to arrive at the complete three-day total for Excess OD Fees.

Also shown at the bottom of page three is the sum of Column M for 2009 only. This total is then tripled for the same reason as above, and that value is used in the Present Value computation in Exhibit F.

**Exhibit E-3: Excess OD Fee Revenue Model**
*Estimated Maximum Revenue Generated from Debit Card and ATM Transactions*
*Resulting from Re-sequencing vs. Chronological Processing*
**Assuming the Average Number of Fees Assessed per Month are Evenly Divided Over Three Days**

| A B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | FTB Data | FTB Data | FTB Data | Electronic Fees | Electronic Fees | Average # of Fees/Acct | | | | Variance Amount | Variance Amount |
| Year Month | Item Dollars OD Fees Only | Consumer Net Fees - GL | Electronic Charge % | (E * C) Derived from Item Dollars | (E * D) Derived from Consumer Net | FTB Data w/OD Fees Per Month | (H / 3) (3 days) 33% of Average | Estimated Mismatch Probability From Graph | Estimated Percentage of the Month Fractiuon of Month | (F * J * K) On Item Dollars | (G * J * K) On Consumer Net |
| 2004 Oct. | $16,000,000 | $14,000,000 | 57% | $9,120,000 | $7,980,000 | 3.40 | 1.13 | 1.30% | 35% | $41,496 | $36,305 |
| 2004 Nov. | $16,000,000 | $14,000,000 | 57% | $9,120,000 | $7,980,000 | 3.40 | 1.13 | 1.30% | 100% | $118,560 | $103,740 |
| 2004 Dec. | $16,000,000 | $14,000,000 | 57% | $9,120,000 | $7,980,000 | 3.40 | 1.13 | 1.30% | 100% | $118,560 | $103,740 |
| 2005 Jan. | $15,471,983 | $17,155,025 | 57% | $8,819,030 | $9,778,364 | 3.22 | 1.07 | 0.80% | 100% | $70,552 | $78,227 |
| 2005 Feb. | $14,298,100 | $15,268,767 | 57% | $8,149,917 | $8,703,197 | 3.18 | 1.06 | 0.70% | 100% | $57,049 | $60,922 |
| 2005 Mar. | $17,483,703 | $19,308,838 | 57% | $9,965,711 | $11,006,038 | 3.41 | 1.14 | 1.40% | 100% | $139,520 | $154,084 |
| 2005 Apr. | $17,103,060 | $18,072,837 | 57% | $9,748,744 | $10,301,517 | 3.35 | 1.12 | 1.20% | 100% | $116,985 | $123,618 |
| 2005 May | $18,122,970 | $19,150,449 | 57% | $10,330,093 | $10,915,756 | 3.46 | 1.15 | 1.50% | 100% | $154,951 | $163,736 |
| 2005 June | $23,585,621 | $22,604,802 | 57% | $13,443,804 | $12,884,737 | 3.65 | 1.22 | 2.20% | 100% | $295,764 | $283,464 |
| 2005 July | $21,506,869 | $20,112,329 | 57% | $12,258,915 | $11,464,028 | 3.49 | 1.16 | 1.60% | 100% | $196,143 | $183,424 |
| 2005 Aug. | $23,606,923 | $21,918,905 | 57% | $13,455,946 | $12,493,776 | 3.59 | 1.20 | 2.00% | 100% | $269,119 | $249,876 |
| 2005 Sep. | $22,898,561 | $21,351,857 | 57% | $13,052,180 | $12,170,558 | 3.53 | 1.18 | 1.70% | 100% | $221,887 | $206,899 |
| 2005 Oct. | $21,806,103 | $20,221,857 | 57% | $12,429,479 | $11,526,458 | 3.50 | 1.17 | 1.60% | 100% | $198,872 | $184,420 |
| 2005 Nov. | $21,996,380 | $20,094,264 | 57% | $12,537,937 | $11,453,730 | 3.50 | 1.17 | 1.60% | 100% | $200,607 | $183,260 |
| 2005 Dec. | $22,995,786 | $20,642,376 | 57% | $13,107,598 | $11,766,154 | 3.49 | 1.16 | 1.60% | 100% | $209,722 | $188,258 |
| 2006 Jan. | $21,186,295 | $19,902,697 | 57% | $12,076,188 | $11,344,537 | 3.43 | 1.14 | 1.40% | 100% | $169,067 | $158,810 |
| 2006 Feb. | $17,193,920 | $15,546,166 | 57% | $9,800,534 | $8,861,315 | 3.19 | 1.06 | 0.70% | 100% | $68,604 | $62,029 |
| 2006 Mar. | $19,399,177 | $18,387,407 | 57% | $11,057,531 | $10,480,822 | 3.29 | 1.10 | 1.00% | 100% | $110,575 | $104,808 |
| 2006 Apr. | $18,358,363 | $17,612,760 | 57% | $10,464,267 | $10,039,273 | 3.28 | 1.09 | 0.90% | 100% | $94,178 | $90,353 |
| 2006 May | $22,489,280 | $21,691,753 | 57% | $12,818,890 | $12,364,299 | 3.53 | 1.18 | 1.70% | 100% | $217,921 | $210,193 |
| 2006 June | $23,099,634 | $22,173,932 | 57% | $13,166,791 | $12,639,141 | 3.47 | 1.16 | 1.60% | 100% | $210,669 | $202,226 |
| 2006 July | $21,229,571 | $20,343,653 | 57% | $12,100,855 | $11,595,882 | 3.38 | 1.13 | 1.30% | 100% | $157,311 | $150,747 |
| 2006 Aug. | $24,067,235 | $22,390,693 | 57% | $13,718,324 | $12,762,695 | 3.49 | 1.16 | 1.60% | 100% | $219,493 | $204,203 |
| 2006 Sep. | $20,954,061 | $20,006,922 | 57% | $11,943,815 | $11,403,946 | 3.34 | 1.11 | 1.10% | 100% | $131,382 | $125,443 |
| 2006 Oct. | $21,180,902 | $20,151,992 | 57% | $12,073,114 | $11,486,635 | 3.40 | 1.13 | 1.30% | 100% | $156,950 | $149,326 |
| 2006 Nov. | $18,527,157 | $17,660,460 | 57% | $10,560,479 | $10,066,462 | 3.19 | 1.06 | 0.70% | 100% | $73,923 | $70,465 |
| 2006 Dec. | $18,126,019 | $16,093,321 | 57% | $10,331,831 | $9,173,193 | 3.12 | 1.04 | 0.40% | 100% | $41,327 | $36,693 |

**Exhibit E-3: Excess OD Fee Revenue Model (page 2)**
**(Average number of fees assessed per month divided over three days)**

| A B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | FTB Data | FTB Data | FTB Data | (E * C) | (E * D) | FTB Data | (H / 3) (3 days) | From Graph | Fractuion of Month | (F * J * K) | (G * J * K) |
| | | | | Electronic Fees | | Average # of Fees/Acct | | | | Variance Amount | |
| | Item Dollars OD Fees Only | Consumer Net Fees - GL | Electronic Charge % | Derived from Item Dollars | Derived from Consumer Net | w/OD Fees Per Month | 33% of Average | Estimated Mismatch Probability | Estimated Percentage of the Month | On Item Dollars | On Consumer Net |
| Year Month | | | | | | | | | | | |
| 2007 Jan. | $21,376,888 | $20,218,813 | 57% | $12,184,826 | $11,524,723 | 3.42 | 1.14 | 1.40% | 100% | $170,588 | $161,34 |
| 2007 Feb. | $17,092,915 | $16,025,241 | 57% | $9,742,962 | $9,134,387 | 3.18 | 1.06 | 0.70% | 100% | $68,201 | $63,94 |
| 2007 Mar. | $19,128,738 | $18,568,971 | 57% | $10,903,381 | $10,584,313 | 3.31 | 1.10 | 1.00% | 100% | $109,034 | $105,84 |
| 2007 Apr. | $18,674,711 | $18,479,463 | 57% | $10,644,585 | $10,533,294 | 3.35 | 1.12 | 1.20% | 100% | $127,735 | $126,40 |
| 2007 May | $25,469,986 | $24,743,387 | 57% | $14,517,892 | $14,103,731 | 3.79 | 1.26 | 2.50% | 100% | $362,947 | $352,59 |
| 2007 June | $23,799,434 | $23,277,820 | 57% | $13,565,677 | $13,268,357 | 3.61 | 1.20 | 2.00% | 100% | $271,314 | $265,36 |
| 2007 July | $25,370,292 | $23,740,673 | 57% | $14,461,066 | $13,532,184 | 3.77 | 1.26 | 2.50% | 100% | $361,527 | $338,30 |
| 2007 Aug. | $28,482,022 | $26,290,525 | 57% | $16,234,753 | $14,985,599 | 3.83 | 1.28 | 2.70% | 100% | $438,338 | $404,61 |
| 2007 Sep. | $25,253,197 | $23,516,099 | 57% | $14,394,322 | $13,404,176 | 3.78 | 1.26 | 2.50% | 100% | $359,858 | $335,10 |
| 2007 Oct. | $28,824,566 | $26,499,444 | 57% | $16,430,003 | $15,104,683 | 3.98 | 1.33 | 3.20% | 100% | $525,760 | $463,35 |
| 2007 Nov. | $27,069,595 | $25,211,085 | 57% | $15,429,669 | $14,370,318 | 3.80 | 1.27 | 2.60% | 100% | $401,171 | $373,62 |
| 2007 Dec. | $26,442,366 | $24,077,699 | 57% | $15,072,149 | $13,724,288 | 3.84 | 1.28 | 2.70% | 100% | $406,948 | $370,55 |
| 2008 Jan. | $26,750,531 | $24,719,840 | 57% | $15,247,803 | $14,090,309 | 4.16 | 1.39 | 3.90% | 100% | $594,664 | $549,52 |
| 2008 Feb. | $21,031,216 | $19,125,845 | 57% | $11,987,793 | $10,901,732 | 3.85 | 1.28 | 2.70% | 100% | $323,670 | $294,34 |
| 2008 Mar. | $20,236,041 | $19,285,606 | 57% | $11,534,543 | $10,992,795 | 3.86 | 1.29 | 2.80% | 100% | $322,967 | $307,79 |
| 2008 Apr. | $24,781,597 | $23,376,768 | 57% | $14,125,510 | $13,324,758 | 4.10 | 1.37 | 3.60% | 100% | $508,518 | $479,69 |
| 2008 May | $24,727,533 | $23,500,671 | 57% | $14,094,694 | $13,395,382 | 4.08 | 1.36 | 3.50% | 100% | $493,314 | $468,83 |
| 2008 June | $26,225,279 | $25,608,606 | 57% | $14,948,409 | $14,596,905 | 4.08 | 1.36 | 3.50% | 100% | $523,194 | $510,89 |
| 2008 July | $29,921,285 | $27,506,521 | 57% | $17,055,132 | $15,678,717 | 4.24 | 1.41 | 4.00% | 100% | $682,205 | $627,14 |
| 2008 Aug. | $27,737,103 | $25,634,296 | 57% | $15,810,149 | $14,611,549 | 3.98 | 1.33 | 3.20% | 100% | $505,925 | $467,57 |
| 2008 Sep. | $30,479,796 | $27,629,586 | 57% | $17,373,484 | $15,748,864 | 4.15 | 1.38 | 3.80% | 100% | $660,192 | $598,45 |
| 2008 Oct. | $29,518,939 | $26,698,813 | 57% | $16,825,795 | $15,218,323 | 3.99 | 1.33 | 3.20% | 100% | $538,425 | $486,98 |
| 2008 Nov. | $21,587,850 | $19,100,218 | 57% | $12,305,075 | $10,887,124 | 3.65 | 1.22 | 2.20% | 100% | $270,712 | $239,5 |
| 2008 Dec. | $27,144,719 | $24,210,947 | 57% | $15,472,490 | $13,800,240 | 3.93 | 1.31 | 3.10% | 100% | $479,647 | $427,80 |

**Exhibit E-3: Excess OD Fee Revenue Model (page 3)**
**(Average number of fees assessed per month divided over three days)**

| | | | | Electronic Fees | | Average # of Fees/Acct | | Estimated | Estimated | Variance Amount | |
| Year Month | C FTB Data Item Dollars OD Fees Only | D FTB Data Consumer Net Fees - GL | E FTB Data Electronic Charge % | F (E * C) Derived from Item Dollars | G (E * D) Derived from Consumer Net | H FTB Data w/OD Fees Per Month | I (H / 3) 33% of Average (3 days) | J From Graph Mismatch Probability | K Fraction of Month Percentage of the Month | L (F * J * K) On Item Dollars | M (G * J * K) On Consumer Net |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2009 Jan. | $23,550,567 | $22,316,884 | 57% | $13,423,823 | $12,720,624 | 3.69 | 1.23 | 2.30% | 100% | $308,748 | $292,574 |
| 2009 Feb. | $19,276,853 | $17,522,002 | 57% | $10,987,806 | $9,987,541 | 3.58 | 1.19 | 1.90% | 100% | $208,768 | $189,763 |
| 2009 Mar. | $20,763,860 | $19,550,953 | 57% | $11,835,400 | $11,144,043 | 3.69 | 1.23 | 2.30% | 100% | $272,214 | $256,313 |
| 2009 Apr. | $22,502,323 | $22,724,838 | 57% | $12,826,324 | $12,953,158 | 3.73 | 1.24 | 2.40% | 100% | $307,832 | $310,876 |
| 2009 May | $23,902,794 | $24,394,491 | 57% | $13,624,593 | $13,904,860 | 3.83 | 1.28 | 2.70% | 100% | $367,864 | $375,431 |
| 2009 June | $26,524,362 | $25,579,638 | 57% | $15,118,886 | $14,580,394 | 3.96 | 1.32 | 3.10% | 100% | $468,685 | $451,992 |
| 2009 July | $25,440,312 | $24,486,533 | 57% | $14,500,978 | $13,957,324 | 3.77 | 1.26 | 2.50% | 100% | $362,524 | $348,933 |
| 2009 Aug. | $24,328,801 | $23,489,963 | 57% | $13,867,417 | $13,389,279 | 3.77 | 1.26 | 2.50% | 100% | $346,685 | $334,732 |
| 2009 Sep. | $26,608,217 | $24,920,336 | 57% | $15,166,684 | $14,204,592 | 3.93 | 1.31 | 3.10% | 100% | $470,167 | $440,342 |
| 2009 Oct. | $25,367,728 | $23,805,958 | 57% | $14,459,605 | $13,569,396 | 3.80 | 1.27 | 2.60% | 100% | $375,950 | $352,804 |
| 2009 Nov. | $21,294,732 | $19,937,199 | 57% | $12,137,997 | $11,364,203 | 3.83 | 1.28 | 2.70% | 100% | $327,726 | $306,833 |
| 2009 Dec. | $25,860,752 | $23,820,407 | 57% | $14,740,629 | $13,577,632 | 4.12 | 1.37 | 3.60% | 100% | $530,563 | $488,795 |
| 2010 Jan. | $21,065,936 | $20,092,382 | 57% | $12,007,584 | $11,452,658 | 3.81 | 1.27 | 2.60% | 100% | $312,197 | $297,769 |
| 2010 Feb. | $17,005,889 | $15,580,110 | 57% | $9,693,357 | $8,880,663 | 3.63 | 1.21 | 2.00% | 100% | $193,867 | $177,613 |
| 2010 Mar. | $19,712,848 | $19,120,576 | 57% | $11,236,323 | $10,898,728 | 3.86 | 1.29 | 2.80% | 100% | $314,617 | $305,164 |
| 2010 Apr. | $20,293,886 | $20,293,886 | 57% | $11,497,324 | $11,567,515 | 3.79 | 1.26 | 2.50% | 100% | $287,433 | $289,188 |
| 2010 May | $19,315,688 | $19,009,942 | 57% | $11,009,942 | $10,862,872 | 3.83 | 1.28 | 2.70% | 100% | $297,268 | $293,298 |
| 2010 June | $23,649,529 | $22,713,927 | 57% | $13,480,232 | $12,946,938 | 3.99 | 1.33 | 3.20% | 100% | $431,367 | $414,301 |
| Total: | $1,538,156,206 | $1,456,318,752 | | $876,749,037 | $830,101,689 | | | | | $19,752,621 | $18,635,636 |
| Three Day Total: | (Multiplied by three to adjust for the month the model assumption that the agregate total reflects only one of three day) | | | | | | | | | $59,257,864 | $55,906,907 |

Sum of 2009 only:
  2009 total multiplied by three:  $4,149,390   $12,448,169

**EXHIBIT F**

# Exhibit F – Excess OD Fee Accountholder Savings – Present Value Computation

Fifth Third Bank
Present Value Calculation for the Implementation of the Settlement Agreement
Savings Generated by the Elimination of Excess Overdraft Fees

## Part I: Impact of Regulation E

| | Item $ Fees Posted by FTB (line 2) | | | | Percentage |
|---|---|---|---|---|---|
| | 2009 prior to Reg E | 2010 after Reg E | | Variance | Variance |
| September | $26,608,217 | $15,973,177 | | $10,635,040 | 39.97% |
| October | $25,367,728 | $15,157,688 | | $10,210,040 | 40.25% |
| November | $21,294,732 | $15,712,358 | | $5,582,374 | 26.21% |
| Total | $73,270,677 | $46,843,223 | | $26,427,454 | **36.07%** |

## Part II: Estimate of Annual Reduction in Revenue from Implementation of the Settlement

| | | |
|---|---|---|
| Variance on Consumer Net Fees with the Average Number of Fees over Two Days: 2009 only | | $28,256,782 |
| Variance on Consumer Net Fees with the Average Number of Fees over Three Days: 2009 only | | $12,448,169 |
| | | $40,704,951 |
| Average | | $20,352,476 |
| Adjusted for Reg E (multiplied by 64%) | | $13,025,584.32 |

## Part III: Present Value of the reduction in OD fees (net Reg E)

| Variables | | |
|---|---|---|
| Annual reduction in fees | $13,025,584.32 | $13,025,584.32 |
| Discount rate | 3.50% | 3.50% |
| **Discount period (in years)** | **5** | **10** |
| | $58,811,195.43 | $108,328,643.89 |

**Present Value:**