UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHANNON SCHULTE, on behalf of herself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. 1:09-CV-06655<br>) |
| -v- | )<br>) The Honorable Robert M. Dow, Jr. |
| FIFTH THIRD BANK, | )<br>) |
| Defendant. | )<br>) |

### THE SETTLING PARTIES' JOINT RESPONSE TO THE KEYES OBJECTORS' COUNSEL'S STATEMENT THAT IT WOULD BE IMPOSSIBLE FOR A SETTLEMENT CLASS MEMBER TO SUBMIT A CLAIM IN GOOD FAITH

NOW COME plaintiffs, Shannon Schulte and Marlene Willard ("Plaintiffs"), individually and on behalf of the Settlement Class,[1] by and through Settlement Class Counsel, and Fifth Third Bank ("Defendant"), by and through its counsel (collectively "the Settling Parties"), and in response to the Keyes Objectors' Counsel's statement that it would be impossible for a Settlement Class member to submit a claim in good faith, state as follows:

### INTRODUCTION

A Settlement Class member could submit a claim in good faith based on, *inter alia*, personal knowledge, review of an overdraft letter or account statement, conversation with a Fifth Third customer service representative, or other financial records. That Settlement Class members could file claims in good faith is supported by the fact that, to date, over 100,000 claims have been submitted and not one Settlement Class member, including those who objected to the settlement, has ever filed anything with the Court arguing that it would be impossible for them to submit a claim in good faith. Additionally, the Keyes Objectors' own filings contradict the

---

[1] All terms used in this Joint Motion have the same meaning as defined in the Settlement Agreement.

statements of their counsel at the final fairness hearing. It was possible for a Settlement Class member to submit a claim in good faith, and the Keyes Objectors' counsel's belated argument to the contrary should be rejected.

## ARGUMENT

### I. The Requirements for Submitting a Good Faith Claim were Not Stringent

Submitting a claim in good faith was not an onerous process. A Settlement Class member submitting a claim was required only to declare that the information he provided in his Claim Form was "true and correct to the best of *[his] knowledge and belief*." *See* Claim Form (italics in original), a copy of which is attached hereto as Exhibit 1. A Settlement Class member who did not have all of his records could provide, to the best of his knowledge and belief, a year in which he incurred an overdraft fee as a result of the re-sequencing of debit card transactions and their estimate of the number and amount of such charges. *Id.* And, a Settlement Class member who used his records could provide, again only to the best of his knowledge and belief, a forty-five day period during the Class Period when they incurred an overdraft fee as a result of Fifth Third's re-sequencing of debit card transactions and the number and amount of such charges. *Id.* These relaxed requirements are consistent with the guidance of the *Manual for Complex Litigation (Fourth),* which instructs:

> Completion and documentation of the claims forms should be no more burdensome than necessary. Nor, for purposes of administering a settlement, should the court require the same amount and specificity of evidence needed to establish damages at a trial; secondary forms of proof and estimates are generally acceptable. A default award may be appropriate for those who can establish membership in the class but cannot, or prefer not to, submit detailed claims. Typically, such an award would be at the low end of the range of expected claims. The parties will usually have negotiated the amount and nature of proof necessary for a class member to recover under the settlement.

Federal Judicial Center, *Manual for Complex Litigation (Fourth)* § 21.66.

## II. Settlement Class Members Could Submit Claims in Good Faith

The settlement includes a clear and informative definition of the Settlement Class, which alone (*i.e.* a person having the basis or information to fairly determine that he or she is a member of the Settlement Class) provides a good faith basis for a Settlement Class member to submit a claim in good faith. Opinion and Order of Preliminary Approval at 10 (Dow, J. Sept. 10, 2010). As detailed herein, a Settlement Class member could submit a claim in good faith, based on, *inter alia*, personal knowledge; review of an overdraft letter or account statement; a conversation with a Fifth Third customer service representative; or review of personal financial records, such as receipts or account ledgers.

### A. Personal Knowledge

A Settlement Class Member could submit a claim in good faith based solely on personal knowledge. Such knowledge could be based on, *inter alia*, the Settlement Class member's knowledge of his account activity, transactional history, and prior overdraft charges; recollection of having viewed statements and/or letters relating to his incurring overdraft fees as a result of Fifth Third's re-sequencing of debit card transactions; and/or conversations with a Fifth Third customer service representative regarding such overdraft fees. As detailed *supra*, the requirements for submitting a good faith claim were not stringent, as Settlement Class members were required to submit a claim to the best of their knowledge and belief, not with absolute certainty. Settlement Class members are not "stones" or "blank slates," as the Keyes Objector's counsel seemed to suggest at the final fairness hearing. Rather, they are real people with independent knowledge of their daily schedules and past activities, purchasing habits, and financial situations. For most, incurring overdraft fees is an irregular occurrence that can produce feelings that enhance the likelihood that a Settlement Class member would remember incurring such fees and the circumstances surrounding such. Similarly, incurring multiple overdraft

charges related to debit card transactions on one day, which would inevitably increase the likelihood that at least some of such charges were the result of re-sequencing, is not something that most people (other than perhaps a chronic overdrafter) easily forget. Thus, a Settlement Class member could submit a claim in good faith based on personal knowledge.

### B. Overdraft Letters

A Settlement Class member could also submit a good faith claim based on his review of an overdraft letter. Fifth Third mailed each of its customers a letter (hereinafter, an "Overdraft Letter") when they were charged an overdraft fee and these letters were also available online at or around noon on the day issued. *See* Affidavit of Thomas J. Kappes, Jr. ("Kappes Aff.") ¶ 7, attached hereto as Exhibit 2, and the example Overdraft Letters attached thereto as Exhibits D, E, and F. Each Overdraft Letter, *inter alia*: detailed the date of overdraft(s), amount the account was overdrawn by, and amount of overdraft charges incurred; included a summary of relevant account activity detailing the beginning balance, the amount of any deposits/credits, whether there were any unavailable funds from deposits, the pending amounts and withdrawals/debits deducted from any balance, and the ending balance; and stated "[i]f you have questions or need additional information, please call us at 1-800-972-3030." *Id.* ¶¶ 8, 9. The Overdraft Letters also included the date an item was charged or credited to a customer's account, the date each debit card transaction occurred (in the description for each charge), and detailed the order in which debit card transactions were charged to the customer's account—from highest to lowest amount. *Id.*

A Settlement Class member could use an Overdraft Letter to determine that, on a particular date, he was charged more than one overdraft fee relating to debit card transactions and that the account balance at the beginning of the date was sufficient to cover at least one debit card transaction charged on that date. The Settlement Class member could use the letter to

determine that the debit card transactions occurred on different days, and that they incurred an overdraft fee as the result of the debit card transactions being re-sequenced in non-chronological order from highest to lowest amount. The Settlement Class member could also use the Overdraft Letter to determine that at least some of the debit card transactions occurred on the same date and could use the description and ordering of debit card charges included in the Overdraft Letter and personal knowledge of his daily activity and purchasing habits, to come to an informed belief that he incurred an overdraft fee as the result of Fifth Third's re-sequencing of debit card transactions.

As an example, attached as Exhibit E to the Kappes Affidavit, is a redacted Overdraft Letter that was sent to a Settlement Class member. The Settlement Class member could use the letter to determine that on May 28, 2010, they incurred two overdraft fees relating to debit card transactions and that, at the beginning of the day on May 28, 2010, the account balance was $45.72, which was enough money to cover at least one of the debit card transactions. *Id.* Then, the Settlement Class member could use the letter to determine that the debit card transactions occurred on different days; that the debit card transaction occurring on May 26, 2010, for $14.37, was charged after the debit card transaction occurring on May 27, 2010, for $91.46; and that they incurred an overdraft fee as the result of such re-sequencing. *Id.*

### C. Account Statements

A Settlement Class member could also submit a claim in good faith based on his review of account statements and personal knowledge. Account statements were either mailed to Settlement Class members on a monthly basis or, for those Settlement Class members who expressly opted out of being mailed statements, were made available online for a certain period of time. *See* Kappes Aff. ¶ 4, and the example redacted account statements attached thereto as Exhibits A, B, and C. Each account statement included, *inter alia*: an account summary; the

5

amount of and a description of all debits, credits, and fees incurred; the date each debit, credit, and fee was charged to the account; a daily balance summary; and Fifth Third's customer service number. Kappes Aff. ¶ 5. A Settlement Class member could use an account statement to determine that multiple overdraft fees were charged on one day and that the amount of money in the account at the beginning of the day was sufficient to pay at least one debit card charge. The Settlement Class member could then use the description of the debit card charges and overdraft fees on the statement and knowledge of his transactional history and daily activity to come to an informed belief that he incurred an overdraft fee as the result of Fifth Third's re-sequencing of debit card transactions. As an example, attached as Exhibit B to the Kappes Affidavit, is the redacted account statement of a Settlement Class member. The Settlement Class member could use the statement to determine that on June 1, 2010, he incurred two overdraft fees relating to two debit card transactions charged on May 28, 2010. Additionally, the statement reveals that he had $45.72 in the account at the beginning of the day, which was enough money to cover at least one of the debit card charges posted to the account that day. Next, the Settlement Class member could use the description of the charges on the account statement and knowledge of daily activity to determine, to the best of his knowledge and belief, that he incurred overdraft fees as the result of the re-sequencing of debit card transactions in non-chronological order.

### D. A Conversation with a Fifth Third Customer Service Representative

A Settlement Class member could also submit a claim in good faith based on a conversation with a Fifth Third customer service representative. All Overdraft Letters and account statements provided Settlement Class members with Fifth Third's customer service telephone number. Kappes Aff. ¶¶ 5, 8. Fifth Third's customer service representatives were trained to explain to customers the basis of any overdraft fees charged, including those resulting from the bank's re-sequencing of debit card transactions in non-chronological order. *See*

Affidavit of Anna Gise ¶ 4, attached hereto as Exhibit 3. Thus, a Settlement Class member who was informed by a Fifth Third customer service representative that he had been charged an overdraft fee as a result of the re-sequencing of debit card transactions could certainly submit a claim in good faith.[2]

### E. Personal Financial Records

Finally, at least some Settlement Class members kept contemporaneous personal financial records, which they could rely on to submit a good faith claim. Indeed, this was the practice of Plaintiff Marlene Willard, who ascertained that she was the victim of high-to-low re-sequencing by examining her actual receipts and notebook ledger. *See* Declaration of Marlene Willard, attached hereto at Exhibit 4. Thus, a Settlement Class member could submit a claim in good faith based on a review of his financial records.

### III. Settlement Class Members' Reaction to the Settlement Supports that a Settlement Class Member Could File a Claim in Good Faith

Settlement Class members have submitted over 100,000 claims to date, and not one Settlement Class member, including the Keyes Objectors, has ever filed an objection or any other document with the Court complaining that it was impossible for them to file a claim in good faith. The Keyes Objectors' counsel's statement that all Settlement Class members submitting claims were "very confused" is without rational basis and nothing in the record supports such a

---

[2] Although Plaintiffs have disputed the adequacy of such disclosures, in explaining an overdraft fee incurred as a result of the re-sequencing of debit card transactions in non-chronological order, a customer service representative could have referenced Fifth Third's Rules and Regulations, which state, *inter alia*:

> An overdraft fee may be assessed by [Fifth Third] whether [Fifth Third] pays the item or not. If multiple items are presented to [Fifth Third] and there are not sufficient collected funds to pay all of those items, [Fifth Third] (not customer) has the right to decide the order of the items that will be paid and which items will be returned, if any. [Fifth Third] may select any payment order at any time, which may include paying the largest items first such as your mortgage, rent or car payment.

[D.E. #23] at 2.

proposition. Tr. at 74:25-26. Thus, Settlement Class members' reaction to the settlement strongly supports that a Settlement Class member could file a good faith claim.

### IV. The Keyes Objectors' Submissions Support that a Settlement Class Member Could File a Claim in Good Faith

The Keyes Objectors' submissions refute their counsel's statement that it would be impossible for a Settlement Class member to submit a claim in good faith. In objecting to the settlement, each Objector, including the Keyes Objectors, represented to the Court that they were a member of the Settlement Class. *See, e.g.,* Objections of Michele Keyes, Amanda Ratliff, and Verdel Ratliff to Plaintiff's Motion for Preliminary Approval of Proposed Class Action Settlement [D.E. #39] at 2 (stating that Michele Keyes, Amanda Ratliff, and Verdel Ratliff are members of the proposed Settlement Class). And at least one *pro se* objector, Objector Cannata, who is an attorney (and thus an officer of the Court), filed a Claim Form thereby acknowledging his ability to file a claim in good faith. *See* Claim Form, attached as Exhibit A to the Cannata Objection. Prior to the Keyes Objectors' counsel's statements at the final fairness hearing, no Objector argued that it would be impossible for a Settlement Class member to submit a claim in good faith, including before notice was provided and Settlement Class members began submitting claims, which would have been the appropriate time to raise the argument that it would be impossible for a Settlement Class member to submit a claim in good faith.

Objector Keyes also filed a complaint in the Southern District of Florida, well after the complaint pending before this Court was filed, alleging that she was damaged as a result of Fifth Third's practice of re-sequencing debit card transactions. Tellingly, the Keyes Complaint includes a class definition similar to the definition of the Settlement Class.[3] *Compare* Keyes

---

[3] As with all pleadings filed in a civil action in federal court, the Keyes complaint is subject to the requirement of the Federal Rules of Civil Procedure that it was submitted "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [and that] the factual contentions have

Complaint at 5 (defining the proposed class as "all Fifth Third customers having accounts . . . who . . . incurred an overdraft fee as a result of Fifth Third's practice of re-sequencing debit card transactions from highest to lowest and deducting all debits before applying credits"), *with* Settlement Agreement ¶ 7 (defining the Settlement Class as "[a]ll persons in the United States who hold or held a Fifth Third Account who at any time during the Class Period incurred at least one [insufficient funds fee, overdraft fee, returned item fee, daily overdraft fee, overlimit fee, or other similar fee, incurred as a result of the 're-sequencing' of a Fifth Third Debit Card Transaction in non-chronological order that was not previously reversed, refunded, or returned to the Settlement Class Member by Defendant] associated with at least one Fifth Third Debit Card Transaction."). The Keyes Objectors' counsel's statements at the final fairness hearing are irreconcilable with the allegations of the Keyes complaint. If Objector Keyes, and her lawyers who now are before the Court, can allege in good faith that she incurred overdraft fees as the result of Fifth Third's re-sequencing of debit card transactions, a Settlement Class member can make a similar determination in good faith. Thus, the Keyes Objectors' submissions further support that their counsel's statements at the final fairness hearing have no merit.

## CONCLUSION

For the foregoing reasons, it was possible for a Settlement Class member to submit a claim in good faith on the basis of the settlement documents as they are currently worded.

Dated: May 13, 2011

---

evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *See* Fed. R. Civ. P. 11(b).

*Counsel for Fifth Third*

/s/ James E. Burke
James E. Burke (admitted *pro hac vice*)
Drew M. Hicks (admitted *pro hac vice*)
**Keating Muething & Klekamp PLL**
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6400

Steven A. Levy
Roger A. Lewis
**Goldberg Kohn LTD**
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 201-4000

*Settlement Class Counsel*

/s/ Ben Barnow
Ben Barnow
**Barnow and Associates, P.C.**
1 North LaSalle, Suite 4600
Chicago, IL 60602
(312) 621-2000

Burton H. Finkelstein (admitted *pro hac vice*)
**Finkelstein Thompson LLP**
The Duvall Foundry
1050 30th Street, N.W.
Washington, D.C. 20007
(202) 337-8000

Hassan A. Zavareei (admitted *pro hac vice*)
**Tycko & Zavareei LLP**
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
(202) 973-0900

David James Worley (admitted *pro hac vice*)
**Evangelista & Associates, LLC**
One Glenlake Parkway, Suite 700
Atlanta, GA 30328
(404) 478-7195

**Certificate of Service by Electronic Means**

I, Ben Barnow, one Co-Lead Settlement Class Counsel, hereby certify that the preceding document was caused to be served electronically this 13th day of May 2011, pursuant to ECF as to Filing users, and that I shall comply with LR 5.5 as to any party who is not a filing user or represented by a filing user.

/s/ _Ben Barnow_____