IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANNON SCHULTE, | ) |
|         Plaintiff, | ) |
| | ) No.  09 C 06655 |
|       vs. | ) |
| | ) Judge Robert M. Dow, Jr. |
| FIFTH THIRD BANK, | ) |
| | ) Magistrate Judge Martin C. Ashman |
|         Defendant. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO
ENFORCE SETTLEMENT AGREEMENT**

**I.    INTRODUCTION**

Despite being a participating *Schulte* Settlement Class Member, Creative Home Accents, LLC ("Creative Home") filed a purported class action complaint in the United States District Court for the Northern District of Ohio against Fifth Third, alleging identical claims to those that were previously litigated, settled, and released in this case.  Fifth Third filed a motion to dismiss that complaint.  On December 15, 2011, Judge James G. Carr advised counsel that he believed that the issue should be presented to this Court for determination because it had presided over the *Schulte* Settlement.  Accordingly, Fifth Third respectfully moves this Court for an order enforcing the terms of the previously approved class action settlement against Creative Home.

**II.    FACTAUL BACKGROUND**

    **A.    *Schulte v. Fifth Third***

As the Court is aware, this case was originally filed on October 21, 2009.  The complaint alleged that Fifth Third improperly assessed its customers overdraft fees for insufficient funds on debit/check card purchases and ATM withdrawals as a result of the "re-

sequencing" of transactions from highest amount to lowest amount, allegedly to maximize the overdraft charges.

On May 27, 2010, Fifth Third entered into a settlement agreement with the plaintiff (the "*Schulte* Settlement" or the "Settlement"), and on that same date, a Motion for Preliminary Approval of Class Action Settlement [Doc. #35] was filed.  The Court preliminarily approved the *Schulte* Settlement on September 10, 2010 [Doc. #59], and following additional briefing, the creation of a factual record, and a one day hearing, the Court granted final approval on July 29, 2011, in a comprehensive opinion.  (*See* Memorandum and Opinion (the "Final Approval Order") [Doc. #124]).

As approved, the *Schulte* Settlement provided for a settlement class period of October 21, 2004 to July 1, 2010 (the "Class Period"), and a settlement class defined as:

> All persons in the United States who hold or held a Fifth Third Account who at any time during the Class Period incurred at least one Overdraft Fee (as defined in the Settlement Agreement) associated with at least one Fifth Third Debit Card Transaction.

(*See Schulte* Settlement Agreement at 6-7).[1]

The *Schulte* Settlement Agreement provided for a $9.5 million settlement fund from which class members could receive reimbursement for overdraft charges incurred during one forty-five day period during the Class Period.  (*Id.* at 7, 16).  In addition, Fifth Third changed its business practices and agreed to discontinue the practice of debiting Fifth Third debit card and ATM transactions from highest amount to lowest amount for all customer accounts.  (*Id.* at 7-8). In consideration of the dismissal of all claims asserted in the *Schulte* Action, Fifth Third agreed to post debit card transactions for all customers in chronological order, regardless of amount.

---

[1]  The *Schulte* Settlement Agreement is attached as Exhibit A to Representative Plaintiffs' Motion for, and Memorandum in Support of, Final Approval of Class Action Settlement, and Award of Attorneys' Fees, Costs and Expenses, and Incentive Awards [Doc. #103].

(*Id.* at 7-8). Due to technological and other logistical issues, the *Schulte* Settlement Agreement explicitly provided that Fifth Third had until April 1, 2011, to implement this change and this condition was clearly stated in the *Schulte* Action proceedings. (*Id.* at 8).[2] Fifth Third also agreed to train all of its customer service representatives regarding overdraft issues and gave them the authority to waive any overdraft fee for good cause. (*Id.*).

The *Schulte* Settlement Agreement contained a broad release in favor of Fifth Third. (*Id.* at 20-22). It provided that every Settlement Class Member fully released and forever discharged Fifth Third from any and all, known or unknown, claims that in any way were raised or related to the *Schulte* Action, including any claims based on the use of a Fifth Third debit card that led to the assessment of at least one overdraft fee. (*Id.* at 20-21). The *Schulte* Settlement Agreement also provided that as a result of the *Schulte* Settlement, all Settlement Class Members released claims relating to: (a) the order and manner in which transactions are posted to accounts; (b) any fees or charges relating to debit card or ATM transactions; (c) any failure to warn when a debit card or ATM transaction would cause an account to be overdrawn or fee assessed; (d) the accuracy of an account balance relating to debit card or ATM transactions; (e) any conduct, representations or statements (in Fifth Third account agreements or otherwise) encouraging the use of debit cards or reliance upon any Fifth Third account balance or information relating to debit card transactions, shown online or otherwise; and (f) any advertising or advertisements relating to any of the foregoing. (*Id.* at 21).

**B.** *Creative Home v. Fifth Third*

On July 13, 2011, Creative Home filed a purported class action against Fifth Third in the United States District Court for the Northern District of Ohio. The case is styled

---

[2] Fifth Third fully implemented this change on March 25, 2011. (*See* Affidavit of Thomas J. Kappes ("Kappes Affidavit") at ¶ 5). A true and accurate copy of the Kappes Affidavit is attached hereto as **Exhibit 1**.

*Creative Home Accents, LLC v. Fifth Third Bancorp*, N.D. Ohio, Case No. 3:11-cv-01421-JGC (the "*Creative Home* Action"). Creative Home's complaint primarily is based upon the allegation that Fifth Third violated the *Schulte* Settlement by failing to "modify its business practices to no longer re-sequence debits from highest amount to lowest amount," as required by the *Schulte* Settlement Agreement. (*See Creative Home* Complaint at ¶¶ 1-11).[3] In particular, Creative Home alleged that Fifth Third, after July 1, 2010, continued to assess overdraft fees on debit/check card purchases, electronic debits, Automated Clearing House debits, and ATM withdrawals resulting from the "re-sequencing" of transactions from highest amount to lowest amount. (*Id.*). Although the *Creative Home* Complaint specifically referred to the change in business practice by Fifth Third under the *Schulte* Settlement in discontinuing the "re-sequencing" of debit card and ATM transactions, it conspicuously and disingenuously omitted the undisputed time frame within which the parties agreed this was to occur (*i.e.*, by April 1, 2011).

Based on these allegations, Creative Home asserted claims for: (1) violations of the Ohio Consumer Sales Practices Act, OHIO REV. CODE § 1345.01 *et seq.*; (2) breach of contract; (3) unjust enrichment; and (4) common law fraud. (*Id.* at ¶¶ 78-82, 83-88, 89-94, 95-104). Creative Home also sought to represent a class of plaintiffs who were Fifth Third customers after July 1, 2010 (the end of the Settlement Class Period in the *Schulte* Settlement). Creative Home's theory is that these Fifth Third customers are "third-party beneficiaries to the *Schulte* Settlement" and have been harmed by Fifth Third's failure to "modify its business practices to no longer re-sequence debits from highest amount to lowest amount," as required by the *Schulte* Settlement Agreement. (*Id.* at ¶¶ 1-11, 69-77). Obviously, this central allegation

---

[3] A true and accurate copy of the *Creative Home* Complaint is attached hereto as **Exhibit 2**.

ignores the undisputed fact that the *Schulte* Settlement expressly provided that the modification of this business practice was to occur by April 1, 2011, and this deadline was met. (*See Schulte* Settlement Agreement at 8).

Fifth Third filed a motion to dismiss the *Creative Home* Complaint. The primary basis for Fifth Third's motion was that the claims in the *Creative Home* Action had already been litigated, settled, and released in the *Schulte* Action. Specifically, Fifth Third argued that the *Schulte* Settlement, as approved by this Court, adjudicated the same issues and/or claims as those Creative Home was attempting to bring in the *Creative Home* Action for the "re-sequencing" of debit card and ATM transactions. The *Schulte* Settlement Agreement provided that Fifth Third had until April 1, 2011, to implement the posting order modification. This was a negotiated term in the Settlement – *i.e.*, this term was litigated or could have been litigated by any *Schulte* Settlement Class Member. Moreover, the release contained in the *Schulte* Settlement Agreement explicitly provided that Fifth Third was to be fully released and forever discharged from any and all, known or unknown, claims raised in or related to the *Schulte* Action, claims that are in any way related to the "re-sequencing" of debit card and ATM transactions, and/or any claims that result from, arise out of, or are based, in any way, upon the use of a Fifth Third Debit Card resulting in one or more overdraft fees. (*See Schulte* Settlement Agreement at 20-21, ¶ 34).

Creative Home, as a class member in the *Schulte* Action, undeniably received notice of the *Schulte* Settlement and had the opportunity to object to or opt out of the *Schulte* Settlement. Instead, **Creative Home voluntarily participated in the Schulte Settlement by filing a claim**. (*See* Affidavit of Robert Oseas ("Oseas Affidavit") at ¶¶ 4-8).[4] Given all of these

---

[4] A true and accurate copy of the Oseas Affidavit is attached hereto as **Exhibit 3**.

circumstances, Creative Home cannot "re-litigate" any term or issue in the *Schulte* Action and is bound by the terms of the Settlement.

In response to Fifth Third's motion to dismiss, Creative Home argued that its claims were not precluded because they are different from the claims that were at issue in the *Schulte* Action. According to Creative Home, its claims only relate to the "re-sequencing" of debit card transactions between July 1, 2010 and April 1, 2011, and as such, the *Schulte* Settlement does not preclude the claims in the *Creative Home* Action because: (1) the *Schulte* Settlement never expressly provided that Fifth Third had until April 1, 2011, to modify its business practices; and (2) the claims are not the "same" claims that were litigated and resolved in the *Schulte* Action.

After Fifth Third's motion to dismiss was fully briefed, the presiding district court judge, Hon. James G. Carr, issued an order holding the *Creative Home* Action "in abeyance pending submission to and adjudication by the Northern District of Illinois of issues relating to scope and effect of its Class Action Settlement Order in *Schulte v. Fifth Third Bank*, Case No. 1:09CV06655 (N.D. Ill.)."[5] Accordingly, Fifth Third is filing this Motion to Enforce the Settlement Agreement and seeks an order from this Court to preclude Settlement Class Member, Creative Home, from pursuing claims that were adjudicated and released in the *Schulte* Action.[6]

### III. ARGUMENT

#### A. The Claims In The *Creative Home* Action Have Been Previously Litigated, Settled, And Released

---

[5] Judge Carr's order is attached hereto as **Exhibit 4**.
[6] Under the terms of the *Schulte* Settlement Agreement, as approved by the Court, this Court retains jurisdiction with respect to the implementation and enforcement of the terms of the Settlement, and all Settling Parties and Settlement Class Members submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement. (*See Schulte* Settlement Agreement at 27, ¶ 51). *See Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 411 (7th Cir. 2000) (recognizing that a district court has jurisdiction to enforce terms of a settlement agreement if the settlement approved by the court provided that the court retained jurisdiction to enforce the terms of the settlement).

There is no dispute that Creative Home was a participating member of the *Schulte* Settlement Class. Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the court-appointed claims administrator in the *Schulte* Action, sent Creative Home individual notice of the *Schulte* Settlement. (*See* Oseas Affidavit at ¶¶ 2, 5). Creative Home did not exclude itself from the *Schulte* Settlement or object to any of terms contained in the *Schulte* Settlement. (*Id.* at ¶ 8). Rather, on or about May 1, 2011, Creative Home submitted a claim form for reimbursement of overdraft fees it had incurred. (*Id.* at ¶ 7). By its participation (without opting out or objecting to the Settlement), Creative Home expressly "waived and fully, finally, and forever settled and released any known and unknown claims" against Fifth Third that were in any way related to the *Schulte* Action. (*See Schulte* Settlement Agreement at 21-22, ¶¶ 34-36.)

Nevertheless, Creative Home attempts to carve out the claims in the *Creative Home* Action from the claims that were at in issue in the *Schulte* Action. According to Creative Home, the claims in the *Creative Home* Action only relate to the re-sequencing of debit card transactions between July 1, 2010 and April 1, 2011, and as such, the *Schulte* Settlement does not preclude its claims in the *Creative Home* Action because: (1) the *Schulte* Settlement never expressly provided that Fifth Third had until April 1, 2011, to modify its business practices; and (2) the claims are not the "same" claims that were litigated in the *Schulte* Action. Both of Creative Home's arguments are factually and legally baseless.

> **1. The Settlement Agreement and the Final Approval Order Allowed Fifth Third Until At Least April 1, 2011 to Implement the Modification to the Posting Order of Debit Card Transactions**

The *Schulte* Settlement Agreement, as approved by the Court, expressly provided that Fifth Third had at least until April 1, 2011, to modify its re-sequencing practices:

> 10. **Non-Monetary Considerations**. As additional consideration for the release of the claims as set forth herein of the Settlement Class Members, Fifth Third will implement the

> following modifications to its business practices, subject to the limitations identified below, within thirty (30) days of the Effective date of the Settlement…
>
> a) Debits from Fifth Third Debit Card Transactions will not be charged to a customer's Fifth Third Account from highest amount to lowest amount; rather debits from Fifth Third Debit Card Transactions will be posted in chronological order (*i.e.*, in the order that Fifth Third Debit Card Transactions are presented to Fifth Third for payment, regardless of amount). Fifth Third presently targets April 1, 2011, as the effective date for the new posting procedure and agrees to act with due diligence to implement the procedure.

(*See Schulte* Settlement Agreement at 7-8, ¶ 10).

Additionally, in its Final Approval Order, the Court noted that Fifth Third agreed to no longer re-sequence debit card transactions from highest to lowest amount and that counsel for Fifth Third informed the court that such injunctive relief provided for in the *Schulte* Settlement Agreement would be fully implemented by the end of the first quarter 2011. (*See* Final Approval Order at 7, n. 7). The Final Approval Order went on to give final approval to the ***entire*** *Schulte* Settlement, as agreed to by the parties in the Settlement Agreement, finding that the settlement was fair, reasonable, and adequate. (*Id.* at 63). This Court did not approve only parts of the *Schulte* Settlement Agreement. It approved the *Schulte* Settlement Agreement in its entirety – including the term agreed to by the class representatives and class counsel that explicitly allowed Fifth Third until April 1, 2011 to implement its posting order change.[7]

Paragraph 10 of the *Schulte* Settlement Agreement, as quoted above, also provided that Fifth Third was required to modify the high-to-low posting of debit card transactions, "subject to the limitations identified below" (*i.e.*, the April 1, 2011 date), within

---

[7] As the Court recognized in the Final Approval Order, its power to approve or reject class action settlements does not permit it to modify the terms of a negotiated settlement. (*See* Final Approval Order at 47 (citing 8 NEWBERG ON CLASS ACTIONS § 24:126 (4th ed.)). *See also Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986); *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007) (in light of Rule 23(e)'s restrictions, "the court cannot modify the terms of the proposed settlement; rather, the Court must approve or disapprove the proposed settlement as a whole").

thirty (30) days of the Effective Date of the Settlement. (*See Schulte* Settlement Agreement at 7-8, ¶ 10). Thus, in effect, the Settlement Agreement required Fifth Third to implement the posting modifications by either April 1, 2011, or thirty days after the "Effective Date," whichever was later.

The "Effective Date" for the *Schulte* Settlement was October 28, 2011. The Settlement Agreement provided that the "Effective Date" of the Settlement was to be thirty (30) days after all of the following conditions were satisfied: (a) the Settlement Agreement is signed by counsel for all of the parties; (b) the court entered its preliminary approval order; (c) notice has been provided to the Settlement Class and the Claims Administrator has filed one or more declarations attesting that such notice was provided; (d) the court entered the Judgment and Order of Dismissal with Prejudice; and (e) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmation is no longer subject to further appeal or review. (*See Schulte* Settlement Agreement at 19, ¶ 32). All of these conditions occurred and were satisfied on September 28, 2011, when the last appeal of the Final Approval Order in the Seventh Circuit was dismissed. Because thirty days after September 28, 2011, is October 28, 2011, that is the Effective Date of the *Schulte* Settlement.

Accordingly, under the express terms of the *Schulte* Settlement Agreement, as approved by this Court, Fifth Third actually had until November 27, 2011 (30 days after the Effective Date) to fully implement its posting order modification. As such, Creative Home's assertion that its claims are not precluded because the *Schulte* Settlement never expressly provided that Fifth Third had until April 1, 2011, to modify its re-sequencing practices is not

only factually inaccurate, but also irrelevant. Because while Fifth Third did implement its posting order modifications to debit card transactions by April 1, 2011, it was actually not required to do so until November 27, 2011 (thirty days after the Effective Date).[8]

### 2. Creative Home's Claims Have Been Released By the *Schulte* Settlement

Creative Home's argument that the claims in *Creative Home* Action are not the "same" as the claims litigated in the *Schulte* Action and are not precluded by the *Schulte* Settlement also is mistaken. The Settlement Agreement clearly bars Creative Home's claims.

According to the Seventh Circuit, "a release incorporated into an order approving a class action settlement bars subsequent litigation based on the released claims." *Tropp v. Western Southern Life Insurance Co.*, 381 F.3d 591, 596 (7th Cir. 2004). It is also well-established that class action settlements which include a "global release of all claims past, present, and future, that the parties might have brought against each other" are enforceable. *Williams v. General Electric Capital Auto Lease, Inc.*, 159 F.3d 266, 274 (7th Cir. 1998). This is true, even if the "individual class members did not know the full extent of the burden she would suffer." *Tropp*, 381 F.3d at 596 (citing *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002)).

Additionally, "a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action." *Williams*, 159 F.3d at 273-274 (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992)). Such claims are released even if they were not "ripe" at the time of the settlement if they are "closely enough related to" the released claims.

---

[8] Fifth Third fully implemented the change to the posting order of debit card transactions on March 25, 2011. (*See* Kappes Affidavit at ¶ 5).

*Williams*, 159 F.3d at 274. *See also Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1116 (7th Cir. 1990) (even though one claim was technically nonexistent at the time of settlement, the parties' general release was enforceable because circumstances showed that the plaintiff releasing her claims had known of, and intentionally resolved, the potential dispute that might have existed).

Here, the provision of the *Schulte* Settlement Agreement that allowed Fifth Third until at least April 1, 2011, to modify its high-to-low posting practices for debit card transactions was a negotiated and explicit term of the Settlement agreed to on behalf of the class (of which Creative Home individually is a member). Creative Home knew, or should have known, that it was possible for an overdraft fee to be assessed after the Settlement Class Period, but before the new posting practices were fully implemented. *See Fair*, 905 F.2d at 1116 ("[i]t is well established a general release is valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry"). If Creative Home had issues with that part of the Settlement, its proper remedy would have been to object to the term, or opt out of the Settlement Class. *See Smith v. Sprint Commc'ns Co., L.P.*, 2003 WL 103010, *2 (N.D. Ill. Jan. 10, 2003) ("class members can reject the terms of the proposed settlement by opting out of the settlement" because otherwise, "[c]lass settlements involving releases of individual claims are routinely approved and enforced if the class is given fair notice and an opportunity to opt out"). Rather than opting out of the Settlement or filing an objection to this provision of the Settlement, Creative Home affirmatively assented to the Settlement by filing a claim seeking reimbursement of overdraft fees. (*See* Oseas Affidavit at ¶¶ 7-8). Creative Home, as a participating *Schulte* Settlement Class Member, cannot now attempt to re-litigate a

negotiated and disclosed term of the *Schulte* Settlement that received final approval by this Court.

Moreover, the *Schulte* Settlement adjudicated the same issues and/or claims as those which Creative Home seeks to bring for "re-sequencing" of debit card and ATM transactions in the *Creative Home* Action. The release contained in the *Schulte* Settlement Agreement specifically stated that Fifth Third was to be fully released and forever discharged from any and all, known or unknown, claims raised in or related to the *Schulte* Action, claims that are in any way related to the "re-sequencing" of debit card and ATM transactions, and/or any claims that result from, arise out of, or are based, in any way, upon the use of a Fifth Third Debit Card resulting in one or more overdraft fees. (*See Schulte* Settlement Agreement at 20-21, ¶ 34.) Because Creative Home is alleging these exact claims and issues in the *Creative Home* Complaint, and the allegations "share a factual predicate" with the released claims, they are barred by the *Schulte* Settlement, regardless of Creative Home's assertion that the claims only relate to the July 1, 2010 to April 1, 2011 timeframe.

Simply stated, Creative Home is not entitled to another bite at the apple. It was a participating Settlement Class Member that did not opt out or object to the *Schulte* Settlement. Thus, it is barred from bringing the claims against Fifth Third in the *Creative Home* Action because those claims clearly were released under the terms of the *Schulte* Settlement.

> **B.** **Creative Home Waived Its Right To Dispute Any Term In The *Schulte* Settlement By Failing To File An Objection**

To the extent it is now challenging any term of the *Schulte* Settlement, Creative Home has waived such a challenge by failing to file an objection to the *Schulte* Settlement. *See In re Factor VIII or IX Concentrate Blood Products Litigation*, 159 F.3d 1016, 1020 (7th Cir. 1998) (finding that counsel for class members "[h]aving participated in the settlement proceeding

and having failed to make timely objection to it…are barred by the principles of waiver and equitable estoppel from challenging the settlement after it has become final"); *Hill v. Merrill Gardens LLC*, 2005 WL 2465250, *7 (N.D. Ind. 2005) ("[b]ecause [class member] did not present a written objection to the Court in a timely manner, she waived her opportunity to object").

The *Schulte* Settlement Agreement contained several safeguards to ensure that a party which disputed *any* term of the proposed Settlement had an opportunity to object, be heard, and decline participation in the Settlement Class. (*See Schulte* Settlement Agreement, at ¶¶ 17-19). Rather than opting out or filing an objection, however, Creative Home only submitted a claim form, and by doing so, affirmatively accepted all of the terms contained in the Settlement (including the provision that allowed Fifth Third until at least April 1, 2011, to fully implement its posting order changes).

Notably, other *Schulte* Settlement Class Members raised concerns and filed objections in regards to the Class Period and Fifth Third's changes to its posting practices. For example, in its Final Approval Order, the Court acknowledged a formal objection seeking an extension of the class period to December 31, 2010. (*See* Final Approval Order at 20). The Final Approval Order also acknowledged informal objection letters in which Class Members expressed concern that Fifth Third continued "to reorder the posting of checks to customer accounts" after the Class Period and that "the implementation date for Fifth Third's change to its business practices was twice pushed back, finally to March 25, 2011." (*Id*. at 24). After analyzing the Settlement terms and considering all such objections, the Court (in a detailed opinion) determined that the Settlement, and all of its provisions (including the provision that

allowed Fifth Third until at least April 1, 2011, to fully implement its posting order changes), were "fair, reasonable, and adequate." (*Id.* at 1, 25, 63).

Like other Settlement Class Members, Creative Home had the opportunity to object to the provision in the Settlement that allowed Fifth Third until at least April 1, 2011, to implement its posting order change. Creative Home, however, failed to do so. Thus, Creative Home has waived its right to raise any such objections now.

## IV. CONCLUSION

Based on all of the forgoing, Fifth Third respectfully requests that the Court issue an order enforcing the *Schulte* Settlement against Creative Home, a Settlement Class Member.

Respectfully submitted,

/s/ Drew M. Hicks
James E. Burke (admitted pro hac vice)
Drew M. Hicks (admitted pro hac vice)
KEATING MUETHING & KLEKAMP PLL
One East Fourth St.
Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6400
Fax: (513) 579-6457
pfischer@kmklaw.com
dhicks@kmklaw.com

-and-

Steven A. Levy
Roger A. Lewis
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
Phone: (312) 201-4000
Fax: (312) 332-2196
steven.levy@goldbergkohn.com
roger.lewis@goldbergkohn.com

*Attorneys for Defendant,*
*Fifth Third Bank*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on February 16, 2012, he caused a copy of the foregoing **Memorandum in Support of Motion to Enforce Settlement Agreement** to be served via the Court's electronic notice system upon all counsel of record and via U.S. Mail upon the following parties:

| | |
|---|---|
| Patrick J. Perotti, Esq. | D. Jeffery Rengel, Esq. |
| Nicole T. Fiorelli, Esq. | Thomas R. Lucas, Esq. |
| Dworkin & Bernstein Co., LPA | Rengel Law Office |
| 60 South Park Place | 421 Jackson Street |
| Painesville, Ohio 44077 | Sandusky, Ohio 44870 |

/s/ Roger A. Lewis