# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 6655 | **DATE** | 6/15/2012 |
| **CASE TITLE** | Schulte vs. Fifth Third Bank | | |

**DOCKET ENTRY TEXT**

For the reasons below, Defendant's motion to enforce the settlement agreement [169] is granted.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

Before the Court is Fifth Third Bank's motion to enforce the settlement agreement [169]. Defendant filed the motion after Creative Home Accents, LLC, ("Creative Home"), a class member, filed a claim, *Creative Home Accents, LLC v. Fifth Third Bancorp.*, N.D. Ohio, Case No. 3:11-cv-1421, in the Northern District of Ohio, ("Ohio Action") alleging what Defendant believes to be identical claims to those that were litigated, settled, and released in this case. Defendant filed a motion to dismiss the complaint in the Ohio Action, and on December 15, 2011, Judge Carr advised counsel that the issue should be presented to this Court for determination.

**I.      Background**

The *Schulte* Settlement Agreement provided for a class period that ran from October 21, 2004 to July 1, 2010 ("Class Period") and defined the class as: "All persons in the United States who hold or held a Fifth Third Account who at any time during the Class Period incurred at least one Overdraft Fee (as defined in the Settlement Agreement) associated with at least one Fifth Third Debit Card Transaction." The parties do not dispute that Creative Home is a member of the *Schulte* Class.

The Settlement Agreement provided for a $9.5 million settlement fund from which class member could receive reimbursement for overdraft charges incurred during one forty-five day period during the Class Period. Fifth Third also agreed to change its business practices—discontinuing the practice of debiting Firth Third debit card and ATM transactions from highest amount to lowest amount for all customer accounts—so that it now posts all transactions for all customers in chronological order, regardless of amount. The Agreement provided that Fifth Third had until April 1, 2011, to implement this change due to technological and other logistical issues. More specifically, the language of the Agreement instructs that:

**STATEMENT**

      10. Non-Monetary Considerations. As additional consideration for the release of claims as set forth herein of the Settlement Class Members, Fifth Third will implement the following modifications to its business practices, subject to the limitations identified below, within thirty (30) days of the Effective Date of Settlement . . .

1) Debits from Fifth Third Debit Card transactions will not be charged to a customer's Fifth Third Account from highest amount to lowest amount; rather debits from Fifth Third Debit Card Transactions will be posted in chronological order . . . Fifth Third presently targets April 1, 2011 as the effective date for the new posting procedure and agrees to act with due diligence to implement the procedure. [103, at 7-8]

The Agreement also contained a broad release that stated:

> As of the Effective Date, Plaintiff and each and every Settlement Class Member shall be deemed to have fully released and forever discharged Fifth Third . . . from any and all rights, claims, actions, causes of action, demands and remedies, known or unknown, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or related to in any way to the conduct, omissions, duties or matters alleged in the Complaints, including claims related . . . in any way, upon the use of a Fifth Third Debit Card by the cardholder or by an authorized user of the debit card that led to the assessment of one or more Overdraft Fees. [103, at 20-21].

      On July 29, 2011, this Court granted final approval of the settlement agreement [124] between the parties, including Fifth Third's agreement to change in practice of resequencing no later than April 1, 2011. Fifth Third completed the process of eliminating resequencing, in compliance with the Settlement agreement, on March 25, 2011. The Effective Date of the Settlement Agreement was October 28, 2011.

      On July 13, 2011, Creative Home filed a class action against Fifth Third in the District Court for the Northern District of Ohio, *Creative Home Accents, LLC v. Fifth Third Bancorp.*, N.D. Ohio, Case No. 3:11-cv-1421, alleging that Fifth Third Bank is unlawfully resequencing debit transactions in order to maximize the number of overdraft fees it received, from July 1, 2010 to the present. Creative Home asserts claims for: (1) violations of the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 *et seq*.; (2) breach of contract; (3) unjust enrichment; and (4) common law fraud. According to Creative Home, this class deals with only those individuals who were injured since July 1, 2010, and therefore the claims in the Northern District case are not the same claims, and the Settlement Agreement does not apply.

**II.    Analysis**

      Under the terms of the *Schulte* Settlement Agreement, the Court retains jurisdiction with respect to the implementation and enforcement of terms of the Settlement, and all Settling Parties and Settlement Class members submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement. See *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 411 (7th Cir. 2000) (recognizing that a district court has jurisdiction to enforce terms of a settlement agreement if the settlement approved by the court provided that the court retained jurisdiction to enforce the terms of the settlement). Fifth Third argues that the claims raised by Creative Home in the Ohio Action were previously litigated, settled, and released in the *Schulte*

**STATEMENT**

Class settlement. The Court agrees.

The Seventh Circuit has made clear that "a release incorporated into an order approving a class action settlement bars subsequent litigation based on the released claims." *Tropp v. Western Southern Life Insurance Co.*, 381 F.3d 591, 596 (7th Cir. 2004). Moreover, "a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action." *Williams v. General Electric Capital Auto Lease, Inc.*, 159 F.3d 266, 273-274 (7th Cir. 1998) (internal citation and quotation omitted). Such claims are released even if they were not "ripe" at the time of the settlement if they are "closely enough related to" the released claims. *Id*. at 274; see also *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1116 (7th Cir. 1990). This is exactly the situation here.

Creative Home does not dispute that it was a member of the *Schulte* Settlement Class. Nor does Creative Home dispute that it did not object to or opt out of the *Schulte* Settlement Agreement. In fact, Creative Home submitted a claim form for reimbursement of overdraft fees in compliance with the Settlement Agreement. Rather, Creative Home argues that the Ohio Action covers a different class period than the *Schulte* Action and therefore the *Schulte* Settlement Agreement does not bar the new Ohio Action. Specifically, Creative Home argues that the *Schulte* Settlement Agreement was limited to a class of individuals injured prior to July 1, 2010, whereas the claims asserted by Creative Home in the Ohio Action are seeking relief for a class of customers injured by the resequenced debit transactions after July 1, 2010. Fifth Third, counters that the *Schulte* Settlement Agreement expressly provided that all Class members fully released and forever discharged Fifth Third from any and all claims that resulted from, around, out of, were based on, or related to the resequencing of debit card and ATM transactions, and, therefore, Creative Home previously released the claims that it now seeks to assert in the Ohio Action.

Looking at the Settlement Agreement, Fifth Third has the better of the argument. The language of the release section is clear that all Settlement Class Members—and thus Creative Home—released and forever discharged Fifth Third from any and all, known or unknown, claims raised in or related to the *Schulte* Action, claims that are in any way related to the resequencing of debit card and ATM transactions, and/or any claims that result from, arise out of, or are based, in any way, upon the use of a Fifth Third Debit Card resulting in one or more overdraft fees. [103, at 20-21]. Creative Home knew, or should have known, that until Fifth Third changed its practice of resequencing transactions—which the Settlement Agreement and Final Order explicitly gave Fifth Third until April 1, 2011 to complete—it was possible for an overdraft fee to be assessed after the Settlement Class Period. If Creative Home had an objection to the release, the proper course was to object to the terms of the Settlement or opt out of the Settlement Class. But having failed to do so—and instead filing a claim form—Creative Home has waived its opportunity to object to the terms of the Settlement Agreement. See *In re Factor VIII or IX Concentrate Blood Products Litigation*, 159 F.3d 1016, 1020 (7th Cir. 1998) (finding that class members, "[h]aving participated in the settlement proceeding and having failed to make timely objection to it . . . are barred by the principles of waiver and equitable estoppel from challenging the settlement after it has become final"); *Hill v. Merrill Gardens LLC*, 2005 WL 2465250, *7 (N.D. Id. Oct. 6, 2005) ("[b]ecasue [class member] did not present a written objection to the Court in a timely manner, she waived her opportunity to object").

Furthermore, the Court notes that allowing Creative Home to proceed in the Ohio Action after participating in the *Schulte* Class Settlement—without objecting or opting out—would be a thumbing of the nose at class action settlements, giving defendants "little incentive to negotiate class settlements if they could not secure a broad release generally insulating themselves from further litigation by those who participate in

**STATEMENT**

the settlement." *Smith v. Spring Commc'ns Co.*, 2003 WL 103010, at *2 (N.D. Ill. Jan. 10, 2003) (finding that "[a]llowing for the broad release of related claims is in accord with the general policy in favor of the settlement of class litigation.").

In sum, because Creative Home was a member of the *Schulte* Class and did not object to the broad release in the Settlement Agreement or opt out of the class, it is barred from raising claims in anyway relating to the resequencing of debit card transactions resulting in over draft fees, which is exactly what Creative Home attempts to do in the Ohio Action.

**III.     Conclusion**

For the foregoing reasons, Fifth Third's motion to enforce the settlement agreement [169] is granted.